# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| SIPCO, LLC, and IP CO, LLC (d/b/a INTUS IQ), | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| EMERSON ELECTRIC CO., EMERSON PROCESS | ) | Civil Action No. |
| MANAGEMENT LLLP, FISHER ROSEMOUNT | ) | 1:16-cv-02690-AT |
| SYSTEMS, INC., ROSEMOUNT INC., BP, p.l.c., | ) | |
| BP AMERICA, INC., and BP AMERICA | ) | |
| PRODUCTION COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF
## THEIR MOTION TO DISMISS AND STRIKE COUNTERCLAIMS AND
## <u>AFFIRMATIVE DEFENSES OF INEQUITABLE CONDUCT</u>

Plaintiffs, SIPCO, LLC ("SIPCO") and IP CO, LLC (d/b/a INTUS IQ) ("IP CO") (collectively, "SIPCO") respectfully move to dismiss and strike the counterclaims and affirmative defenses of inequitable conduct asserted by Defendants Emerson Electric Co., Emerson Process Management LLLP, and Fisher- Rosemount Systems, Inc. (collectively, "Emerson") pursuant to Fed. R. Civ. P. 12(b)(6), 12(f) and 9(b). The charge of inequitable conduct in almost every patent infringement case is an absolute plague on the courts and entire patent system, and Emerson's so-called inequitable conduct allegations are no different. Indeed, they

impugn the veracity and reputation of a prolific and pioneering inventor—T. David Petite[1]—and indict the professionalism and ethics of numerous patent prosecution attorneys and litigation counsel—officers of the court—representing SIPCO and IP CO throughout the years. The Federal Circuit's decisions in *Therasense, Inc. v. Becton, Dickinson & Co.,* 649 F.3d 1276, 1289 (Fed. Cir. 2011) (*en banc*) and *Exergen Corp. v. Wal-Mart Stores, Inc.,* 575 F.3d 1312, 1326-27 (Fed. Cir. 2009) stand as a bulwark against Emerson's verbose and scandalous allegations. Simply put, the twisted tales that Emerson's inequitable conduct allegations attempt to weave do not meet the strict pleading standards set forth *Exergen* and *Therasense*.

---

[1] In addition to his work developing wireless mesh technology, T. David Petite has dedicated his time to furthering inventorship and the development of new technologies. Petite, a registered member of the Fond Du Lac Chippewa tribe and the son of a former Chief of the Red Cliff Chippewa tribe in Wisconsin, is a founder of the Native American Intellectual Property Enterprise Council, which is an organization that provides patenting, copyright, and trademark assistance to help foster invention and innovation in the Native American community. Mr. Petite has volunteered his time with the United States Patent and Trademark Office ("PTO") working on projects directed toward developing Native American intellectual property and as a speaker at patent-examiner training; he has also volunteered for a number of organizations geared toward developing and protecting entrepreneurship and innovation. A native of Atlanta, Petite was recognized by the Georgia State Senate for his innovations in wireless technology, job creation, and an "incredible career" in engineering and invention. He also was invited to and attended President Barack Obama's signing of the America Invents Act and has been recognized as an influential inventor by the PTO—even having been added to the PTO's 2014 Inventor Collectible Card Series.

For these and other reasons set forth more fully below, SIPCO respectfully requests the Court to grant this motion.

## I.     PROCEDURAL BACKGROUND

SIPCO commenced this action in the Eastern District of Texas on October 16, 2015, alleging Emerson's infringement of U.S. Patent Nos. 7,697,492 ("the '492 patent"), 6,437,692 ("the '692 patent"), 6,914,893 ("the '893 patent"), 6,249,516 ("the '516 patent"), 7,468,661 ("the '661 patent"), 8,000,314 ("the '314 patent"), 8,233,471 ("the '471 patent"), 8,625,496 ("the '496 patent"), 8,754,780 ("the '780 patent") and 8,908,842 ("the '842 patent") (hereinafter, the "Texas Action"). (TX Dkt. No. 1).[2] Emerson filed an Answer to the Complaint on December 10, 2015 (TX Dkt. No. 11). SIPCO filed an Amended Complaint on December 30, 2015, alleging, *inter alia*, infringement of an additional patent, U.S. Patent No. 8,013,732 ("the '732 patent") and adding BP America, Inc., BP America Production Company and BP p.l.c. as defendants (collectively, the "BP Defendants"). (TX Dkt. No. 19.)  Emerson

---

[2] U.S. Patent No. 6,044,062 ("the '062 Patent"), although mentioned in Emerson's Eleventh Affirmative Defense and Count I of its Counterclaims, is not at issue in the Texas Action. The same is true with respect to U.S. Patent No. 7,103,511 ("the '511 Patent"): although it is identified in Emerson's Twelfth Affirmative Defense, it is not at issue in the Texas Action. SIPCO moves to dismiss any and all affirmative defenses and counterclaims associated with the '062 and '511 patents as set forth in Section III.C., *infra*.

filed an Answer to the Amended Complaint on January 20, 2016 (TX Dkt. No. 30), and BP America, Inc. and BP America Production Company filed answers on February 29, 2016.[3] (TX Dkt. Nos. 49 and 52.)

SIPCO filed a Second Amended Complaint on July 14, 2016, alleging BP's willful infringement. (TX Dkt. No. 105). That same day, Emerson filed an Amended Answer, Affirmative Defenses and Counterclaims, alleging, *inter alia*, the inequitable conduct affirmative defenses and counterclaims that are the subject of this motion. (TX Dkt. No. 106).

Emerson's inequitable conduct allegations are directed towards the IP CO patents (hereinafter referred to as the "Brownrigg Patents") and SIPCO patents (hereinafter referred to as the "Petite Patents") that are asserted in the Texas Action.[4] More particularly, Emerson's Eleventh Affirmative Defense, which purports to allege inequitable conduct in association with the Brownrigg Patents, is set forth in

---

[3] BP p.l.c. did not file an answer. It moved to dismiss the Amended Complaint. (TX Dkt. No. 87). Briefing on BP p.l.c.'s motion to dismiss is not complete.

[4] Further to note 1, *supra*, Emerson's affirmative defenses and/or counterclaims alleging inequitable conduct mention the '062 and '511 Patents, which are not asserted in the Texas Action. Instead, they are asserted in the Declaratory Judgment Action that Emerson filed in this Court on January 15, 2015, Civ. A. No. 1:15-cv-00319-AT (hereinafter referred to as the "Georgia Action") (GA Dkt. No. 1). For the reasons set forth in Section III.C., *infra*, all affirmative defenses and counterclaims related to the '062 and '511 Patents should be dismissed.

paragraphs 312 to 375 of Emerson's Amended Answer and Emerson's counterclaim is set forth in paragraphs 10 to 12 of Count I. (TX Dkt. No. 106). Emerson's Twelfth Affirmative Defense, which purports to allege inequitable conduct in connection with the Petite Patents, is set forth in paragraphs 377 to 424 of Emerson's Amended Answer and Emerson's counterclaim is set forth in paragraphs 13 and 14 of Count II. (*Id*.)

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss

Under Fed. R. Civ. P. 12(b)(6), a pleading may be dismissed for failure to state a claim upon which relief may be granted if it fails to set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face if it pleads facts sufficient to "allow[] the court to draw the reasonable inference that the [party] is liable for the misconduct alleged." *Id.*

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court construes the pleading in the non-movant's favor and accepts the well-pleaded factual allegations therein as true. *Williams v. Fulton County School District*, No. 1:14-CV-0296-AT, 2016 WL 3055898, at *3 (N.D. Ga. Mar. 31, 2016) (*citing Duke*

*v. Cleland,* 5 F.3d 1399, 1402 (11th Cir.1993)).   The pleading need not contain detailed factual allegations to survive dismissal, but it must contain "'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

### B.    Inequitable Conduct

"[T]he habit of charging inequitable conduct in almost every major patent case has become an absolute plague" on "not only the  courts but also the entire patent system." *Therasense,* 649 F.3d at 1289.   To curb that abuse, the Federal Circuit has raised the bar not only for proving—but also for pleading—inequitable conduct. *See id.* at 1290; *Exergen Corp.,* 575 F.3d at 1326-27.

To prevail on the defense of inequitable conduct, the accused infringer must prove that the applicant misrepresented or omitted material information with the specific intent to deceive the U.S. Patent and Trademark Office ("PTO"). *Therasense,* 649 F.3d at 1287. The accused infringer must prove both elements—intent and materiality—by clear and convincing evidence. *Id.* That is, intent and materiality are separate requirements.  *Id.* at 1290.   If the accused infringer meets its burden with respect to *both* elements, then the court must weigh the equities to determine whether the applicant's conduct before the PTO warrants rendering the entire patent unenforceable. *Id*. at 1287.

A district court should not use a "sliding scale" to judge inequitable conduct, "where a weak showing of intent may be found sufficient based on a strong showing of materiality, and vice versa." *Id.* at 1290. Moreover, a court "may not infer intent solely from materiality." *Id.* "Instead, a court must weigh the evidence of intent to deceive independent of its analysis of materiality." *Id.* "Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive." *Id.*

At the pleading stage, accused infringers cannot "simply aver[] the substantive elements of inequitable conduct," but, to satisfy Fed. R. Civ. P. 9(b), must set forth the "particularized factual bases" for their allegations. *Exergen,* F.3d at 1327. The accused infringer must allege facts showing the plausibility of "but-for materiality" and "specific intent to deceive the PTO." *Therasense*, 649 F.3d at 1290-91; *Exergen*, 575 F.3d at 1327 n. 3. To that end, the pleader must identify "the specific who, what, when, where, and how of the material misrepresentation or omission." *Exergen*, 575 F.3d at 1327.

To satisfy the "who" and "when" standards, a pleading must name the person who knew of the material information and deliberately withheld or misrepresented it, and the pleading must indicate when the conduct took place. *Id.* at 1329. To satisfy the "what" and "where" standards, the pleading must identify "which claims,

and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found." *Id*. A pleading must also set forth "why" the withheld information was material and not merely cumulative, and it must set forth "how" an examiner would  have used the information in assessing patentability.  *Id*. at 1329-30. In regard to the "why" and "how" standards, the pleading must indicate "the  particular claim limitations, or combination of claim limitations," that are supposedly absent from the information of record. *Id.* at 1329.  A factual deficiency with respect to any of the foregoing is "fatal under Rule 9(b)" of the Federal Rules of Civil Procedure. *Id.* at 1330.

As to pleading the "intent" element of inequitable conduct, the "relevant 'conditions of mind' . . . include: (1) knowledge of the withheld material information or of the falsity of the material  misrepresentation, and (2) specific intent to deceive the [PTO]." *Exergen*, 575 F.3d at 1327.  Although "knowledge" and "intent" may be averred generally, the pleadings must allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind. *Id.* Because Emerson's affirmative defenses and counterclaims alleging inequitable conduct fail to meet these legal standards, they should be dismissed and stricken.

## III.   ARGUMENT

Emerson's affirmative defenses and counterclaims alleging inequitable conduct contain a mishmash of names, dates and events that are difficult to understand and confusing to follow. Neither SIPCO, nor the Court, should have to sift through Emerson's allegations and piece together a case of so-called inequitable conduct. *Thompson v. BAC Home Loans Servicing LP*, No. 1:12-CV-0221-AT, 2012 WL 12838456 at p. 2 (N.D. Ga. Jan. 26, 2012). This "shotgun" style of pleading is disfavored and, for the reasons set forth below, warrants dismissal of Emerson's affirmative defenses and counterclaims alleging inequitable conduct. *E.g. Frantz v. Walled*, 5163 Fed. Appx. 815, 820-21 (11th Cir. 2013) (holding that the Eleventh Circuit has "repeatedly condemned" shotgun pleadings and that dismissal of such pleadings is proper); *see also id*.

### A.   The Brownrigg Patents

#### 1.   Count I, Alleging Inequitable Conduct Associated with the Brownrigg Patents, Fails to State a Claim upon which Relief Can Be Granted

Count I of Emerson's Counterclaims fails to allege any facts associated with inequitable conduct and should be summarily dismissed for failing to meet the heightened pleading standard set forth in *Therasense* and *Exergen*. The entirety of

Count I (Paragraphs 10 to 12) with respect to the Brownrigg Patents is set forth below:

## COUNT I - DECLARATION OF UNENFORCEABILITY BROWNRIGG PATENTS

10.     Emerson Defendants re-allege and incorporate by reference its allegations as set forth herein in paragraphs 1 through 9 of the Emerson Defendants' Counterclaims as set forth above.

11.     The claims of the '062, '516, '314, '471 and '496 patents are unenforceable because of the inequitable conduct IP CO committed while prosecuting the patents-in-suit or their related patents, as set forth in paragraphs 312 through 376 of Emerson Defendants' Eleventh Defense, above.

12.     The '062 and '516 patents are unenforceable under the doctrine of infectious unenforceability from inequitable conduct that occurred during the prosecution of the '314, '471, and '496 patents because each of these patents are related to the '062 and '516 patents.

(TX Dkt. No. 106).

Clearly, Emerson has not alleged any facts sufficient to meet the heightened pleading standard for inequitable conduct in the text of Count I.[5] Accordingly, the entire count should be dismissed because it fails to state a claim upon which relief can be granted. *Therasense,* 649 F.3d at 1290; *Exergen Corp.,* 575 F.3d at 1326-27.

---

[5] Count I fails to incorporate the paragraphs of Emerson's Eleventh Affirmative Defense regarding alleged inequitable conduct associated with the Brownrigg Patents. Paragraph 12 of Count I ignores Emerson's Eleventh Affirmative Defense entirely. This is in sharp contrast to Count II, which incorporates the paragraphs of Emerson's Twelfth Affirmative Defense by reference.

### 2.    Even If Count I Properly Incorporates Emerson's Eleventh Affirmative Defense, It Still Fails to State a Claim upon which Relief can be Granted

Even if Count I *arguably* incorporates Emerson's Eleventh Affirmative Defense (which it does not), Emerson's inequitable conduct allegations still fail to state a claim upon which relief can be granted. More particularly, despite the fact that Emerson's Eleventh Affirmative Defense includes 64 paragraphs and spans 11 pages, it fails to allege, with requisite specificity, the who, what, when, where, why and how of the material misrepresentations or omissions allegedly committed by IP CO and/or its attorneys. *Exergen*, 575 F.3d at 1327-29. Those allegations, moreover, do not give rise to a reasonable inference of both (1) knowledge of the alleged misrepresentations or omissions, and (2) specific intent to deceive the PTO. *Id.* at 1330.

For example, nowhere in the entirety of the Eleventh Affirmative Defense does Emerson allege with requisite specificity that any person involved with the IP CO Patents knew and understood the purported materiality of the October 14, 2008, Response and/or December 16, 2008, Advisory Action (hereinafter referred to as the "Response / Advisory Documents"). Nor does the Eleventh Affirmative Defense allege with specificity that the same person, at the relevant time, made a conscious decision to withhold them from the PTO in connection with the patent applications

that issued as the asserted '314, '471 and '479 patents, with a specific intent to deceive the PTO. *Drew Techs., Inc. v. Robert Bosch, L.L.C.*, No. 12-15622, 2014 WL 562458, at *3 (E.D. Mich. Feb. 13, 2014) (alleging that one or more individuals committed a particular act is improper because it fails to allege that any one individual necessarily committed the particular act). In addition, Emerson's failure to explain with requisite specificity what the purported materiality of the Response / Advisor Documents is, how it relates to the asserted '314, '471 and '479 patents (if at all), and why it is not cumulative of information that is already before the PTO, is fatal under *Therasense* and *Exergen* . *Therasense*, 649 F.3d at 1312; *Exergen*, 575 F.3d at 1329-30; *see also BlackBerry Ltd. v. Typo Products LLC*, No. 14-CV-00023-WHO, 2014 WL 1867009, at *4 (N.D. Cal. May 8, 2014) (pleading must affirmatively identify the specific claims of the asserted patent to which the withheld reference is relevant, the relevant limitations within those claims of the asserted patent, and where in the withheld references the material information is found); *Cave Consulting Grp., Inc. v. Optuminsight, Inc.*, No. 15-CV-03424-JCS, 2016 WL 1611042, at *13 (N.D. Cal. Apr. 22, 2016) (pleading must identify the specific claims that are implicated by the various prior art materials).

Emerson also fails to explain how the so-called "modified" abstract from the '314 patent is material to patentability of the '314 patent or any other asserted

Brownrigg patent (if at all). Emerson also fails to identify what the so-called changes to the claims of the '314 patent are and how they are material to the patentability of the '314 patent or any other asserted Brownrigg patent (if at all). The same is true with respect to the so-called "new matter" added to the '314 Patent—Emerson fails to identify the alleged "new matter" with requisite specificity and how it is material to the patentability of the '314 patent or any other asserted Brownrigg patent (if at all). *BlackBerry Ltd.*, 2014 WL 1867009, at *4; *Cave Consulting Grp., Inc.* 2016 WL 1611042, at *13.

Instead, Emerson's Eleventh Affirmative Defense contains a smattering of patent applications, issued patents, names, dates and events; but none of it—individually or collectively—equates to inequitable conduct under the *Exergen* and *Therasense* heightened pleading standard. Stated differently, Emerson fails to connect the dots in a manner that can withstand a challenge in the post-*Exergen* and *Therasense* world. Because Emerson's Eleventh Affirmative Defense and Count I of Emerson's Counterclaims fail to state a claim upon which relief can be granted, they should be stricken and dismissed by the Court. *Therasense*, 649 F.3d at 1312; *Exergen*, 575 F.3d at 1329-30.

13

B.      **The Petite Patents**

1.      **Count II, Alleging Inequitable Conduct Associated with the Petite Patents, Fails to State a Claim upon which Relief can be Granted**

Count II of Emerson's Counterclaims, which alleges inequitable conduct associated with the Petite Patents, also fails to meet the heightened pleading standard set forth in *Therasense* and *Exergen*. The entirety of Count II (Paragraphs 13 and 14) with respect to the Petite Patents is set forth below:

### COUNT II - DECLARATION OF UNENFORCEABILITY PETITE PATENTS

13.     Emerson Defendants re-allege and incorporate by reference its allegations as set forth herein in paragraphs 1 through 9 of Emerson's Counterclaims and paragraphs 377 through 424 of Emerson Defendants' Twelfth Defense, above.

14.     The claims of the '692, '661, '732, '780, '893, 492, and '842 patents are unenforceable because of the inequitable conduct committed either while prosecuting those applications directly or by the doctrine of infectious unenforceability through inequitable conduct in procuring the '767, '661 and '059 patent applications.

(TX Dkt. No. 106).

Clearly, no facts sufficient to meet the heightened pleading standard for inequitable conduct have been alleged in the text of Count II; however, it (unlike Count I discussed above) incorporates allegations by reference—in this case the paragraphs of Emerson's Twelfth Affirmative Defense. (TX. Dkt. No. 106 ¶¶

377-424). Thus, SIPCO's arguments above and below apply equally to Emerson's Twelfth Affirmative Defense and Count II of its counterclaims.

Although Emerson's Twelfth Affirmative Defense includes 47 paragraphs and spans 13 pages, it fails to allege with requisite specificity the who, what, when, where, why and how of the material misrepresentations or omissions allegedly committed by SIPCO and/or its attorneys. *Exergen*, 575 F.3d at 1327-29. And the facts it does allege do not give rise to a reasonable inference of *scienter. Id.* at 1330.

More particularly, nowhere in the entirety of the Twelfth Affirmative Defense does Emerson recite with requisite specificity that any person involved with the Petite Patents knew of the Kahn prior art reference, understood its purported materiality **at the relevant time**, and withheld it from the PTO with a specific intent to deceive. Nor does Emerson identify the specific claims, and which limitations in those claims, the allegedly withheld Kahn reference is relevant to and where in Kahn reference information that is material to inequitable conduct is found. *BlackBerry Ltd.,* 2014 WL 1867009, at *4; *Cave Consulting Grp., Inc.* 2016 WL 1611042, at *13.

Significantly, Emerson fails to allege how, with requisite legal support and factual specificity, a PTO *inter partes* review proceeding occurring in 2016 and involving the Kahn prior art reference could somehow retroactively establish the

so-called materiality of that reference at the time the Petite Patents were being prosecuted many years earlier. *Exergen*, 575 F.3d 1312, 1330 (improper to "assume that an individual, who generally knew that a reference existed, also knew of the specific material *information* contained in that reference"). Instead, Emerson weaves a convoluted tale of disparate allegations amounting to nothing more than a hodgepodge of patent applications, issued patents, names, dates and so-called events—none of which are sufficiently explained or connected in a manner that equates to inequitable conduct under the *Exergen* / *Therasense* standard. *Therasense*, 649 F.3d at 1312; *Exergen*, 575 F.3d at 1329-30.

### C.   The '062 and '511 Patents

#### 1.   The '062 and '511 Patents are asserted in a separate case pending in this Court (Civ. A. No. 1:15-cv-00319-AT, Dkt. No. 1) and Leave of This Court is Required to Amend Emerson's Declaratory Judgment Complaint and Add Inequitable Conduct Allegations with respect to the '062 and '511 Patents

The Georgia Action (Civ. A. No. 1:15-cv-00319-AT) is a Declaratory Judgment Action Emerson filed in this District on January 15, 2015. (GA Dkt. No. 1). The Georgia Action concerns two patents—IP CO's '062 Patent (a Brownrigg Patent) and SIPCO's '511 Patent (a Petite Patent). Emerson has not requested and thus has not obtained leave of this Court to amend its Declaratory Judgment Complaint and assert unenforceability of the '062 and '511 Patents in the Georgia

Action. Absent requisite leave of this Court, Emerson's affirmative defenses and counterclaims alleging inequitable conduct with respect to the '062 and '511 patents should be dismissed and stricken in this or any other action.[6]

> **2.**   **Emerson's Eleventh and Twelfth Affirmative Defenses and Counts I and II of its Counterclaims Fail to State a Claim upon which Relief can be Granted with Respect to the '062 and '511 Patents**

Emerson has failed to allege any facts that support a finding of inequitable conduct with respect to the '062 and '511 patents. Indeed, nothing set forth in the Eleventh or Twelfth Affirmative Defenses remotely establishes inequitable conduct in connection with those patents, and the '511 patent is not even mentioned in Count II of Emerson's Counterclaims (Count I identifies the '062 Patent). Having failed to meet the *Exergen* and *Therasense* standard of pleading, any and all allegations

---

[6] Indeed, through a myriad of motions filed in the Georgia Action and Texas Action, Emerson protested at every conceivable opportunity to SIPCO's claims proceeding in Texas under the first to file rule. (TX Dkt. Nos. 10, 13, 71) (GA Dkt. Nos. 51, 81). Having convinced the Eastern District of Texas that the Northern District of Georgia is the first-filed court, Emerson should be precluded from bringing any claims with respect to the '062 and '511 patents in the Texas Action. Furthermore, Emerson should be precluded from bringing any inequitable conduct claims (or asserting any inequitable conduct defenses) in the Texas Action because they are compulsory claims in the Georgia Action and, as set forth above, leave of Court has not been requested or granted. Finally, because the Georgia Action has been pending for 19 months and Emerson has not sought leave to amend and add inequitable conduct, it should be precluded from doing so at this juncture in the litigation.

relating to so-called inequitable conduct committed in connection with the '062 and '511 Patents should be stricken and/or dismissed.

## IV.    CONCLUSION

For the reasons set forth above, SIPCO respectfully requests that this Court dismiss Counts I and II of Emerson's Counterclaims, strike Emerson's Eleventh and Twelfth Affirmative Defenses and dismiss and strike any and all reference to inequitable conduct in association with the '062 and '511 Patents.

Respectfully submitted, this 28th day of July, 2016.

/s/ J. Christopher Fox II
J. Christopher Fox, II
Georgia Bar No. 272527
Michael Coleman
Georgia Bar No. 177635
**Thompson Hine LLP**
Two Alliance Center, Suite 1600
3560 Lenox Road
Atlanta, Georgia  30326
Telephone:  404-541-2900
Facsimile:  404-541-2905
Chris.Fox@ThompsonHine.com
Michael.Coleman@ThompsonHine.com

Paul J. Cronin, *Pro hac vice*
James C. Hall, *Pro hac vice*
Timothy J. Reppucci, *Pro hac vice*
Nutter, McClennen & Fish LLP
155 Seaport Boulevard
Boston, Massachusetts  02210-2604
Telephone:  617-439-2000
Facsimile:  617-310-9000
pcronin@nutter.com
jhall@nutter.com
treppucci@nutter.com
***Counsel for SIPCO, LLC and IP CO, LLC***

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1</u>

The undersigned hereby certifies that this filing was prepared using one of the font and point selections approved by this Court in Local Rule 5.1C.  Specifically, Times New Roman font was used in 14 point.

J. Christopher Fox, II_____
J. Christopher Fox, II
Georgia Bar No. 272527

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served all counsel of record with a copy of the within and foregoing *PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS AND STRIKE COUNTERCLAIMS AND AFFIRMATIVE DEFENSES OF INEQUITABLE CONDUCT* using the Court's ECF filing system, which will automatically send a copy to all counsel of record registered to receive service thereby.


J. Christopher Fox, II
J. Christopher Fox, II
Georgia Bar No. 272527

3234052