**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |
|---|---|
| EMERSON ELECTRIC CO., FISHER-ROSEMOUNT SYSTEMS, INC., and ROSEMOUNT INC., <br><br> Plaintiffs, <br><br> v. <br><br> SIPCO LLC, and IP CO., LLC (d/b/a INTUS IQ) <br><br> Defendants. | Civil Action No. 1:15-CV-00319-AT |

**EMERSON'S OPPOSITION TO
MOTION TO DISMISS AND STRIKE COUNTERCLAIMS AND
AFFIRMATIVE DEFENSES OF INEQUITABLE CONDUCT**

Emerson Electric Co., Emerson Process Management LLLP, Fisher-Rosemount Systems, Inc., and Rosemount Inc., (collectively, "Emerson") oppose SIPCO and IP CO's (collectively "SIPCO") Motion to Dismiss and Strike Counterclaims and Affirmative Defenses of Inequitable Conduct (Dkt. No. 134). Contrary to SIPCO's assertions (Dkt. No. 134-1 at 11, 15), Emerson's inequitable conduct Counterclaims and Affirmative Defenses ("the Counterclaims") in the Amended Answer to First Amended Complaint (Dkt. No. 131) easily satisfy the heightened pleading requirement of Federal Rule of Civil Procedure 9(b). *Exergen*

*Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1316 (Fed. Cir. 2009).  The

Counterclaims "identify the specific who, what, when, where, and how of the

material misrepresentation or omission committed before the PTO" and "include

sufficient allegations of underlying facts from which a court may reasonably infer

that a specific individual (1) knew of the withheld material information or of the

falsity of the material misrepresentation, and (2) withheld or misrepresented this

information with a specific intent to deceive the PTO."  *Id*. at 1328–29.

Further, given the specificity of the Counterclaims, they do not constitute a

"shotgun pleading" as SIPCO alleges.  Dkt. No. 134-1 at 9.  A "shotgun pleading"

is "a pleading where the [party] has failed 'to identify his claims with sufficient

clarity to enable the [opposing party] to frame a responsi[ve] pleading.'"

*Thompson v. BAC Home Loans Servicing, LP*, 2012 WL 12838456, *2 (N.D. Ga.,

2012) (citing *Holtz v. Harpagon Co., LLC*, 2010 WL 2595075, *4 (N.D. Ga. June

25, 2010)).  The Counterclaims do not make it "virtually impossible to know which

allegations of fact are intended to support which claim(s) for relief."  *Id*. (citing

*Anderson v. District Bd. of Trs. of Central Fla. Community Coll.*, 77 F.3d 364, 366

(11th Cir. 1996)).  It is clear which Counterclaim allegations of fact are intended to

support Emerson's claim of unenforceability due to inequitable conduct.  Finding

the Counterclaims to be a "shotgun pleading" because of a purported "mishmash of

names, dates and events that are difficult to understand and confusing to follow"
(Dkt. No. 134-1 at 9) would be especially troublesome given that Emerson alleges
SIPCO intentionally created the quagmire (Dkt. No. 131 at ¶ 381).

I.   **STATEMENT OF FACTS**

   **A. Brownrigg Patent Family**

   The Counterclaims include the below allegations about the Brownrigg Patent
Family, which must be accepted as true on SIPCO's motion to dismiss.[1]

   1.  U.S. Patent Nos. 6,044,062[2] ("the '062 Patent"), 6,249,516 ("the '516
Patent"), 8,000,314 ("the '314 Patent"), 8,233,471 ("the '471 Patent"), and
8,625,496 ("the '496 Patent") (collectively "the Brownrigg Patents") are
unenforceable due to inequitable conduct "during the prosecution of these patents'
corresponding and related applications as well as during reexamination of these
patents."  Dkt. No. 131 at ¶ 312, p. 50 Count I at ¶ 11.

---

[1] "To survive a motion to dismiss, a complaint must contain sufficient factual
matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 570 (2007)).  SIPCO's argument about failing to incorporate
paragraphs from the affirmative defenses (Dkt. No. 134-1 at 10 n.5) is a
meaningless elevation of form over substance, and further ignores that Emerson
identifies the fact allegations supporting Count I.  Dkt. 131 at 50, Count I at ¶ 11.

[2] SIPCO is correct that the '062 and '511 Patents were not at issue in the Texas
Action (Dkt. No. 134-1 at 3, n.2).  Emerson is concurrently filing a Motion to
Amend the Complaint to Add Inequitable Conduct Claims in this action with
respect to U.S. Patent No. 6,044,062 and U.S. Patent No. 7,103,511.

2.  The claims of the '314 Patent were obtained through inequitable conduct. *Id*. at ¶¶ 312, 313, 315, 319, 330-357.

3.  Inventors, Edwin B. Brownrigg and Thomas W. Wilson, counsel for IP CO from Troutman Sanders LLP, James Hunt Yancey, Jr., Trenton A. Ward, and Dustin B. Weeks, counsel for IP CO from Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Christopher T. Kent, and counsel for IP CO, Joel Goldman, each owed a duty of candor and good faith to the USPTO relative to the application, prosecution, and reexamination of the '314 Patent and related patents including the reexamination of the '062 Patent.  *Id*. at ¶ 319.

4.  The '314 Patent resulted from application 11/300,902 ("the '902 Application") which in turn purports to be a continuation of application 08/760,895 ("the '895 Application") that resulted in the '062 Patent.  *Id*. at ¶¶ 315, 313.

5.  In the '062 Patent, a *client* process (as opposed to a *server* process) initiates, selects, and maintains routes from the client to the server.  *Id*. at ¶¶ 321-326.  The *server* process disclosed in the '062 Patent specification does *not* select a radio transmission path, but merely "the server stores the radio transmission paths used by clients to route messages to that server and updates the radio transmission path stored in memory when that server detects that a new radio transmission path has been used."  *Id.* at ¶¶ 327-329.

6.  During a reexamination of the '062 Patent (issued from the '895 Application), "IP CO proposed amending the claims to recite, among other things, *a server process* configured to "determine an optimized path from each of the plurality of clients" (*id.* at ¶ 334) but that Patent Examiner Weaver "issued an Advisory Action that rejected the proposed amendments on the grounds that *the specification did not support the proposed claims to a server process configured to determine an optimized path from the clients.*  In that action, Examiner Weaver found that *it was the client nodes themselves that are described in the specification as "choosing a 'best' link to the server"* (*id.* at ¶ 337 (emphasis added)).  *See also*, Ex. A[3] at 4 ("passages of the patent cited for support of such *server process* as introduced by the amendment *do not recite the server process receiving the selected transmission path and determining the optimized path…*;" "*no description of the server determining an optimized path … nor the sending of such optimized*

---

[3] Emerson submits these documents to demonstrate that the inequitable conduct allegations are founded on evidence.  Submission of extrinsic documents does not convert the Motion to Dismiss to a Summary Judgment Motion.  "In ruling on a motion to dismiss, the court may consider an extrinsic document if (1) it is central to a claim in the complaint, and (2) its authenticity is unchallenged. *Urquilla-Diaz v. Kaplan University*, 780 F.3d 1039, 1054 (11th Cir. 2015) (citing *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention,* 623 F.3d 1371, 1379 (11th Cir. 2010)).  Here, the extrinsic documents are central to the inequitable conduct claims and from certified copies of the public record prosecution histories maintained by the United States Patent and Trademark Office which are self-authenticating under Fed. R. Evid. 902(4).

*path from the server to each of the clients is provided in the recited passages of the specification*.")(emphasis added).

7.   Counsel for IP CO, Joel Goldman, filed the '902 Application for the '314 Patent claiming priority to the '895 Application which resulted in the '062 Patent (Dkt. No. 131, ¶ 339); modified the abstract to remove language that the "client process of each of the clients initiates, selects, and maintains a radio transmission path to the server" and inserted language that "each client *and server* includes programs for determining optimum routes between them" (*id.* at ¶ 342 (emphasis added)); added a new claim 53 that "required that *the server* [a/k/a gateway] include a digital controller that 'changes the transmission paths of second nodes to optimize the transmission paths'" (*id.* at ¶ 343 (emphasis added)); and materially falsely stated to the USPTO that "[n]o new matter has been added to the specification" "with the intention of misleading the Examiner into believing that no new matter had been inserted into the application in violation of the Patent Act" (*id.* at ¶¶ 344-345).  *See also*, Ex. B at 6, 12.

8.   Joel Goldman remained involved in the '314 Patent prosecution when James Yancey and Dustin Weeks also became involved (Dkt. No. 131, ¶ 349); on March 17, 2010, while the '314 Patent's application was still pending, but *after* the December 16, 2008 Advisory Action (Ex. A) was issued (finding no support for a

*server* determining an optimized path) James Yancey filed an Information

Disclosure Statement ("IDS") (Ex. C) purportedly "[t]o ensure that the Examiner

has received all items known to Applicant" (*id.* at ¶ 350, *see also* Ex. C at 2);

although Yancey disclosed the pending reexamination of the '062 Patent and

provided certain materials from the reexamination proceeding, he did not include

the October 14, 2008 Response after final filed in the '062 patent reexamination

(which tried to amend claims to include a server process determining an optimized

transmission path), nor did he include Examiner Weaver's December 16, 2008

Advisory Action refusing entry of the proposed claim amendments on the grounds

that they contained new matter not supported by the original '095 application

specification because the specification had "no description of the server

determining an optimized path" (*id.* at ¶¶ 351-353, *see also* Ex. A at 4).

9.  "Because at least application claim 80 of the ['902 Application] included a

limitation directed to a digital controller that 'changes the transmission paths of

each of the second nodes to optimize the transmission paths,' Examiner Weaver's

finding that this feature was not disclosed in the specification filed in 1996 was

highly material to the patentability of at least that claim" (now claim 12 of the '314

Patent) (Dkt. No. 131, ¶¶ 354-355), and "had the examiner handling the ['902

Application which became the '314 Patent] known of Examiner Weaver's earlier,

unrebutted determination that the originally-filed application *did not support claiming route selection within the server*, the claims of the '314 Patent would not have issued" (*id.* at ¶ 356 (emphasis added)).

10. "Mr. Yancey's March 17, 2010 representation that 'all materials known to applicant' were being supplied with the IDS was both false and material … the falseness and materiality of that statement were known to at least Mr. Yancey, Mr. Weeks and Mr. Goldman.  Mr. Yancey's submission of a materially false statement, and Messrs. Weeks and Goldman's failure to correct that statement, violated the duty of candor each of them owed to the USPTO." *Id.* at ¶ 357.

11. On June 11, 2009, a further continuation application was filed that claimed priority back to the original '895 Application (for the '062 Patent), the application was assigned Application Number 12/482,892 ("the '892 Application"), and issued as the '471 Patent. *Id.* at ¶ 358.

12. The '062 Patent reexamination and '902 Application (for the '314 Patent) were pending at the time the '892 Application was filed on June 11, 2009, and the '471 Patent "issued on July 31, 2012 with several claims that included the concept of a server selecting the radio transmission path used to route information from a client to a server." *Id*. at ¶ 360.  This included claim 40 of the '471 Patent with

"the limitation of a server process configured to determine an optimized transmission path for each of the plurality of clients." *Id.* at ¶¶ 359-361.

13. Joel Goldman, Dustin Weeks, and James Yancey all participated in the prosecution of the application leading to the '471 Patent but each failed to disclose to the USPTO the October 14, 2008 Response after final IP CO filed in the '062 Patent reexamination (which tried to amend claims to include a server process determining an optimized transmission path), and Examiner Weaver's December 16, 2008 Advisory Action (refusing entry of the proposed claim amendments on the grounds that they contained new matter not supported by the original '895 Application specification (for the '062 Patent) because the specification had "no description of the server determining an optimized path"). *Id.* at ¶ 363.

14. "Because at least claim 40 of the '471 patent includes a limitation directed to a digital controller that 'changes the transmission paths of each of the second nodes to optimize the transmission paths,' Examiner Weaver's December 16, 2008 finding that this feature was not disclosed in the specification filed in 1996 was highly material to the patentability of at least that claim" and "had the examiner handling the [application leading to the '471 Patent] known of Examiner Weaver's earlier, unrebutted determination that the originally-filed application did not support claiming route selection within the server, at least claim 40 of the '471

patent would not have issued." *Id.* at ¶ 364-365. Further, "Messrs. Yancey, Weeks and Goldman's decision to withhold submission of both IP CO's October 14, 2008 after final Response and Examiner Weaver's December 16, 2008 Advisory Action violated the duty of candor each of them owed to the USPTO." *Id.* at ¶ 365.

15. The '496 Patent also resulted from a continuation application from the '062 Patent's '895 Application (*id.* at ¶ 366); the '496 Patent includes claims directed to a server selecting or determining an optimized transmission path (*id.* at ¶¶ 366-367); Goldman, Weeks and Yancey were all involved in the prosecution of the '496 Patent (*id.* at ¶ 369); during that prosecution Goldman, Weeks, and Yancey failed to disclose IP CO's prior attempt to get claims with similar limitations in the '062 reexamination that were rejected by Examiner Weaver's Advisory Action because the specification had "no description of the server determining an optimized path" (*id.* at ¶ 370); and "claims 1 and 21 of the '496 Patent contain limitations directed to a server that purports to optimize transmission paths from clients to the server" (*id.* at ¶ 371); and if disclosure of that material information had been made, the claims would not have issued (*id.* at ¶¶ 371-373).

16. The '062 and '516 Patents "are unenforceable under the doctrine of infectious unenforceability from inequitable conduct that occurred during the

prosecution of the '314, '471, and '496 patents because each of these patents are related to the '062 and '516 patents."  *Id.* at 50, Count I, ¶ 12.

### B. Petite Patent Family

The Counterclaims include the below allegations about the Petite Patent Family, which must be accepted as true on SIPCO's motion to dismiss.

17. U.S. Patent Nos. 6,437,692 ("the '692 Patent"), 7,468,661 ("the '661 Patent"), 8,013,732 ("the '732 Patent"), 8,754,780 ("the '780 Patent"), 6,914,893 ("the '893 Patent"), 7,103,511 ("the '511 Patent"), 7,697,492 ("the '492 Patent"), and 8,908,842 ("the '842 Patent") (collectively "the Petite Patents") are unenforceable due to inequitable conduct during their patent prosecution.  *Id*. at ¶ 377.

18. "Kahn et al, "Advances in Packet Radio Technology," Proceedings of the IEEE, Vol. 66, Nol. 11, pp. 1468-1496 (November 1978) ("Kahn") is prior art to all of the Petite Patents" (*id*. at ¶ 382) and is material to the Petite Patents because, among other things, "it teaches transceivers coupled to sensors" (*id*. at ¶ 389, *see also* Ex. D).

19. As of no later than December 28, 2005, named inventor Thomas Petite and his patent attorney James Yancey knew of the Kahn reference and its relevance to

the prosecution of the Petite Patent family because it was cited in the prosecution of the '511 Patent.  *Id*. at ¶ 383.

20. At the time Kahn was cited in the '511 Patent prosecution, it was *not* cited in the prosecution of U.S. Patent 7,053,767 ("the '767 Patent") even though it was relevant to pending claim 73 of that patent and was known to Thomas Petite and James Yancey.  Further, Petite's other patent attorneys Daniel R. McClure and N. Andrew Crain, "either knew about Kahn or were willfully kept blind to its existence by one or more of the above entities that knew of it."  *Id*. at ¶¶ 384-386.

21. After an October 11, 2005 Final Office Action rejecting Petite's patent attorney's argument with respect to claim 73 of the '767 Patent that the cited references "do[] not disclose, teach, or suggest the 'transceiver coupled to a sensor'" (*id*. at ¶ 387), Petite's patent attorney re-argued the point on January 11, 2006 (*id*. at ¶ 388; Ex. E at 8) and claim 73 was allowed.

22. Despite having knowledge of the Kahn reference and its relevance to prosecution of Petite Patents because it was cited in the '511 patent prosecution on December 28, 2005 (*id*. at ¶ 383), Kahn *was never cited* in the '767 Patent prosecution (including in the January 11, 2006 Response to Office Action) even though it was material to the position of prior art disclosure of transceivers coupled to sensors (*id*. at ¶ 390).

23. The '767 Patent was procured by inequitable conduct (*id*. at ¶ 392), and because it is in the line of asserted parent '692 Patent and asserted children '661, '732, and '780 Patents, and is related to sister '893, '511, '492, and '842 Patents, the '767 Patent inequitable conduct infects the asserted patent and makes them unenforceable (*id*. at ¶¶ 393-394).

24. For the asserted '661 Patent, in addition to the infectious unenforceability from the '767 Patent, the '661 Patent itself was procured through inequitable conduct (*id*. at ¶ 402) because Thomas Petite and the same patent attorneys, N. Andrew Crain and James Yancey (*id*. at ¶ 397) similarly failed to disclose Kahn in January 2008 during prosecution of the '661 Patent (*id*. at ¶¶ 398, 400) despite the claim limitation of a "transceiver electrically interfaced with a sensor" being an issue with respect to at least claim 1 (*id*. at 396, 398) and the known materiality of Kahn to the Petite Patents (*id*. at ¶¶ 395, 399-400).

25. The inequitable conduct during the '661 Patent prosecution infect and render unenforceable the asserted parent '692 Patent, asserted children '732 and '780 Patents, and sister '893, '511, '492, and '842 Patents. *Id*. at ¶¶ 403-404.

26. Related patent 7,978,059 ("the '059 Patent") was procured through inequitable conduct (*id*. at ¶ 411) because Petite and patent attorneys, N. Andrew Crain, John S. Pratt, and Brenda Holmes (*id*. at ¶ 407) similarly failed to disclose

Kahn in December 2008 or at any time during prosecution of the '059 Patent (*id*. at ¶¶ 405, 410) despite the claim limitation of a "transceiver electrically interfaced with a sensor" being an issue with respect to at least claim 1 (*id*. at ¶ 406) and the known materiality of Kahn to the Petite Patents (*id*. at ¶¶ 405, 409-410).

27. The inequitable conduct during the '059 Patent prosecution infect and render unenforceable the asserted parent '692 and '661 Patents, asserted children '732 and '780 Patents, and sister '893, '511, '492, and '842 Patents.  *Id*. at ¶¶ 412-413.

28. For the '732 Patent, in addition to the infectious unenforceability from the '767, '661, and '059 Patents, the '732 Patent was itself procured through inequitable conduct (*id*. at ¶ 415) because patent attorney James Yancey (*id*. at ¶ 414) similarly failed to disclose timely the Kahn reference during prosecution of the '732 Patent (*id*. at ¶¶ 414-415) despite the known materiality of Kahn to the Petite Patents (*id*. at ¶ 415).

29. "Thomas Petite and other employees and representatives of the assignees of the Petite Patents who participated in the prosecution of the Petite Patents intentionally created a quagmire of over 50 patent filings in and around the Petite Patents … so that evaluation of the parentages of the applications, redundant claiming within the applications, recapture of previously surrendered subject matter within the applications, prosecution history estoppel within the applications,

inconsistent positions taken within the respective prosecutions, the scope of the applications, and the compliance with their duties of candor and the duties of candor of their attorneys were intentionally obfuscated" (*id*. at ¶ 381), in "a coordinated intent to deceive the Patent Office", and "[t]he high degree of materiality of Kahn, further evidenced by the institution of IPR2015-01973 in the '732 patent, indicates motive and intent to deceive the Patent Office" (*id*. at ¶ 415).

30. The Counterclaims allege "motive and intent to deceive the Patent Office" in prosecuting the Petite Patents (*id*. at ¶ 415) and set forth the specific facts upon which the belief is reasonably based (*id*. at ¶¶416-424), including, "[t]he many times that Applicant cited Kahn in the '511 and '492 sister applications [(the Kahn submission in the '492 Patent application withheld critical page 1477, SOF 423 and Ex. F)] without citing it in the '692/'767/'661/'059/'732 string is systematic activity suggesting intent to engage in deliberate concealment of Kahn … with intent to deceive the Patent Office into allowing those applications to issue as patents even though the Applicant was making arguments in direct contradiction to the known teachings of Kahn" (*id*. at ¶ 424).

## II.    LEGAL STANDARDS

### A. Inequitable Conduct Pleading Standard

Allegations of inequitable conduct must "satisfy the heightened pleading requirement of Federal Rule of Civil Procedure 9(b)." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1316 (Fed. Cir. 2009). "Whether inequitable conduct has been pleaded with particularity under Rule 9(b) is a question governed by Federal Circuit law." *Id*. at 1318. Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Under Federal Circuit law, "to plead the 'circumstances' of inequitable conduct with the requisite 'particularity' under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO. Moreover, although 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1328–29. "[T]o identify the 'who' of the material omissions and misrepresentation," the pleading asserting inequitable

conduct must "name the specific individual associated with the filing or

prosecution of the application issuing as the [subject] patent, who both knew of the

material information and deliberately withheld or misrepresented it." *Id*. at 1329.

To identify "the 'what' and 'where' of the material omissions," the pleading must

"identify which claims, and which limitations in those claims, the withheld

references are relevant to, and where in those references the material information is

found." *Id*. To meet the Federal Circuit's inequitable conduct pleading standard,

the pleading must "identify the particular claim limitations, or combination of

claim limitations, that are supposedly absent from the information of record." *Id*.

at 1329. "Such allegations are necessary to explain both 'why' the withheld

information is material and not cumulative, and 'how' an examiner would have

used this information in assessing the patentability of the claim." *Id*. at 1329-30.

"Pleading ['deceptive intent'] on 'information and belief' is permitted under Rule

9(b) when essential information lies uniquely within another party's control, but

only if the pleading sets forth the specific facts upon which the belief is reasonably

based." *Id*. at 1330.

## III.  ARGUMENT

### A.  Emerson's Counterclaims Properly Assert Inequitable Conduct

Contrary to SIPCO's assertions (Dkt. No. 134-1 at 11, 15), Emerson's Counterclaims meet and exceed the Federal Circuit's standard for pleading inequitable conduct because they "identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO" and "include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1328–29.

### 1. The Counterclaims Properly Assert Inequitable Conduct Regarding the Brownrigg Patents

The Counterclaims identify the "who" of the material omissions and misrepresentation relating to the Brownrigg Patents (the '314, '471, '496, '062, and '516 Patents) because they "name the specific individual associated with the filing or prosecution of the application issuing as the [subject] patent, who both knew of the material information and deliberately withheld or misrepresented it." *Exergen*, 575 F.3d at 1329.  The specific persons named regarding the '314 Patent are Joel Goldman, James Yancey, and Dustin Weeks.  SOF 3, 7-10.  The Counterclaims identify the same "who" of the material omissions and

misrepresentation relating to the '471 and '496 Patents: Joel Goldman, Dustin Weeks, and James Yancey.  SOF 3, 13-14 ('471 Patent) and SOF 15 ('496 Patent).

The Counterclaims identify the "what" and "where" of the material omissions regarding the Brownrigg Patents because they "identify which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found."  *Exergen*, 575 F.3d at 1329.  For the '314 Patent, Joel Goldman materially altered the specification, falsely claiming no new matter was being added, but adding claims directed to a server that selected an optimized path (SOF 7), then neither he nor James Yancey or Dustin Weeks advised the Examiner handling the '314 Patent application that Examiner Weaver found no support in the specification as filed in 1996 for such claims (SOF 6, 10).  Relatedly, these three individuals withheld Examiner Weaver's Advisory Action from the IDS filed (SOF 8).  The claim to which the omission is relevant is at least claim 12 of the '314 Patent (SOF 9) and the relevant limitation in the claim is the limitation claiming optimized route determination occurring within the *server* (as opposed to within the *client*) (SOF 9).  The Counterclaims similarly identify the "what" and "where" of the material omissions regarding the '471 and '496 Patents: the fact that Examiner Weaver had previously found in the Advisory Action in the '062 reexamination proceeding that the

-19-

original parent application to which the '471 and '496 Patents claimed priority did *not* support claims relating to a server process in which a server selected or determined an optimized path (SOF 6, 13, 15), a fact neither Joel Goldman, Dustin Weeks, or James Yancey disclosed when prosecuting the '471 and '496 Patents, even though the patents had claims directed to that limitation (SOF 12-14, 15). The claim to which the omission is relevant is at least claim 40 of the '471 Patent (SOF 12, 14) and claims 1 and 21 of the '496 Patent (SOF 15). The relevant limitation in the claim is the limitation claiming optimized route determination occurring within the *server* (as opposed to within the *client*) (SOF 12, 14. 15).

The Counterclaims "explain both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claim" for the Brownrigg Patents because they "identify the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record." *Exergen*, 575 F.3d at 1329-30. Again, the relevant claim limitation for each patent is the limitation claiming optimized route determination occurring *within the server* (as opposed to within the *client*) (SOF 9, 12, 14, 15). In assessing the patentability of the claims of the '314 Patent that have optimized route determination by the server, such as claim 12, had the '314 Patent's examiner been apprised of Examiner Weaver's

conclusion that the parent application's specification contained "no description of the server determining an optimized path" (SOF 6) the claims of the '314 Patent would not have issued (SOF 9). Similarly, in assessing the patentability of the claims that have optimized route determination by the server in the '471 Patent, such as claim 40, and the '496 Patent, such as claims 1 and 21, had the respective examiners been apprised of Examiner Weaver's conclusion that the parent application's specification contained "no description of the server determining an optimized path" (SOF 6, 13), the claims of the '471 and '496 Patents would not have issued (SOF 14, 15).

The Counterclaims properly plead deceptive intent as to the Brownrigg Patents because deceptive intent is alleged "on information and belief" (SOF 10), "essential information lies uniquely within [SIPCO's] control," and "the pleading sets forth the specific facts upon which the belief is reasonably based." *Exergen*, 575 F.3d at 1330. Essential information to prove deceptive intent lies uniquely in SIPCO and IP CO's and their patent attorneys' control. The Counterclaims set forth the specific facts upon which the belief is reasonably based. The specific facts are that IP CO's patent attorneys originally tried to amend the '062 Patent to get claims with the *server* determining an optimized path, but were rejected by Examiner Weaver's Advisory Action finding no support for such a limitation in the

'062 Patent specification (SOF 6); that IP CO's patent attorneys then continued prosecution of claims in what became the '314 Patent directed to a server determining an optimized path, while swearing that no new matter was added (SOF 7); that IP CO's patent attorneys submitted an IDS that selectively excluded Examiner Weaver's Advisory Action (SOF 8), and that if disclosure had been properly made, the '314 Patent would not have issued (SOF 9).

The Counterclaims also properly plead deceptive intent as to the '471 and '496 Patents because the Counterclaims set forth the specific facts upon which the allegations are reasonably based.  The specific facts are again that IP CO's patent attorneys tried to amend the '062 Patent to get claims with the *server* determining an optimized path, but were rejected by Examiner Weaver's Advisory Action finding no support for such a limitation in the '062 specification (SOF 6, 13); that IP CO's patent attorneys then prosecuted claims of the '471 and '496 Patents on continuation applications claiming priority to the '062 Patent that included the server determining an optimized path (SOF 12, 15); that IP CO's patent attorneys did not disclose the prior attempt to amend the '062 Patent claims or Examiner Weaver's Advisory Action (SOF 13, 15), and that if disclosure had been properly made, the '471 and '496 Patents would not have issued (SOF 14, 15).

The Counterclaims properly assert inequitable conduct for the '062 Patent and the '516 Patent under the doctrine of infectious unenforceability from the inequitable conduct that occurred during the prosecution of the '314, '471, and '496 patents, as set forth above and in the Counterclaims, because each of these patents are integrally related to the '062 and '516 patents.  SOF 16.

### 2. The Counterclaims Properly Assert Inequitable Conduct Regarding the Petite Patents

The Counterclaims identify the "who" of the material omissions and misrepresentation relating to the Petite Patents (the '692, '661, '732, '780, '893, '511, '492, and '842 Patents) because they "name the specific individual associated with the filing or prosecution of the application issuing as the [subject] patent, who both knew of the material information and deliberately withheld or misrepresented it." *Exergen*, 575 F.3d at 1329.  The specific persons named regarding the Petite Patents are Thomas Petite, James Yancey, Daniel R. McClure, and N. Andrew Crain (SOF 19-20, 24), as well as John S. Pratt and Brenda Holmes (SOF 26).

The Counterclaims identify the "what" and "where" of the material omissions regarding the Petite Patents because they "identify which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found." *Exergen*, 575 F.3d at 1329.  For the Petite Patents, the material omission is the failure to identify the

prior art Kahn reference (SOF 18, 20, 22, 24, 26, and 28) disclosing transceivers coupled to sensors (SOF 18).  The claims of the Petite Patents to which the omission is relevant are identified as claim 73 of the '767 Patent (a patent in the same family as the Petite Patents) (SOF 20), claim 1 of the '661 Patent (SOF 24), claim 1 of the '059 Patent (a patent in the same family as the Petite Patents) (SOF 26) and the claims of the asserted parent '692 and '661 Patents, asserted children '732 and '780 Patents, and sister '893, '511, '492, and '842 Patents (SOF 23, 25, 27).  The relevant limitation in the claims is the limitation of "transceivers coupled to sensors" as taught by the undisclosed Kahn reference (SOF 18) and claimed in at least claim 73 of the '767 Patent (SOF 20-21), claim 1 of the '661 Patent (SOF 24), and claim 1 of the '059 Patent (SOF 26).

The Counterclaims "explain both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claim" for the Petite Patents because they "identify the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record."  *Exergen*, 575 F.3d at 1329-30.  Again, the relevant claim limitation is the limitation claiming "transceivers coupled to sensors" as taught by the undisclosed Kahn reference (SOF 18).  In assessing the patentability of the claims of the Petite Patents claiming

"transceivers coupled to sensors," had the Petite Patents' examiners been apprised of the Kahn reference, the claims of the Petite Patents would not have issued because that was the basis of rejection of claim 73 of the '767 Patent (SOF 21) and the prosecuting patent attorneys argued and re-argued that the examiner's cited combination of references "does not disclose, teach, or suggest the 'transceiver coupled to a sensor'" (SOF 21) despite having knowledge of the Kahn reference and its relevance (SOF 18-19).

The Counterclaims properly plead deceptive intent with regard to the Petite Patents because "the pleading sets forth the specific facts upon which the belief is reasonably based." *Exergen*, 575 F.3d at 1330. SOF 30.

### B. Emerson's Affirmative Defenses Properly Assert Inequitable Conduct

Emerson's Affirmative Defenses rely on the same allegations of fact alleging inequitable conduct as the Counterclaims, and thus also easily satisfy the heightened pleading requirement of Rule 9(b) for the same reasons as the Counterclaims. *Exergen*, 575 F.3d at 1316. They should not be stricken.

## IV.   CONCLUSION

For the foregoing reasons, Emerson respectfully requests that SIPCO and IP CO's Motion to Dismiss and Strike Counterclaims and Affirmative Defenses of Inequitable Conduct (Dkt. No. 134) be denied.

Respectfully submitted this 26th day of August, 2016

By: /s/ Damon J. Whitaker
    William V. Custer
    Georgia Bar No. 202910
    bill.custer@bryancave.com
    Damon J. Whitaker
    Georgia Bar No. 752722
    damon.whitaker@bryancave.com
    **BRYAN CAVE, LLP**
    One Atlantic Center, 14th Floor
    1201 W. Peachtree St., N.W.
    Atlanta, Georgia  30309
    Tel:  404-572-6828
    Fax: 404-420-0828

    /s/ Donald L. Jackson
    Donald L. Jackson (*Pro Hac Vice*)
    James D. Berquist (*Pro Hac Vice*)
    J. Scott Davidson (*Pro Hac Vice*)
    **DAVIDSON BERQUIST JACKSON & GOWDEY, LLP**
    8300 Greensboro Dr., Suite 500
    McLean, Virginia 22102
    Telephone: (571) 765-7700
    Facsimile: (571) 765-7200
    djackson@dbjg.com
    jberquist@dbjg.com
    sdavidson@dbjg.com

    *Attorneys for Emerson Electric Co., Emerson Process Management LLLP, Fisher-Rosemount Systems, Inc., and Rosemount Inc.*

## Local Rule 7.1(D) Certification

I hereby certify that the foregoing pleading has been prepared with Times New Roman font, 14 point, one of the font and point selections approved by the Court in L.R. 5.1B, N.D. Ga.

/s/ Damon J. Whitaker
Georgia Bar No. 752722

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I filed **EMERSON'S' OPPOSITION TO MOTION TO DISMISS AND STRIKE COUNTERCLAIMS AND AFFIRMATIVE DEFENSES OF INEQUITABLE CONDUCT** with the Clerk of Court using the CM/ECF system, which will automatically notify SIPCO's counsel of record as follows:

| | |
|---|---|
| J. Christopher Fox, II | Paul J. Cronin |
| Michael Coleman | James C. Hall |
| **THOMPSON HINE LLP** | **NUTTER, MCCLENNEN & FISH LLP** |
| Two Alliance Center, Ste 1600 | |
| 3560 Lenox Road | 155 Seaport Boulevard |
| Atlanta, Georgia 30326 | Boston, Massachusetts 02210 |
| Chris.Fox@ThompsonHine.com | pcronin@nutter.com |
| Michael.Coleman@ThompsonHine.com | jhall@nutter.com |

Dated:  August 26, 2016          By: /s/ Damon J. Whitaker
Georgia Bar No. 752722