# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| EMERSON ELECTRIC CO., *et al.,* | : | |
| Plaintiffs | : | |
| v. | : | CIVIL ACTION NO. 1:15-CV-0319-AT |
| SIPCO LLC, *et al.,* | : | |
| Defendants | : | |

## SPECIAL MASTER'S REPORT AND RECOMMENDATION ON EMERSON'S MOTION TO STAY PENDING *INTER PARTES* REVIEW [Dkt. 175]

BEFORE the Court is "Emerson Electric Co., Emerson Process Management LLLP, Fisher-Rosemount Systems, Inc., and Rosemount Inc.'s Motion to Stay Pending *Inter Partes* Review" [Dkt. 175].  Also before the Court is "Defendants' Opposition to Plaintiffs' Motion to Stay Pending *Inter Partes* Review [Dkt. 190] and Emerson's Reply in Support of Its Motion to Stay Pending *Inter Partes* Review [Dkt. 193].

## I.
## Referral to the Special Master

By Order dated October 3, 2016 [Dkt. 158], the Court appointed the undersigned as special master under Rule 53(a)(1), FED. R. CIV. P., to, *inter alia*, address discovery disputes in this cause.  The foregoing falls within the scope of the motions referred to the master under that Order.  The following is the master's report and recommendation.

For the reasons discussed below, the master RECOMMENDS that the motion be GRANTED-IN-PART.  The master recommends that a temporary and partial stay issue until the U.S. Patent and Trademark Office, Patent Trial and Appeal Board (PTAB) has issued institution decisions in all of the pending IPRs and CBM, which are currently estimated to be completed by June 13, 2017.

The master RECOMMENDS that such stay not extend to current discovery that has been initiated, or current discovery disputes.  Namely, the parties will complete all current initiated

discovery, including resolution of any current discovery disputes.  If the parties believe that any particular current discovery or discovery disputes should be likewise stayed, the parties may raise the issue with the master or Court.

The master FURTHER RECOMMENDS that the parties be directed to advise the Court promptly after all such institution decisions have been issued by the PTAB, and to provide the Court with copies of the same.

The master FURTHER RECOMMENDS that the issue of whether a stay should be continued beyond the date when the PTAB issues institution decisions be revisited in light of the claims and prior art involved in those institution decisions.

The master FURTHER RECOMMENDS that the parties, in conjunction with the master, promptly provide the Court with a proposed revised scheduling order taking into account a current, temporary stay with contingencies for whether a stay will be continued after the PTAB issues institution decisions in the pending IPRs/CBM review.

## II.
## Brief Description of *Inter Partes* Review and CBM Review

### A.    *Inter Partes* Review

The America Invents Act (AIA), Pub. L. No. 112-29, 125 Stat. 284 *et seq.* (2011), *inter alia*, enacted *inter partes* review (IPR) (along with the related post-grant review (PGR)) to replace the prior *inter partes* reexamination practice.  *Inter partes* review became available on September 16, 2012.

Under 35 U.S.C. § 311(a), "a person who is not the owner of a patent may file with the Office a petition to institute an *inter partes* review of the patent."  "A petitioner in an *inter partes* review may request to cancel as unpatentable 1 or more claims of a patent only on a ground that could be raised under section 102 [anticipation] or 103 [obviousness] and only on the basis of prior art consisting of patents or printed publications." § 311(b).

After a petition meeting the requirements of § 312 (and accompanying regulations) is filed, the patent owner may file a preliminary response.  § 313.  The PTO is required to determine whether to institute an IPR within three months after receiving a patent owner's preliminary response under § 313, or the last day on which such response may be filed.  § 314(b).  An IPR may be instituted if the PTO "determines that the information presented in the petition filed under section 311 and any response filed under section 313 shows that there is a reasonable likelihood that the petitioner would

prevail with respect to at least 1 of the claims challenged in the petition." § 314(a). The decision whether to institute an IPR has become known as the "institution decision."

In rendering an "institution decision," the PTO is not required to grant IPR on all of the claims asserted in a petition, or on all of the grounds asserted in a petition.

After institution, an IPR is conducted in accordance with § 316 (and regulations thereunder) before the Patent Trial and Appeal Board (PTAB). There is a limited procedure for allowing a patent owner to make amendments during an IPR. § 316(d). The standard for claim construction is the "broadest reasonable interpretation," *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2134-35 (2016), and the burden for proving unpatentability is "preponderance of the evidence," § 316(e), as opposed to the higher "clear and convincing" standard applied during district court litigation.

An exception to the "broadest reasonable interpretation" standard of claim construction occurs if a patent expires during reexamination or IPR. Then the normal claim construction standards of *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), apply. *See*, *In re CSB System International, Inc.*, 832 F.3d 1335, 1341 (Fed. Cir. 2016), *In re Rambus Inc. (Rambus I)*, 694 F.3d 42, 46 (Fed. Cir. 2012).

At the conclusion of an IPR "trial," the PTAB issues a "final written decision," § 318(a), with respect to the patent claims for which IPR was instituted, as well as any amended claims. *Id.* That "final written decision" must be rendered within one year after the "institution decision," although under limited circumstances, that time period may be extended by no more than six months. § 316(11). A party dissatisfied with the PTAB's "final written decision" may appeal to the Federal Circuit. § 319.

In general terms, there is roughly an eighteen-month time period between the filing of a petition and the PTAB's "final written decision":



**B.    CBM Review**

The AIA also implemented a transitional program for post-grant review of "covered business method patents" (CBM).  CBM review is address in an uncodified section, § 18, of the AIA.

The term "covered business method patent" is defined as a "patent that claims a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service, except that the term does not include patents for technological inventions." § 18(d)(1).  Additionally, the PTO, by regulation, 37 C.F.R. § 42.301(b), has explained that "[i]n determining whether a patent is for a technological invention solely for purposes of the Transitional Program for Covered Business Methods (section 42.301(a)), the following will be considered on a case-by-case basis: whether the claimed subject matter as a whole recites a technological feature that is novel and unobvious over the prior art; and solves a technical problem using a technical solution."

Under § 18(a)(1)(A), the procedures for "post-grant review" under 35 U.S.C. § 321 *et seq.* generally apply.  Those procedures, similar to an IPR, begin with a petition, § 322, a patent owner's preliminary response, § 323, an "institution decision," § 324, conduct of the CBM review, § 326, a final written decision by the PTAB, § 328, and appeal to the Federal Circuit, § 329.

Under § 18(b), "Request for a Stay":

(1) IN GENERAL--If a party seeks a stay of a civil action alleging infringement of a patent under Section 281 of title 35, United States Code, relating to a transitional proceeding for that patent, the court shall decide whether to enter a stay based on--

(A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;

(B) whether discovery is complete and whether a trial date has been set;

(C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and

(D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

Under § 18(b)(2), "[a] party may take an immediate interlocutory appeal from a district court's decision under paragraph (1). The United States Court of Appeals for the Federal Circuit

shall review the district court's decision to ensure consistent application of established precedent, and such review may be de novo."

## III.
## Background and Patents-In-Suit

On January 30, 2015, Emerson Electric Co., Fisher-Rosemount Systems, Inc., and Rosemount Inc. (collectively "Emerson") filed the current action, Case No. 1:15-cv-00319-AT, against SIPCO, LLC and IP CO, LLC (d/b/a INTUS IQ) (collectively "SIPCO") seeking a declaratory judgment that claims in U.S. Patent No. 7,103,511 (the '511 patent) and U.S. Patent No. 6,044,062 (the '062 patent) were invalid and not infringed.

On October 16, 2015, SIPCO filed Civil Action 6:15-cv-907 in the United States District Court for the Eastern District of Texas, Tyler Division, alleging that Emerson infringed ten patents, namely U.S. Patent Nos. 7,697,492 (the '492 patent), 6,437,692 (the '692 patent), 6,914,893 (the '893 patent), 6,249,516 (the '516 patent), 7,468,661 (the '661 patent), 8,000,314 (the '314 patent), 8,223,471 (the '471 patent), 8,625,496 (the '496 patent), 8,754,780 (the '780 patent), and 8,908,842 (the '842 patent).  In an amended complaint, SIPCO additionally alleged infringement of U.S. Patent No. 8,013,732 (the '732 patent).

The patents-in-suit fall into two families: (1) Brownrigg patents, consisting of the '062, '516, '314, '471 and '496 patents, and (2) Petite patents, consisting of the '692, '661, '732, '780, '893, '511, '492 and '842 patents.

By Order dated July 1, 2016, the Eastern District of Texas granted-in-part Emerson's Motion to Dismiss or Transfer [Dkt. 10, Texas action], and ordered the Texas action to be transferred to the United States District Court for the Northern District of Georgia.  The Texas action after transfer was originally assigned case number 1:16-cv-02690-AT, and was later consolidated with this case.  The '2690 case was then administratively closed. [Dkt. 121]

There is no dispute that the asserted patents are closely related.  Currently, the IP CO or Brownrigg patents, consisting of the '062, '516, '314, '471 and '496 patents, share the same or similar specifications in that all are continuations or a division based on the application maturing into the '062 patent, name the same two inventors, Edwin Brownrigg and Thomas Wilson, and share similar titles, "Wireless Network System and Method for Providing Same;" or "Wireless Network Gateway and Method for Providing Same" ('516 patent):



The SIPCO or Petite patents, consisting of the '692, '661, '732, '780, '893, '511, '492 and '842 patents, have a more complicated relationship.  The patents-in-suit each have a complex lineage of continuations and continuations-in-part (CIPs), that challenge the ability to do much more than give a rough overview (patents with a checkmark are the patents-in-suit):



Emerson urges: (1) "Six of the SIPCO patents (the '492, '692 '893, '661, '780, and '732 Patents) all share the common title, 'System[] and Method[] for Monitoring and Controlling Remote Devices.' The '511 Patent bears a similar title, 'Wireless Communication Networks for Providing Remote Monitoring of Devices.' The '842 Patent, is directed to the same technology, entitled 'Multi-Functional General Purpose Transceivers and Devices,' " (2) "Each of these eight patents identifies a common inventor, T. David Petite, and all claim priority to, or are descendants of, a common parent patent application," (emphasis in original),  and (3) "The '842 Patent directly claims priority to application 60/059,643, whereas the '492, '692 '893, '661, '780, and '732 Patents all claim priority to application 09/102,178, which in turn claims priority to application 60/059,643. The '511 Patent claims priority to application 09/439,059, which claims priority to application 09/102,178, which in turn claims priority to application 60/059,643. That application, 60/059,643, never matured into an issued patent, but it provides the common ancestry for all of the SIPCO patents at issue in this case. Given this common ancestry, these 8 patents are considered to be part of the same family." Emerson's Motion [Dkt. 175] at 6-7.

Although it is true that the patents-in-suit include provisional application no. 60/059,643 in their priority lineage, it seems plain from the foregoing that other provisional and non-provisional applications appear in the priority claims as well, and there are intervening CIPs as well. Thus, the lineage illustrates the related nature of the patents-in-suit, but does not, unlike the Brownrigg patents, indicate that the specifications are the same. Nevertheless, reviewing the Petite patents-in-suit indicates that they are certainly drawn to the same or similar general technology.

## IV.
## IPRs and CBM Review

### A.    IPRs For IP CO Patents[1]

### 1.    *ABB Technology, Ltd. v. IPCO, LLP*, **IPR2013-00482, and** *ABB Technology, Ltd. v. IPCO, LLP*, **IPR2014-00147**

Emerson notes that the PTO, in the foregoing, instituted IPRs for various claims in the '062 and '516 patents, respectively. However, those IPRs were settled before the PTAB had issued a final written decision. Emerson urges that despite that settlement, "the PTAB recognized legitimate issues with the patentability of these IPCO patents." Emerson's Motion [Dkt. 175] at 4.

That the PTO issued "institution decisions" means no more than the PTAB determined, on the basis of the petition and any response by the patent owner, that the requirement of § 314(a), namely "a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." Accordingly, those IPRs are not particularly persuasive on the current question of whether a stay should be granted.

### 2.    *Emerson Electric Co. v. IP CO, LLP*, **IPR2015-01901 – '314 Patent**

Emerson filed a petition for an IPR on September 11, 2015, of certain claims in the '314 patent. The docket sheet indicates that Emerson sought IPR of claims 10-19 of the '314 patent on several grounds.[2] The PTAB's institution decision was issued on March 11, 2016. That institution decision discussed the construction of several claim terms and phrases. Institution Decision at 6-12. The Institution Decision also addresses the asserted grounds for the IPR. Institution Decision at 12-31.

---

[1] Some of the dates listed below are estimated dates, and may differ from the actual dates by a few days.

[2] The record of IPR proceedings is publicly available through PTO website, www.uspto.gov. Documents in that record may be reviewed by the public without charge.

The institution decision granted IPR on the '314 patent, on the following grounds:

1. Claim 10 would have been obvious under 35 U.S.C. § 103 over the combined teachings of Meier and Gollnick;

2. Claim 12 would have been obvious under 35 U.S.C. § 103 over the combined teachings of Kahn, Jubin, Burchfiel, and Schwartz; and

3. Claims 13–19 would have been obvious under 35 U.S.C. § 103 over the combined teachings of Kahn, Jubin, Burchfiel, Schwartz, and Cerf.

Institution Decision at 31.  Thus, the IPR does not extend to claim 11.  Emerson notes that claims 10 and 12-14 have been alleged to be infringed in this case.  Emerson's Motion [Dkt. 175] at 4-5.

The PTAB's Scheduling Order set oral argument for October 27, 2016. Emerson notes that oral argument was held on October 28, 2016, and that a "final written decision" is due by March 11, 2017, namely one year after the institution decision on March 11, 2016.

### 3.    *Emerson Electric Co. v. IP CO, LLP*, IPR2016-01602 – '516 Patent

Emerson filed a petition for IPR on August 12, 2016, of claims 1, 2, 4, 5, 10, 11, 13, and 14 of the '516 patent.  Emerson notes those claims have been alleged in this case.  Emerson's Motion [Dkt. 175] at 5.

Emerson asserts that the claims, in various combinations, would have been obvious in light of a technical publication, Burchfiel, J., Tomlinson, R. and Beeler, M., *Functions and Structure of a Packet Radio Station*, in AFIPS National Computer Conference, Vol. 44, at 245-51 (1975) ("Burchfiel"), alone, or in combination with other references, namely Heart, F.E., Kahn, R.E., Ornstein, S.M., Crowther, W.R., Walden, D.C., *The Interface Message Processor for the ARPA Computer Network*, in AFIPS Spring Joint Computer Conference, Vol. 36, at 551-67 (1970) ("Heart"), Schwartz, M., *Telecommunication Networks: Protocols, Modeling and Analysis*, Addison-Wesley Publishing Co. (1987) ("Schwartz"), Aboba, B. et al., *The Online User's Encyclopedia Bulletin Boards and Beyond*, Addison-Wesley Publishing Company (1993) ("Online Encyclopedia").  Petition at 5-6, and Exhibits.

The docket indicates that the patent owner's response was filed on November 26, 2016. Thus, the PTAB's institution decision is due, pursuant to § 314(b), by, roughly, February 26, 2016.

### 4.    *Emerson Electric Co. v. IP CO, LLP*, **IPR2017-00007 – '471 Patent**

Emerson filed a petition for IPR on October 12, 2016, of claims 2-4, 6-8, 10-12, 14-16, 40-41 of the '471 patent.  Emerson notes those claims have been alleged in this case.  Emerson's Motion [Dkt. 175] at 5.

In this petition, Emerson asserts that claims 2-3, 6-7, 10-11, 14-15, and 40-41 would have been obvious under § 103 in view of (1) the Burchfiel reference (see above), either alone, or in view of the Schwartz reference (see above), a technical publication Gitman, I., *et al.*, *Routing in Packet-Switching Broadcast Radio Networks*, IEEE Transactions on Communications (1976) ("Gitman"), or Burchfiel in view of both Schwartz and Gitman.  Petition at 5.

Additionally, the petition asserts that claims 4, 8, 12 and 16 would have been obvious over Burchfiel in view of (1) Kahn, R., *The Organization of Computer Resources into a Packet Radio Network*, National Computer Conference (1975) ("Kahn75"), (2) Schwartz and Kahn75, (3) Gitman and Kahn75, (4) Schwartz, Gitman and Kahn75, (5) Kahn75 and Admitted , Prior Art ("APA"), (6) Schwartz, Kahn75 and APA, (7) Gitman, Kahn75 and APA, (8) Schwartz, Gitman, Kahn75, and APA, (9) Schwartz, Kahn75 and APA, (9) Gitman, Kahn75, and APA, (10) Schwartz, Gitman, Kahn75 and APA, (10) Schwartz, Kahn 75, and McQuillan, J., The New Routing Algorithm for the ARPANET, IEEE Transactions on Communications (1980) ("McQuillan"), (11) Schwartz, Gitman, Kahn75, and Mcquillan, (12) Schwartz, Kahn75, APA, McQuillan, and (13) Schwartz, Gitman, Kahn75, APA, McQuillan. Petition at 5-6

Emerson identified several terms for construction, namely (1) "optimiz[e]" and "predetermined conditions," (2) "[S]erver process further [includes/comprises] logic [performing recited functions]," (3) "[S]elected transmission path[s]," (4) "[S]end/receive data buffer" (claims 6, 10) and "send and receive data buffer maintenance step" (claim 14), (5) "[C]lient" (claims passim), and (6) selecting/initiating a transmission path/link to the server that is "one of a direct link to [the server] and an indirect link to [the server] through at least one [other client]" (claims 2, 6, 10, 14, 40).  Petition at 8-10.

The patent owner's response would be due roughly by January 12, 2017, and the PTAB's institution decision would be due roughly by April 12, 2017.

### 5. *Emerson Electric Co. v. IP CO, LLP*, **IPR2017-00008 – '471 Patent**

Emerson filed a petition for IPR on October 12, 2016, of claims 17-22 and 31-36 of the '471 patent. Emerson notes those claims have been alleged in this case. Emerson's Motion [Dkt. 175] at 5.

In this petition, Emerson relies on (1) the Burchfiel reference (see above), either alone, or (2) in view of Schwartz and the other references noted above in connection with the -00007 IPR, in various combination. Petition at 5-6.

Emerson has asserted constructions for (1) "optimiz[e]" and "predetermined conditions," (2) "[F]irst node process further [comprises/ includes] logic [performing recited functions]," (3) "[S]elected link" (claim 34), (4) "[S]end/receive data buffer" (claim 20, 31, 34), and (5) selecting a transmission path/link to the first node that is "one of a direct link to said first node and an indirect link to said first node through at least one of the remainder of said plurality of second nodes" (claims 20, 31, 34). Petition at 8-9.

The patent owner's response would be due roughly by January 12, 2017, and the PTAB's institution decision would be due roughly by April 12, 2017.

### 6. *Emerson Electric Co. v. IP CO, LLP*, **IPR2017-00213 – '496 Patent**

Emerson filed a petition for IPR on November 9, 2016, of claims 21-24, 37-39, and 45 of the '496 patent. Emerson notes those claims have been alleged in this case. Emerson's Motion [Dkt. 175] at 5.

In this petition, Emerson relies on (1) the Burchfiel reference (see above), either alone, or (2) in view of Schwartz, Gitman, Kahn75, APA, and McQuillan, namely the other references noted above in connection with the foregoing IPRs, in various combination. Petition at 5-6.

Emerson asserts constructions for (1) "optimized" and "predetermined conditions," (2) "[F]irst node process further comprises logic [performing recited functions]" (claims 22, 23), (3) "[S]elected link" (claim 38), and (4) selecting a transmission path to said first node that is "one of a direct link to said first node and an indirect link to said first node through at least one of the remainder of said plurality of second nodes" (claim 37). Petition at 8-9.

The patent owner's response would be due roughly by February 9, 2017, and the PTAB's institution decision would be due roughly by May 9, 2017.

7.    *Emerson Electric Co. v. IP CO, LLP*, IPR2017-00252 – '314 Patent

Emerson filed a petition for IPR on November 11, 2016, of claims 1, 4, 10-11, and 15-19 of the '314 patent.  Emerson notes those claims have been alleged in this case.  Emerson's Motion [Dkt. 175] at 5.

In this petition, Emerson asserts that those claims would have been obvious under § 103 on six grounds.  The primary references being asserted are: two journal articles (1) Jubin, John, et al., "The DARPA Packet Radio Network Protocols," Proceedings of the IEEE, Vol. 75, No. 1 (Jan. 1987) ("Jubin"), and (2) Fifer, William C. and Bruno, Frederick J., "The Low-Cost Packet Radio," Proceedings of the IEEE, Vol. 75, No. 1, January 1987 ("Fifer").  Petition at 10.

Other references being asserted are (1) Vinton G. Cerf, et al., "Issues in Packet-Network Interconnection, Proceedings of the IEEE, Vo. 66, No. 11, November 1978 ("Cerf"), (2) Admitted , Prior Art ("APA"), ) (3) Bhatnagar, A. and Robertson, T., "LayerNet: A New Self-Organizing Network Protocol," MILCOM 90, 1990 IEEE Military Comm. Conf. 845 (Sept.-Oct. 1990) ("LayerNet"), (4) Mischa Schwartz, "Telecommunication Networks: Protocols, Modeling and Analysis," Addison-Wesley Pub. Co., 1988 ("Schwartz"), and (5) J. Burchfiel, et al., "Functions and structure of a packet radio station," National Computer Conference presented paper, 1975 ("Burchfiel").

Emerson has requested construction of (1) "selecting a transmission path" (claims 1 and 10), (2) "first node" (claim 1)/"first node providing a gateway between a wireless network and a second network" (claim 4)/"gateway" (claim 15), (3) "changes to upgrade the selected transmission path" (claims 1, 10)/ "changes to a transmission path (claim 4)/"changes the transmission paths" (claim 15), (4)

Emerson notes in the petition that claims 10 and 15-19 of the '314 patent are the subject of IPR2015-01901 (see above), but claims 1, 4 and 11 were not part of that IPR.  Petition at 1. Emerson urges the issues presented in the current IPR petition are distinguishable from those in the -1901 IPR.  Petition at 10-12.

The patent owner's response would be due roughly by February 11, 2017, and the PTAB's institution decision would be due roughly by May 11, 2017.

In summary, Emerson asserts that "[a]ll IPCO Patent claims asserted will be subject to IPR except for the claims of the '062 Patent, which are precluded from an Emerson-filed IPR under 35

U.S.C. § 315(a)(1) due to Emerson's declaratory judgment action."  Emerson's Motion [Dkt. 175] at 5-6.

**B.      IPRs and CBM For SIPCO Patents**

     **1.**      *Hart Communication Foundation v. SIPCO LLC*, **IPR2014-00751 – '661 Patent**

Emerson notes the PTAB, in the above IPR, held that claims 2-4 of the '661 patent were unpatentable.  Emerson's Motion [Dkt. 175] at 7.

In the PTAB's final written decision dated November 13, 2015 (Paper No. 36), the PTAB noted that the petitioner had petitioned for IPR of claims 1-14 of the '661 patent, and the PTAB had instituted IPR on claims 1-4 and 9-13.  The PTAB ultimately concluded that the petitioner had demonstrated that claims 2-4 were unpatentable, but had not demonstrated that any other claim for which trial had been instituted was unpatentable.  It is not clear from the parties' submissions whether the patentability of claims 2-4 has been appealed, or remain on appeal.  Suffice it to say, that IPR did not conclude that claims 1 and 9-13 were unpatentable.

     **2.**      *Emerson Electric Co. v. SIPCO, LLC*, **IPR2015-01973 – '732 Patent**

Emerson filed a petition for IPR on September 25, 2015, of claims 13-14, 16-21, and 23-35 of the '732 patent.  Emerson's Motion [Dkt. 175] at 7.

In the petition, Emerson sought IPR on five grounds:

Ground 1: Claims 13, 14, 19-21, 25, 26, 30, 31 and 33 are rendered obvious under § 103 by Kahn in view of the Admitted Prior Art.

Ground 2: Claims 16-18, 24, 28, 29 and 35 are rendered obvious under § 103 by Kahn in view of the Admitted Prior Art and Burchfiel.

Ground 3: Claim 23 is rendered obvious under § 103 by Kahn in view of the APA, and further in view of Fisher.

Ground 4: Claim 32 is rendered obvious under § 103 by Kahn in view of the APA, and further in view of Cerf.

Ground 5: Claims 27 and 34 are rendered obvious under § 103 by Kahn in view of APA, and further in view of Burchfiel, HART Data Link, and HART Command.

Petition at 4.

The cited references were (1) Kahn, Robert E., "Advances in Packet Radio Network Protocols," Proceedings of the IEEE, Vol. 66, No. 11, November 1978 ("Kahn"), (2) J. Burchfiel, et al., "Functions and structure of a packet radio station," National Computer Conference presented paper, 1975 ("Burchfiel"), (3) Fisher General Catalog 501, 5th edition, dated 1989 ("Fisher"), (4) Vinton G. Cerf, et al., "Issues in Packet-Network Interconnection, Proceedings of the IEEE, Vo. 66, No. 11, November 1978 ("Cerf"), (5) HART Physical and Data Link Specification printed March 28, 1988 ("HART Data Link"), and (6) HART Universal Command Specification printed November 3, 1990 ("HART Command").  Petition at iv ("Table of Exhibits).

Emerson requested construction of "gateway," "sensor," "actuator," and "function code," but the PTAB, at the institution stage, declined to do so finding that, based on the "issues currently before us," those terms did not require "express construction."  Institution Decision at 6.

The institution decision, dated March 28, 2016, after discussing Kahn, the APA, and the parties' arguments in the petition and the patent owner's response, concluded that Emerson, the petitioner, "has demonstrated a reasonable likelihood it would prevail in showing that independent claims 13, 20, 26, and 31 would have been obvious under 35 U.S.C. § 103 over the combined teachings of Kahn and APA.  Institution Decision at 17-18.

The institution decision also concluded that Emerson, at the institution stage, "has demonstrated a reasonable likelihood it would prevail in showing that claims 14, 19, 21, 25, and 30 would have been obvious under 35 U.S.C. § 103 over the combined teachings of Kahn and APA." *Id.* at 19.

The institution decision further concluded that Emerson "has put forth a sufficient showing and has demonstrated a reasonable likelihood it would prevail in showing that claim 33 would have been obvious under 35 U.S.C. § 103 over the combined teachings of Kahn and APA." *Id.* at 19-20.

The institution decision also concluded that Emerson "has put forth a sufficient showing and has demonstrated a reasonable likelihood it would prevail in showing that claims 16–18, 24, 28, 29, and 35 would have been obvious under 35 U.S.C. § 103 over the combined teachings of Kahn, APA, and Burchfiel." *Id.* at 21.

The institution decision yet further concluded that Emerson "has put forth a sufficient showing and has demonstrated a reasonable likelihood it would prevail in showing that claim 23

would have been obvious under 35 U.S.C. § 103 over the combined teachings of Kahn, APA, and Fisher.  *Id.* at 22.

The institution decision additionally concluded that Emerson "has put forth a sufficient showing and has demonstrated a reasonable likelihood it would prevail in showing that claim 32 would have been obvious under 35 U.S.C. § 103 over the combined teachings of Kahn, APA, and Cerf."  *Id.* at 23.

The institution decision lastly concluded that Emerson "has put forth a sufficient showing and has demonstrated a reasonable likelihood it would prevail in showing that claims 27 and 34 would have been obvious under 35 U.S.C. § 103 over the combined teachings of Kahn, APA, Burchfiel, HART Data Link, and HART Command."  *Id.* at 24.

Emerson advises that oral argument was held on October 28, 2016, and that a "final written decision" is due by March 28, 2017, namely one year after the institution decision on March 28, 2016.  Emerson's Motion [Dkt. 175] at 8.

### 3.    *Emerson Electric Co. v. SIPCO, LLC,* **IPR2016-00984 – '780 Patent**

Emerson filed a petition for IPR on April 29, 2016, of claims 1-15 of the '780 patent. Emerson notes that claims 1, 2 and 4-8 have been alleged to have been infringed in this case. Emerson says that "[t]he language of claims 1-15 of the '780 Patent is virtually identical to that of claims 13-25 of the '732 Patent."  Emerson's Motion [Dkt. 175] at 8.

Emerson, in the petition, asserted three grounds of unpatentability:

Ground 1: Claims 1-15 are rendered obvious under § 103 by U.S. Patent No. 8,013,732.

Ground 2: Claims 1, 2 and 7 are rendered obvious under § 103 by Kahn in view of the Admitted Prior Art.

Ground 3: Claims 4-6 and 8 are rendered obvious under § 103 by Kahn in view of the Admitted Prior Art and Burchfiel.

Petition at 4.  The Kahn and Burchfiel references are the same as those identified above *vis-à-vis* the foregoing IPRs.  "APA" refers to certain portions of the '780 patent as "Admitted Prior Art."

The PTAB in an institution decision dated November 2, 2016, instituted IPR of claims 1-15 on the foregoing grounds asserted by Emerson.  Institution Decision at 26.

The PTO's Scheduling Order (Paper No. 19) set July 13, 2017, as the date for oral argument (if requested). A "final written decision" would be due November 2, 2017, namely one year after the institution decision on November 2, 2016.

### 4.  *Emerson Electric Co. v. SIPCO, LLC*, CBM2016-00095 – '842 Patent

Emerson filed a petition for CBM review on July 18, 2016, of claims 1, 7, 9, 16 and 17 of the '842 patent. Emerson asserts that, pursuant to the definition of a "covered business method," AIA § 18(d)(1), the "'842 patent is directed to and claims activities financial in nature," and does not claim a "technological invention." Petition at 6-12. Emerson notes that claims 1, 7, 9, 16 and 17 have been alleged to have been infringed in this case. Emerson's Motion [Dkt. 175] at 8.

Emerson, in its petition, asserts that claims 1, 7, 9, 16 and 17 are unpatentable on five grounds:

1: § 101 for patent-ineligible subject matter;

2: § 103 obvious over Kahn;

3: § 103 obvious over Kahn in view of Burchfiel;

4: § 103 obvious over Tymes; and

5: § 112 lack of written description.

The Kahn and Burchfiel references are the same as those noted above in connection with the foregoing IPRs. The additional reference is U.S. Patent No. 5,157,687 to Tymes ("Tymes").

The patent owner, SIPCO, filed a preliminary response on November 20, 2016. Thus, under 35 U.S.C. § 324, the PTAB's "institution decision" is due February 20, 2017.

### 5.  *Emerson Electric Co. v. SIPCO, LLC*, IPR2016-01895 – '492 Patent

Emerson filed a petition for IPR on September 28, 2016, of claims 1-4, 6, 8-11, 13-21 and 25 of the '492 patent. Emerson notes that those claims have been alleged to have been infringed in this case. Emerson's Motion [Dkt. 175] at 8.

In its petition, Emerson asserts that the claims are unpatentable on four grounds:

Ground No. 1: Claims 1-4, 6, 14, and 18 are obvious over Johnson (Ex. 1003) in view of ISO-8473 (Ex. 1004), X.233 (Ex. 1017), RFC 994 (Ex. 1018), Perkins (Ex. 1005), and/or EIA-709.1 (Ex. 1009).

Ground No. 2: Claims 8-11, 13, and 16 are obvious over Johnson in view of ISO-8473, X.233, RFC 994, Perkins, EIA-709.1, and/or Toner (Ex. 1010).

Ground No. 3: Claims 14, 15, 17, 19-21, and 25 are obvious over Mason (Ex. 1006) in view of EIA-709.1, Shuey (Ex. 1007), and C12.18 (Ex. 1008).

Ground No. 4: Claims 1-3, 6, 8-11, 13, 14, 16, and 18 are anticipated by Johnson.

Petition at 1-2.

In contrast to the IPRs above, here Emerson relies on (1) U.S. Patent No. 5,673,252 to Johnson et al., (2) ISO/IEC 8473:1988 E "Information processing systems – Data communications – Protocol for providing the connectionless-mode network service," (4) ITU-T REC-X.233 (11-93) "Information Technology – Protocol for Providing the Connectionless-Mode Network Service: Protocol Specification," (5) Request for Comments: 994 "Final Text of DIS 8473, Protocol for Providing the Connectionless-mode Network Service, (6) U.S. Patent No. 5,442,633 to Perkins et al., (7) EIA 709.1 "Control Network Protocol Specification," (8) U.S. Patent No. 5,365,217 to Toner, (9) U.S. Patent No. 6,100,817 to Mason, Jr. et al., (10) U.S. Patent No. 5,874,903 to Shuey et al., and (11) ANSI C12.18-1996 "Protocol Specification for ANSI Type 2 Optical Port."

Emerson identifies "scalable address" as a claim term to be construed.

The patent owner, SIPCO, filed a preliminary response on December 27, 2016. Thus, the PTAB's institution decision would be due March 27, 2017.

### 6.    *Emerson Electric Co. v. SIPCO, LLC,* IPR2017-00001 – '661 Patent

Emerson filed a petition for IPR of claims 1, 5, 6, 8-12 and 14 of the '661 patent on October 1, 2016. Emerson notes that those claims have been alleged to have been infringed in this case. Emerson's Motion [Dkt. 175] at 8.

Emerson asserts three grounds of unpatentability:

Ground 1: Claims 1, 5, 6, 8, 12, and 14 are obvious over Kahn (Ex1003) in view of APA, and further in view of Enterprise (Ex1004) and Cerf (Ex1005), or Cunningham (Ex1006).

Ground 2: Claims 9-11 are obvious over Kahn in view of APA, and further in view of Cerf or Cunningham.

Ground 3: Claims 1, 5, 6, 8, 12, and 14 are obvious over Mason (Ex1007) in view of Cunningham and Shuey (Ex1008).

Petition at 3-4.

Of the references relied on, Kahn, Cerf, Mason and Shuey are the same references identified in other IPRs above. The additional references are (1) "Enterprise Server Configuration Manual", published by Bristol Babcock, June 1992, and (2) U.S. Patent No. 6,124,806 to Cunningham. "APA" refers to "Admitted Prior Art" in the '661 patent.

The patent owner, SIPCO, filed a preliminary response on January 4, 2017. Thus, the PTAB's institution decision is due April 4, 2017.

### 7.    *Emerson Electric Co. v. SIPCO, LLC*, IPR2017-00216 – '732 Patent

Emerson filed a petition for IPR of claims 1-7 of the '732 patent on November 8, 2016. Emerson notes that those claims have been alleged to have been infringed in this case. Emerson's Motion [Dkt. 175] at 8.

Emerson asserts two grounds of unpatentability:

Ground 1: Claims 1-2 and 6-7 are rendered obvious under § 103 by Kahn in view of the Admitted Prior Art, further in view of Cerf, further in view of Cunningham.

Ground 2: Claims 1-7 are rendered obvious under § 103 by Kahn in view of the Admitted Prior Art, further in view of Cerf, further in view of Ehlers.

Petition at 6. "APA" refers to "Admitted Prior Art" in the '732 patent. The Kahn, Cerf and Cunningham references are the same as those identified in above IPRs. The additional reference is U.S. Patent No. 5,924,486 to Ehlers et al. ("Ehlers").

Emerson seeks construction of "gateway," "sensor," and "actuator." Petition at 10-12.

Given the petition filing date of November 8, 2016, the patent owner's, SIPCO's, response would be due February 8, 2017. The PTAB's "institution decision" would be due, depending on the date of the patent owner's response, no later than May 8, 2017.

### 8.    *Emerson Electric Co. v. SIPCO, LLC*, IPR2017-00260 – '893 Patent

Emerson filed a petition for IPR of claims 1-3, 10, 17, 18 and 37 of the '893 patent on November 14, 2016. Emerson notes that those claims have been alleged to have been infringed in this case. Emerson's Motion [Dkt. 175] at 9.

Emerson asserts three grounds of unpatentability:

Ground 1: Claims 1-3, 10, and 37 are rendered obvious under pre-AIA 35 U.S.C. § 103(a) by Kahn in view of the Scalable Address references (ISO-8473, X.233, and RFC 994), and/or EIA-709.1, further in view of Admitted Prior Art ("APA").

Ground 2: Claim 17 is rendered obvious under pre-AIA 35 U.S.C. § 103(a) by Kahn in view of the Scalable Address references and/or EIA-709.1, further in view of APA, further in view of Canada.

Ground 3: Claim 18 is rendered obvious under pre-AIA 35 U.S.C. § 103(a) by Kahn in view of the Scalable Address references and/or EIA-709.1, further in view of APA, further in view of Canada, further in view of Fulford.

Petition at 6. "APA" refers to "Admitted Prior Art" in the '893 patent. The Kahn reference is the same reference noted above in connection with other IPRs. The additional references are (1) ISO/IEC 8473:1988 (E) protocol ("ISO-8473"), (2) ITU-T Recommendation X.233 ("X.233"), (3) "Final Text of DIS 8473, Protocol for Providing the Connectionless-Mode Network Service" ("RFC 994"), (4) EIA-709.1, entitled "Control Network Protocol Specification" ("EIA-709.1"), (5) U.S. Patent No. 5,907,491 to Canada et al. ("Canada"), and (6) U.S. Patent No. 6,237,034 to Fulford ("Fulford").

Emerson seeks construction of "scalable address," and "scalable message" Petition at 8-10.

Given the petition filing date of November 14, 2016, the patent owner's, SIPCO's, response would be due February 14, 2017. The PTAB's "institution decision" would be due, depending on the date of the patent owner's response, no later than May 14, 2017.

(a)    *Emerson Electric Co. v. SIPCO LLC*, IPR2015-01579 – '893 Patent

It is noted that on July 13, 2015, Emerson filed a petition for IPR of the '893 patent, IPR2015-01579, seeking review of claims 1, 2, 10 and 37. In particular, Emerson asserted that those claims were anticipated under § 102(b) by the Kahn reference (noted above) or "KPC-3 PLUS USERS GUIDE: INTRODUCTION, GETTING STARTED, MODES OF OPERATION, COMMAND REFERENCE, AND HARDWARE SPECIFICATIONS (1997) ("Kantronics"), and that claim 10 was unpatentable as having been obvious under § 103(a) over the Kahn reference in view of Kantronics and "Admitted Prior Art" in the '893 patent.

In a decision dated January 14, 2016, the PTAB declined to institute an IPR concluding that Emerson had not shown a reasonable likelihood that Emerson would prevail with respect to at least one of the challenged claims.

With respect to the assertion that claims 1, 2, 10 and 37 of the '893 patent were anticipated by Kahn, or alternatively by Kantronics, the PTAB noted that "[c]entral to our Decision is whether Petitioner has made a sufficient showing that either Kahn or Kantronics discloses 'a receiver address comprising a scalable address of the at least one of the intended receiving [transceivers/remote devices],' as recited in independent claims 1 and 37, respectively." PTAB Decision at 10. The PTAB concluded that "[b]ased on the current record, we determine Petitioner has not demonstrated a reasonable likelihood that it would prevail with respect to at least one challenged claim of the '893 patent." *Id.*

With respect to claim 10, and the assertion of obviousness, the PTAB concluded that "[f]or reasons similar to those we discussed above, we are not persuaded Petitioner has demonstrated a reasonable likelihood that either Kahn or Kantronics teaches 'scalable address' as recited in independent claim 1, from which claim 10 depends, and Petitioner does not show how combining Kahn with Kantronics and the admitted prior art overcomes this deficiency." PTAB Decision at 13.

9. ***Emerson Electric Co. v. SIPCO, LLC*, IPR_____ – '692 Patent**

Emerson asserts in its motion that "[b]y November 30, 2016 Emerson anticipates filing one or more IPRs challenging claims 1, 3-8, 11-14, 24-32, 34, 36-38, 42, 43, 46-49, 51-57, and 59-64 of the '692 Patent, all of which have been alleged to be infringed in this case." Emerson's Motion [Dkt. 175] at 9.

A search of the PTO's IPR database on January 7, 2017, indicated that four IPRs had been filed *vis-à-vis* the '692 patent, *i.e.*, (1) *FieldComm Group v. SIPCO, LLC*, IPR2015-00668 (filing date Feb. 2, 2015), (2) *Emerson Electric Co. v. SIPCO, LLC*, IPR2017-00308 (filing date Nov. 21, 2016), (3) *Emerson Electric Co. v. SIPCO, LLC*, IPR2017-00333 (filing date Nov. 25, 2016), and (4) *Emerson Electric Co. v. SIPCO, LLC*, IPR2017-00359 (filing date Nov. 30, 2016).

(a) ***FieldComm Group v. SIPCO, LLC*, IPR2015-00668 (filing date Feb. 2, 2015) – '692 Patent**

In a decision, dated August 11, 2015, (Paper No. 13) the PTAB denied institution of an IPR.

FieldComm, the petitioner, asserted that claims 1-64 of the '692 patent would have been obvious under 35 U.S.C. § 103, in view of three references: (1) Kantronics (KPC-3 Plus Users Guide: Introduction, Getting Started, Modes of Operation, Command Reference, and Hardware Specifications (1997)), (2) AX.25 Protocol (AX.25 Amateur Packet-Radio Link-Layer Protocol, Version 2.0 (Oct. 1984)), and (3) Ultrix (Clifford Neuman et al., Adding Packet Radio to Ultrix Kernel (1987)).

The PTAB ultimately concluded that "[t]he Petition fails to show there is a reasonable likelihood that Petitioner would prevail with respect to at least one of the claims challenged in the Petition." Decision at 12. Accordingly, the petition was denied.

### (b)    *Emerson Electric Co. v. SIPCO, LLC*, IPR2017-00308 – '692 Patent

From the PTO records, it appears that Emerson filed a petition for IPR on November 21, 2016, for claims 1, 3-8, 11-14, 24-32, 34, and 36-38 of the '692 patent.

In general terms, the patentability of those claims was challenged under § 103 as having been obvious over (1) "Live Wire" (*Internet-Based Energy Management Communication System, The LiveWire Project Final Report, Department of Energy Final Report* (DE98002731), October 1997. ("LiveWire"), in view of (2) Mason (U.S. Patent No. 6,100,817 issued to Mason et al. on Aug. 8, 2000 (filed Mar. 17, 1998) ("Mason")) – *i.e.*, the same Mason patent referenced in other IPRs above, and (3) Mason and Shuey (the Mason patent plus U.S. Patent No. 5,874,903 issued to Shuey et al. on Feb. 23, 1999 (filed June 6, 1997)) – both referenced in other IPRs above. Petition at 4-5.

Given that Emerson's petition for IPR was filed on November 21, 2016, the patent owner's (SIPCO's) response would be due February 21, 2017, and the PTAB's "institution decision" would be due no later than May 21, 2017.

### (c)    *Emerson Electric Co. v. SIPCO, LLC*, IPR2017-00333 – '692 Patent

From the PTO records, it appears that Emerson filed a petition for IPR on November 25, 2016, for claims 42, 43, 46-49, 51-57, and 59-64 of the '692 patent.

In general, the patentability of those claims was challenged under § 103 as having been obvious over (1) Live Wire, (*Internet-Based Energy Management Communication System, The LiveWire Project Final Report*, Department of Energy Final Report (DE98002731), October 1997. ("LiveWire")), in view of Mason (U.S. Patent No. 6,100,817 issued to Mason et al. on Aug. 8, 2000 (filed Mar. 17,

1998) ("Mason")) or over LiveWire, Mason and Shuey (U.S. Patent No. 5,874,903 issued to Shuey et al. on Feb. 23, 1999 (filed June 6, 1997)).  Petition at 5.

Given the petition filing date of November 25, 2016, and the PTAB's "Notice of Filing Date Accorded the Petition and Time for Filing Patent Owner Preliminary Response, dated December 13, 2016, the patent owner's (SIPCO's) response would be due on roughly March 13, 2017.  Depending on the date the patent owner's response is filed, the PTAB's latest date for issuing an "institution decision" would be June 13, 2017.

(d)    *Emerson Electric Co. v. SIPCO, LLC*, **IPR2017-00359 – '692 Patent**

From the PTO records, it appears that Emerson filed a petition for IPR on November 30, 2016, of claims 1, 3-8, 11-14, 24-32, 34, 36-38, 42, 43, 46-49, 51-57, and 59-64 of the '692 patent, asserting that those claims were unpatentable on three grounds:

> Ground 1: Claims 1, 3-8, and 11-14 are obvious over Mason (Ex1003) in view of Cunningham (Ex1004).

> Ground 2: Claims 24-31, 42, 43, 46-49, 51-54, and 60-64 are obvious over Cunningham in view of McGowan (Ex1005) and Mason.

> Ground 3: Claims 32, 34, 36-38, 55-57, and 59 are anticipated by or rendered obvious by Cunningham.

Petition at 20-21.  The Mason and Cunningham references have been identified above *vis-à-vis* other IPRs.  The additional reference is McGowan, namely, "Direct Digital Control: A Guide To Distributed Building Automation," John J. McGowan, 1995.  Petition at page v.

Given the petition filing date of November 30, 2016, and the PTAB's "Notice of Filing Date Accorded the Petition and Time for Filing Patent Owner Preliminary Response, dated December 13, 2016, the patent owner's (SIPCO's) response would be due on roughly March 13, 2017.  Depending on the date the patent owner's response is filed, the PTAB's latest date for issuing an "institution decision" would be June 13, 2017.

Emerson notes that the claims being challenged in this IPR include all of the claims of the '692 patent which have been alleged in this case.

## C.    Summary

In summary, for the Emerson IPRs/CBM, the respective patents, actual/potential claims involved in those proceedings, actual/estimated "institution dates," and estimated "written decision" dates are:[3]

| IPR | Patent | Filing Date | Patent Claims | Institution Date | Written Decision Date |
|---|---|---|---|---|---|
| IPR2015-01901 | '314 | 9/11/2016 | 10, 12-19 | 3/11/2016 | Est. 3/11/2017 |
| IPR2016-01602 | '516 | 8/12/2016 | 1, 2, 4, 5, 10, 11, 13, and 14 | Est. 2/26/2017 | Est. 2/26/2018 |
| IPR2017-00007 | '471 | 10/12/2016 | 2-4, 6-8, 10-12, 14-16, 40-41 | Est. 4/12/2017 | Est. 4/12/2018 |
| IPR2017-00008 | '471 | 10/12/2016 | 17-22 and 31-36 | Est. 4/12/2017 | Est. 4/12/2018 |
| IPR2017-00213 | '496 | 11/9/2016 | 21-24, 37-39, and 45 | Est. 5/9/2017 | Est. 5/9/2018 |
| IPR2017-00252 | '314 | 11/11/2016 | 1, 4, 10-11, and 15-19 | Est. 5/11/2017 | Est. 5/11/2017 |
| IPR2015-01973 | '732 | 9/25/2015 | 13-14, 16-21, and 23-35 | 3/28/2016 | Est. 3/28/2017 |
| IPR2016-00984 | '780 | 4/29/2016 | 1-15 | 11/2/2016 | Est. 11/2/2017 |
| CBM2016-00095 | '842 | 7/18/2016 | 1, 7, 9, 16 and 17 | Est. 2/20/2017 | Est. 2/20/2018 |
| IPR2016-01895 | '492 | 9/28/2016 | 1-4, 6, 8-11, 13-21 and 25 | Est. 3/27/2017 | Est. 3/27/2018 |
| IPR2017-00001 | '661 | 10/1/2016 | 1, 5, 6, 8-12 and 14 | Est. 4/4/2017 | Est. 4/4/2018 |
| IPR2017-00216 | '732 | 11/8/2016 | 1-7 | Est. 5/8/2017 | Est. 5/8/2018 |
| IPR2017-00260 | '893 | 11/14/2016 | 1-3, 10, 17, 18 and 37 | Est. 2/14/2017 | Est. 2/14/2018 |
| IPR2017-00308 | '692 | 11/21/2016 | 1, 3-8, 11-14, 24-32, 34, and 36-38 | Est. 5/21/2017 | Est. 5/21/2018 |
| IPR2017-00333 | '692 | 11/25/2016 | 42, 43, 46-49, 51-57, and 59-64 | Est. 6/13/2017 | Est. 6/13/2018 |

---

[3]  As noted above, some of these are estimated dates, and may differ from the actual dates by a few days.

| IPR | Patent | Filing Date | Patent Claims | Institution Date | Written Decision Date |
|---|---|---|---|---|---|
| IPR2017-00359 | '692 | 11/30/2016 | 1, 3-8, 11-14, 24-32, 34, 36-38, 42, 43, 46-49, 51-57, and 59-64 | Est. 6/13/2017 | Est. 6/13/2018 |

**V.**
**Factors Considered in Deciding a Motion to Stay**

Emerson urges that the factors the Court should consider are "(1) 'whether discovery is complete and a trial date has been set'; (2) 'whether a stay will simplify the issues in the case'; and (3) 'whether a stay would unduly prejudice or present a tactical disadvantage to the nonmovant.'" Emerson Motion at 15. SIPCO urges that "courts decide motions to stay based on the circumstances of each case after consideration of three factors: (1) whether a stay will simplify the issues; (2) the stage of the litigation; and (3) whether a stay would unduly prejudice the non-movant." SIPCO Reply at 11.

As noted above, the factors listed under § 18(b), "Request for a Stay," in conjunction with CBM review are:

(A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;

(B) whether discovery is complete and whether a trial date has been set;

(C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and

(D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

In *Murata Machinery USA v. Daifuku Co., Ltd.*, 830 F.3d 1357 (Fed. Cir. 2016), the Federal Circuit noted that "[d]istrict courts typically analyze stays under a three-factor test: '(i) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (ii) whether a stay will simplify the issues in question and trial of the case; and (iii) whether discovery is complete and whether a trial date has been set.'" 830 F.3d at 1361. The Federal Circuit, however, concluded that district courts may, within their discretion, consider the "burden of litigation" factor as well. *Id.* at 1362.

**A.    Whether a Stay, or the Denial Thereof, Will Simplify the Issues in Question and Streamline the Trial**

SIPCO notes that its Preliminary Election of Asserted Claims identifies 30 claims from 10 of the 13 asserted patents, as shown in the following chart:

| Asserted Patent | Asserted Claims | Number of Asserted Claims |
|---|---|---|
| 6,044,062 | 2, 3, 4, 10, 11, 12 | 6 |
| 6,437,692 | 24, 26, 30, 55, 57 | 5 |
| 6,914,893 | 1, 17, 18, 37 | 4 |
| 7,103,511 | 1, 3, 4, 27 | 4 |
| 7,468,661 | 9, 11 | 2 |
| 7,697,492 | 1, 2, 10, 14, 19 | 5 |
| 8,013,732 | 1 | 1 |
| 8,233,471 | 17 | 1 |
| 8,625,496 | 39 | 1 |
| 8,908,842 | 7 | 1 |

SIPCO Reply [Dkt. 190] at 5-6.

SIPCO notes that Emerson did not file IPRs for the '511 and '062 patents because it was precluded by statute, § 315, from doing so.  Thus, SIPCO urges that no IPR can be instituted for 10 out of 30 claims.  *Id.* at 6.

SIPCO also notes Emerson's earlier 2015 IPR *vis-à-vis* the '893 patent, and that the PTAB denied instituting an IPR.  SIPCO urges that "thirteen percent of the preliminarily elected asserted claims have already been subjected to—and survived—an IPR challenge."  *Id.*

SIPCO also notes IPRs filed in 2014 and 2015 by FieldComm Group *vis-à-vis* the '661, '692 and '492 patents, and the PTAB's denial thereof.  SIPCO urges that "an additional forty percent of the preliminarily elected asserted claims have already been subjected to—and survived—IPR challenges." *Id.* at 7.

SIPCO further notes that the IPR petitions *vis-à-vis* the '732, '471, and '496 patents, and the CBM review petition *vis-à-vis* the '842 patent, and the PTAB has not currently granted those petitions. *Id.* at 7-8.

SIPCO urges that (1) "courts are reluctant to grant a stay where the accused infringer has filed IPR petitions with respect to only some—but not all—of the asserted patents," (2) "staying a case that is guaranteed to move forward on at least one patent will only serve to 'delay work that— regardless of [the] IPR petition—must still be done,'" and (3) "where a patent-owner asserts only patents against which the PTAB has *not* instituted IPR proceedings, 'the likelihood of issue simplification [ ] is not sufficiently persuasive' to justify a stay," namely "[t]he fact that the USPTO has not yet granted or denied the petitions prevents a court from meaningfully assessing whether a stay would simplify the issues." *Id.* at 12-13.

Emerson replies that the Emerson IPRs have already simplified the case, noting that at the time Emerson's motion was filed, the case involved 13 patents and roughly 62 claims. Now the case involves 10 patents and 30 claims. Emerson urges that SIPCO ignored the IPRs against the '780, '314, and '516 patents for which IPRs were instituted. Emerson's Reply [Dkt. 193] at 2. In actuality, the PTO records for IPR2016-01602 covering the '516 patent indicate that the patent owner's response has been filed, but that the IPR has not yet been instituted. In any event, Emerson notes that SIPCO dropped those three patents from its Preliminary Election of Claims. Emerson also urges that SIPCO's election of only one claim from the '732 patent resulted from the IPRs.

Emerson further notes that the IPRs for the '314 and '732 patents have been tried, and that final written decisions from the PTAB are due no later than March 11, 2017, and March 28, 2017. *Id.* at 3. Emerson also notes overlaps between claims in the '314 and '732 patents with other claims in this case. *Id.* at 4-7.

With regard to SIPCO's argument that at least some of the patents-in-suit have survived prior IPR challenges, Emerson urges that the pending IPRs are on different grounds and rely on different prior art. *Id.* at 11.

Although both SIPCO and Emerson make strong arguments that this factor weighs against or in favor of a stay, respectively, on balance this factor appears to weigh in favor of at least a temporary stay until the PTAB has issued institution decisions in the pending IPRs/CBM.

With respect to SIPCO's argument that the pending IPRs will not address the actual claims in the '511 and '062 patents because IPRs *vis-à-vis* those patents are statutorily barred, the claims in those patents nevertheless are plainly drawn to very similar subject matter in related patents that are, or may be, subject to one or more of the pending IPRs. Moreover, there is no categorical rule that

precludes granting a stay even if asserted claims are not also challenged in an IPR or CBM proceeding. *See e.g.*, *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1312-13 (Fed.Cir.2014) (staying case even though two prior art references not asserted in CBM review); *Versata Software, Inc. v. Dorado Software, Inc.*, No. 2:13-cv-00920-MCE-DAD, 2014 WL 1330652, at *3 n. 2 (E.D.Cal. Mar. 27, 2014) (staying case when CBM review granted for only one of three asserted patents and for less than all claims – "The Court rejects Plaintiffs' argument that a stay is improper because the '414 patent is not being reviewed by the PTAB and thus the claims pertaining to that patent should proceed here. Plaintiffs cite no authority standing for the proposition that a case should proceed in piecemeal fashion under such circumstances. Moreover, it would be an inefficient use of judicial resources to stay only those claims in this case that relate to the '282 patent while allowing the claims related to the '414 patent to move forward — especially given that the stay in this matter will likely be lifted in October 2014 at the latest."); *Progressive Cas. Ins. Co. v. Safeco Ins. Co. of Ill.*, Nos. 1:10CV01370 *et al.*, 2013 WL 1662952, at *5 (N.D. Ohio Apr. 17, 2013) (staying case even though PTAB would not address every ground of invalidity and every prior art reference – "That a few of those claims may survive without amendment does not mean that the issues will not be significantly streamlined. Similarly, that the PTAB may not address every single ground of invalidity and every art reference that might be raised in federal court, does not mean CBM review will not drastically simplify the issues presented to the Court. If a claim is invalidated or amended, it will not matter whether the PTAB addressed every ground of invalidity. Of importance is that, as a result of the CBM review, the scope and substance of the issues before the Court will be refined.").

SIPCO's argument that a stay should not be granted solely because a party has filed an IPR/CBM petition, namely before the PTO decides whether to grant the petition (and on what grounds), however, has merit.

Emerson urges that the Court may exercise its discretion and grant a stay even though the PTO has not yet decided whether to grant an IPR/CBM petition. Although that is technically true, in *Intellectual Ventures II LLC v. JPMorgan Chase & Co.*, 781 F.3d 1372 (Fed. Cir. 2015), the Federal Circuit panel majority, over a dissent by Circuit Judge Hughes, held it did not have interlocutory review jurisdiction under § 18(b)(2) of the AIA from a district court decision denying a stay in connection with petitions seeking CBM review where those petitions had not been decided by the PTO at the time the stay was denied. 781 F.3d at 1379.

Although that decision was largely based on statutory construction, and thus only marginally relevant here, it nevertheless serves to highlight the distinction between (1) petitions for CBM review (or IPR), and (2) PTAB decisions granting such review.

Moreover, the PTO/PTAB, even when granting IPR or CBM review, as exemplified in the foregoing, is not required to grant review on all of the grounds, or on all of the claims, urged by a petitioner.  Thus, until the PTO/PTAB actually grants (or denies) IPR or CBM review, it is difficult to fully adjudge the potential impact on parallel litigation, especially, where, as here, that litigation involves a number of related patents, drawn to the same or similar technology, having similar/related specifications, drawings and claims, and where the (1) grounds on which review may be granted (including asserted prior art), and (2) claims, are, at best, speculative.

Thus, in the master's view, it would not be appropriate at this juncture to institute a general stay of this litigation based primarily on petitions for IPR or CBM review that remain pending.

However, from the foregoing, it appears that the PTAB will issue "final written decisions" in connection with the IPRs for the '314, and '732 patents on or before March 11, March 28, 2017, respectively.  An "institution decision" was issued *vis-à-vis* the '780 patent on November 2, 2016. "Institution decisions" in connection with the remaining IPRs/CBM are anticipated during February-June, 2017, with the latest being June 1 (by the master's calculation) or June 13 (by Emerson's calculation).

Under the circumstances, a temporary stay would appear to be appropriate until the PTAB issues "institution decisions" on the pending petitions for IPRs/CMB review.

### B.    Whether Discovery is Complete and Whether a Trial Date Has Been Set/Stage of the Litigation

Emerson urges:

> The Complaint here was filed on January 30, 2015. The complaint in the transferred and consolidated Texas Action was filed October 16, 2015; an Amended Complaint adding a patent and parties was filed only 10 months ago on December 30, 2015; and a Second Amended Complaint adding additional willful infringement claims was filed just over four months ago on July 14, 2016. Emerson filed an amended answer asserting inequitable conduct on July 18, 2016. While fact discovery is under way, it is far from complete. Indeed, just two depositions have been taken. The discovery cut-off will be no sooner than March 28, 2017, and that presumes a claim construction order issued the day of the hearing. Dkt. No. 173 at 5 ("Claim Construction Hearing February 14," 2017 and "Fact Discovery Closes 6 weeks after claim construction order").

28

Emerson's Motion [Dkt. 175] at 16-17.

SIPCO urges that (1) "[c]ourts are especially wary to grant a stay where briefing on claim construction is underway, and the parties have already served infringement and invalidity contentions," and (2) "[r]elatedly, courts must consider their obligation to manage case calendars in a way that ' "secure[s] the just, speedy, and inexpensive determination of every action." '" SIPCO's Response [Dkt. 190] at 14.  SIPCO urges that "[n]early three and a half years after Emerson filed the First Georgia Action, SIPCO has invested significant time, money and resources into the prosecution of this case. Given (1) Emerson's knowledge of SIPCO's patents, which dates back to 2009; (2) the 2011 license agreement with Emerson's White Rodgers Division; (3) Emerson's first (administratively dismissed) declaratory judgment action in 2013; (4) Emerson's subsequent declaratory judgment action in January, 2015; (5) SIPCO's infringement action in the Eastern District of Texas in October of 2015; (6) service of infringement and invalidity contentions in the Georgia declaratory judgment and Texas actions; (7) completion of Markman briefing in the Georgia Action; (8) partial completion of the Markman process in the Texas Action; (9) the restarting of the Markman process—for the 3rd time—on December 30, 2016; and (10) SIPCO's depositions of an Emerson Rule 30(b)(6) witness and an Emerson employee in September 2016, Emerson simply waited too long to petition for IPR review and even longer to file its Motion to Stay." SIPCO's Reply [Dkt. 190] at 21-22.

Emerson replies that "SIPCO is wrong, and its argument relies on its own incomplete and misleading procedural history that ignores key facts and admissions. For example SIPCO's recitation of the procedural history attempts to show that this litigation has been going on for three and a half years and is through Markman briefing. * * * The truth is that the vast majority of patents-in-suit were not put at issue until October 16, 2015 when SIPCO filed suit in Texas * * * and the last patent was not added until December 30, 2015 * * *. Emerson was not dilatory in filing its IPRs. SIPCO served the Texas complaint on November 30, 2015, starting a one year statutory period for Emerson to file IPR petitions on 10 out of the 11 patents. 35 U.S.C. § 315(b). In fact, some of the IPRs were filed before the Texas complaint was filed, but in any event all of the IPRs were filed before the November 30, 2016 deadline for the first 10 patents asserted in Texas. It is absurd to say that Emerson 'waited too long' when Emerson met the statutorily imposed deadline triggered by SIPCO's own November 30, 2015 service of the Texas complaint. Courts have 'decline[d] to read a "dilatory motive" into [a] [d]efendant's timely exercise of its statutory rights' by filing IPRs toward

the end of the allowed period. * * * Moreover, on October 28, 2016, SIPCO's counsel wrote trying to justify its delay in producing documents by explaining that 'fact discovery is far from over in this case.' * * * Now, SIPCO inconsistently argues that discovery is too advanced to grant a stay." Emerson's Reply [Dkt. 193] at 12-13.

Emerson urges that "Emerson's IPRs were filed timely and this case, in its present posture, is not so far advanced that a stay will be a waste of already expended resources. To the contrary, the case is still at a relatively early stage – discovery is open, claim construction has not occurred, expert disclosures have not been made, and no trial date has been set. * * * The parties and Court stand to conserve resources by waiting to see which claims, if any, survive PTAB review rather than proceed with discovery, claim construction, and expert analysis of claims found unpatentable by the PTAB." *Id.* at 14.

Both parties make valid points.  However, both parties' arguments are premised on a stay extending to the conclusion of the IPRs/CBM review.

The current scheduling order [Dkt. 173] provides:

| Event/Description | Date |
|---|---|
| Joint email to master advising of parties' progress, and any foreseeable issues delaying schedule. | November 11, 2016 |
| Joint email to master advising of parties' progress and any foreseeable issues delaying schedule. | December 2, 2016 |
| Complete claim construction discovery (LPR 6.4) | December 9, 2016 |
| SIPCO shall serve a Preliminary Election of Asserted Claims, which shall assert no more than ten (10) claims from each patent and not more than a total of 30 claims. | December 9, 2016 |
| Joint email to master advising of parties' progress and any foreseeable issues delaying schedule. | December 16, 2016 |
| Emerson shall serve a Preliminary Election of Asserted Prior Art, which shall assert no more than six (6) prior art references against each patent with respect to the Brownrigg patents, no more than eight (8) prior art references against each patent with respect to the Petite patents, and not more than a total of 25 references. For purposes of this Order, a prior art instrumentality (such as a device or process) and associated references that describe that instrumentality shall count as one reference, as shall the closely related work of a single prior artist. | December 23, 2016 |

| | |
|---|---|
| Each party shall simultaneously exchange a list of claim terms, phrases or clauses that should be construed by Court, and identify any MPF [means-plus-function] claim elements ("Proposed Terms, for Construction") (LPR 6.1(a)). | December 30, 2016 |
| Parties to meet and confer on Proposed Terms for Construction (LPR 6.1(b)) – specifically "for the purposes of finalizing this list, narrowing or resolving differences." <br><br> Namely, the intent of the rule is to narrow and finalize the parties' disagreements. | After December 30, 2016 |
| Joint email to master advising of parties' "meet and confer" pursuant to LPR 6.1(b) | January 6, 2017 |
| Parties shall simultaneously exchange a preliminary proposed construction for each claim term, phrase, or clause and exchange preliminary identification of extrinsic evidence supporting construction (dictionary definitions, treatise cites, prior art, proposed testimony) (LPR 6.2) | January 9, 2017 |
| Parties to meet and confer to narrow claim construction issues and finalize Joint Claim Construction Statement (LPR 6.2(c)) | After January 9, 2017 |
| Joint email to master advising of parties' progress and any foreseeable issues delaying schedule, as well as the results of the parties' prior "meet and confer to narrow claim construction issues and finalize Joint Claim Construction Statement." | January 12, 2017 |
| Parties shall file a Joint Claim Construction Statement (LPR 6.3). <br><br> In the LPR 6.3 filing, the parties shall list the most significant terms according to the parties' priorities, which were agreed upon during the LPR 6.2(c) meet and confer, indicating which of those terms will be case or claim dispositive. <br><br> Twelve (12) claim terms will be construed (not including indefiniteness issues). <br><br> If the parties cannot agree to the most important 12 terms, the parties shall identify the terms that were agreed upon and then divide the remainder evenly between Plaintiffs and Defendants. | January 16, 2017 |
| Parties' joint statement re length of claim construction hearing – 1 or 2 days (or other) – including whether a party will present tutorial and/or witness testimony at claim construction hearing. <br><br> A 1-day hearing allows for roughly 5.5 hours total in hearing time.  Divided equally, that's 2.75 hours per side. <br><br> In general, unless parties agree otherwise, a party can use its 2.75 hours to (1) present a tutorial, (2) present testimony, and/or (3) argue claim construction. <br><br> If parties wish to present testimony, it is strongly urged that the parties agree to present a witness' direct testimony *via* affidavit/declaration in advance, and limit the hearing to cross-examination and limited re-direct examination. | January 16, 2017 |

| | |
|---|---|
| Opening claim construction brief (LPR 6.5). <br><br> Opening claim construction briefs shall not exceed 65 pages, subject to motions to enlarge the same showing good cause. <br><br> Contested motions for enlargement must be filed no less than 2 weeks before when briefs are due. <br><br> Deadline for parties, if they desire, to provide the Court and master with tutorials concerning the technology involved in the asserted patent(s). <br><br> Font and margins outlined in L.R. 5.1B and 7.1D, N.D. Ga. apply. | January 30, 2017 |
| Parties to provide agreed dates for: <br><br> • Exchange of witness statements on direct examination (if the parties agree to that procedure) <br><br> • Exchange of all demonstratives, physical exhibits and materials on which each party will rely in the claim construction hearing <br><br> • Objections to demonstratives, physical exhibits, or materials | January 30, 2017 |
| Responsive claim construction brief (LPR 6.5) <br><br> Responsive claim construction briefs shall not exceed 25 pages. | February 10, 2017 |
| Reply claim construction briefs are not contemplated – but if requested, motion and proposed brief due. | February 14, 2017 |
| Claim Construction Hearing – currently scheduled for 1 day – 5.5 hours total, 2.75 hours per side <br><br> The hearing will be held in the courtroom of the Honorable Willis B. Hunt, Jr., Senior United States District Judge: <br><br> Courtroom 1707 <br> 1756 Richard B. Russell Federal Building and United States Courthouse <br> 75 Ted Turner Drive, SW <br> Atlanta, GA 30303-3309 <br><br> The hearing will begin promptly at 9:00 a.m. and conclude no later than 5:00 a.m. | Thursday, <br> February 16, 2017. |
| Plaintiffs must serve advice of counsel and related information rebutting a willfulness charge (LPR 5.2) | 2 weeks after claim construction order |
| Fact Discovery Closes | 6 weeks after claim construction order |
| SIPCO shall serve a Final Election of Asserted Claims, which shall identify no more than five (5) asserted claims per patent from among the ten (10) previously identified claims and no more than a total of 15 claims. | 6 weeks after claim construction order |
| Joint email to master advising of parties' progress and any foreseeable issues delaying schedule. | 6 weeks after claim construction order |
| Initial Rule 26 Expert Witness disclosures due on issues that a party bears the burden of proof (for non-claim construction issues) (LPR 7.1) | 1 month after fact discovery closes |

| | |
|---|---|
| Emerson shall serve a Final Election of Asserted Prior Art, which, for the Brownrigg patents, shall identify no more than four (4) asserted prior art references per patent from among the six (6) prior art references previously identified for that particular patent, and for the Petite patents, shall identify no more than five (5) asserted prior art references per patent from among the ten (10) prior art references previously identified for that particular patent, and no more than a total of 16 references.<br><br>For purposes of this Final Election of Asserted Prior Art, each obviousness combination counts as a separate prior art reference. | 1 month after fact discovery closes |
| Joint email to master advising of parties' progress and any foreseeable issues delaying schedule. | 1 month after fact discovery closes |
| Second Rule 26 Expert Witness disclosures due on issues that opposing party bears the burden of proof (for non-claim construction issues) (LPR 7.1) | 2 months after fact discovery closes |
| Rebuttal expert disclosures (when permitted by Rule 26) (LPR 7.1) | 21 days after the second Rule 26 Expert Witness Disclosures are due |
| Expert depositions (LPR 7.2) | Beginning 1 week after rebuttal expert disclosures; ending 5 weeks after rebuttal expert disclosures |
| Joint email to master advising of parties' progress and any foreseeable issues delaying schedule. | Within 2 days of end of expert depositions |
| Summary Judgment Motions due (LR 56.1D) | 1 month after the end of the period for expert depositions |
| Briefs Opposing Summary Judgment due (LR 7.1B) | 1 month after summary judgment motions are due |
| Reply Briefs for Summary Judgment (LR 7.1C) | 2 weeks after summary judgment oppositions are due |

The "current stage" of the proceedings is that "Parties shall file a Joint Claim Construction Statement (LPR 6.3)," on January 16, 2017.

In light of this pending motion, as well as other pending discovery issues, the claim construction hearing scheduled for February 16, 2017, has been postponed. Accordingly, the claim construction briefing preceding that claim construction hearing has likewise been postponed. The dates in the scheduling order following the claim construction hearing are "keyed off" of a "claim

construction order" resulting from the claim construction hearing, and thus are "automatically" deferred.

The parties have nevertheless been advised that the parties should continue with ongoing discovery unless and until a formal "stay" is issued.

Discovery is plainly not complete, and the parties have currently raised several discovery issues that have not been fully resolved. A trial date has not been set, and the "stage of the litigation" is at the claim construction phase – despite earlier phases of this litigation that sought to address claim construction.

The "stage of the litigation" factor, as it relates to the present case, would seem to plainly weigh in favor of at least a temporary stay until the PTO/PTAB issues institution decisions in the pending IPRs/CBM review.

Again, given that the patents-in-suit are plainly related by subject matter, and, at least in some instances, by close similarities in the specifications, drawings and claims, it seems plain, beyond any reasonable doubt, that the PTAB's potential decisions in the pending IPRs/CBM review would/could have significant impact on the Court's decisions.

## C.    Whether a Stay, or the Denial Thereof, Would Unduly Prejudice the Nonmoving Party or Present a Clear Tactical Advantage for the Moving Party

SIPCO urges that "[a]lthough SIPCO is a non-practicing entity, it is still prejudiced by Emerson's motion to stay." SIPCO Response [Dkt. 190] at 22.

In particular, SIPCO asserts that "Emerson started this litigation in 2013, when it filed its first declaratory judgment action. * * * Now, nearly three and a half years later, Emerson is trying to stop the litigation that it started. Emerson again filed a complaint for declaratory judgment in January 2015. * * * Yet Emerson waited over eleven months (i.e., the very end of the statutory deadline) to file the vast majority of its IPR petitions. * * * And even though Emerson had already filed two IPR petitions at the time it filed the second declaratory judgment action, it did not file this motion to stay until over ten months later. * * * In short, Emerson's delay in filing its IPR petitions and in filing this motion to stay a case that it initiated more than three years ago demonstrates a 'lack of diligence' that is prejudicial to SIPCO and demands the denial of this motion." SIPCO's Response [Dkt. 190] at 22-23.

34

Emerson replies that "SIPCO again relies on its own distorted view of the procedural history, claiming 'Emerson started this litigation in 2013' * * * and takes no responsibility for the delay SIPCO itself caused by, among other maneuvers, filing the Texas complaint and moving to transfer this case back to Texas after the Texas case was transferred here. There has been absolutely no 'pattern of delay' by Emerson in filing either the IPR petitions or the present motion to stay. Emerson's IPRs were all filed within the one year statutory deadline afforded by 35 U.S.C. § 315(b) and triggered by the service of SIPCO's Texas complaint. Further, Emerson's motion to stay was filed November 14, 2016, sixteen days before the statutory deadline to file IPRs on the first 10 Texas patents. The Court should not ascribe a dilatory motive to Emerson's timely exercise of its statutory rights. * * *."  Emerson's Reply [Dkt. 193] at 15.

35 U.S.C. § 315(b) provides:

An inter partes review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent. The time limitation set forth in the preceding sentence shall not apply to a request for joinder under subsection (c).

Thus, as Emerson correctly notes, Emerson's IPRs were all filed within the one year statutory deadline afforded by 35 U.S.C. § 315(b) which was triggered by service of SIPCO's Texas complaint.

It is believed that SPICO has not shown that it will suffer significant prejudice from a relatively short, temporary stay pending completion of the PTAB institution decisions.  Whether or not a stay should be continued after that juncture can be revisited at that time.

## D.    Whether a Stay, or the Denial Thereof, Will Reduce the Burden of Litigation on the Parties and on the Court

The parties have not expressly addressed this "burden of litigation" issue, but this is an issue that may be properly considered by the district court in its discretion per the Federal Circuit's opinion in *Murata*, 830 F. 3d at 1362.

Again, the issue here is a temporary stay pending the PTAB's decisions whether to institute IPRs/CMB review on the pending petitions.

It seems clear that, once again, as noted above, given that the patents-in-suit are plainly related by subject matter, and, at least in some instances, by close similarities in the specifications, drawings and claims, that the PTAB's potential decisions in the pending IPRs/CBM review

would/could have significant impact on the Court's decisions, and, accordingly, such decisions would potentially reduce the burden of litigation on the parties and the Court.

## VI.
## Conclusion

For the reasons discussed above, the master RECOMMENDS that the motion be GRANTED-IN-PART. The master recommends that a temporary and partial stay issue until the U.S. Patent and Trademark Office, Patent Trial and Appeal Board (PTAB) has issued institution decisions in all of the pending IPRs and CBM, which are currently estimated to be completed by June 13, 2017.

The master RECOMMENDS that such stay not extend to current discovery that has been initiated, or current discovery disputes. Namely, the parties will complete all current initiated discovery, including resolution of any current discovery disputes. If the parties believe that any particular current discovery or discovery disputes should be likewise stayed, the parties may raise the issue with the master or Court.

The master FURTHER RECOMMENDS that the parties be directed to advise the Court promptly after all such institution decisions have been issued by the PTAB, and to provide the Court with copies of the same.

The master FURTHER RECOMMENDS that the issue of whether a stay should be continued beyond the date when the PTAB issues institution decisions be revisited in light of the claims and prior art involved in those institution decisions.

The master FURTHER RECOMMENDS that the parties, in conjunction with the master, promptly provide the Court with a proposed revised scheduling order taking into account a current, temporary stay with contingencies for whether a stay will be continued after the PTAB issues institution decisions in the pending IPRs/CBM review.

The master RECOMMENDS DENYING Emerson's motion in all other respects.

SIGNED on the 20th day of January, 2017, in San Antonio, Texas.


_____/s/ Gale R. Peterson_____
Gale R. Peterson, Special Master

## CERTIFICATE OF SERVICE

A copy of the foregoing was electronically filed with the Court through the ECF system this 20th day of January, 2017.  Notice of this filing will be sent by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

_____/s/ Gale R. Peterson_____

Gale R.  Peterson, Special Master