# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
|---|---|---|
| EMERSON ELECTRIC CO., et al., | § | |
| | § | |
| Plaintiffs, | § | Case No. 1:15-cv-00319-AT |
| | § | |
| v. | § | Special Master Peterson |
| | § | |
| SIPCO, LLC, and IP CO, LLC | § | JURY TRIAL DEMANDED |
| (d/b/a INTUS IQ), | § | |
| | § | |
| Defendants. | § | |
| | § | |

## <u>JOINT STATEMENT ON CASE STATUS</u>

Pursuant to the Court's Order of April 18, 2023 (Dkt. No. 301), Plaintiffs and Counter-Defendants Emerson Electric Co., Fisher-Rosemount Systems, Inc., Rosemount Inc., and Emerson Process Management LLLP[1] ("Emerson"), together with Defendants and Counter-Plaintiffs SIPCO, LLC and IP CO, LLC ("SIPCO") (collectively with Emerson, the "Parties")[2] respectfully submit this Joint Statement

---

[1] Emerson Process Management LLLP is named as a Party in only *SIPCO, LLC v. Emerson Electric Co.*, No. 1-16-cv-02690 (N.D. Ga.), which was consolidated with this action. Dkt. No. 121.

[2] Emerson's Position Only (not joined by SIPCO): Because IP CO, LLC was not a party to certain actions referred to in this joint statement, Emerson refers at times herein to SIPCO, LLC.

setting forth the Parties' agreements and disputes regarding: (a.) the case schedule; (b.) the patents and patent claims remaining at-issue after the decisions by the ITC and PTAB; (c.) the precise issues remaining to be litigated by this Court (via a bench or jury trial) e.g., claim construction, infringement, invalidity, etc.; (d.) any issues (especially case dispositive issues) that can be resolved on summary judgment based on records before the ITC and/or PTAB; and (e.) any other pertinent issues.

The Parties disagree on the content of the Joint Statement. Each Party's position is as follows:

### A.    Emerson's Position

As explained herein, SIPCO seeks leave to elect new claims, assert a new patent, and accuse new products of infringement through the Joint Statement rather than through motion practice. Consequently, Emerson has included explanations as to its opposition to the requested relief herein. Emerson defers to the Court as to whether it would prefer additional briefing on these issues or to address them at the case management conference.

During the meet and confer process, Emerson repeatedly requested SIPCO to provide factual and legal support for its positions, but SIPCO simply refused—it even declined to inform Emerson that it intends to accuse "new" products of infringement until May 4, 2023; and even then, SIPCO did not even identify the

proposed "new" products.  It was not until Sunday, May 14, 2023—one day before the due date for this Joint Statement—that SIPCO finally revealed its positions, such as the "new" products that it intends to accuse of infringing the Asserted Patents. But, critically, all of the alleged "new" products, based on SIPCO's own admissions, were released after the patents that remain at issue expired, as discussed in Section I.A.1.  After confronted with this reality, on Monday, May 15, 2023 at 10:21pm ET—*i.e.*, less than two hours before the deadline to file the Joint Statement—SIPCO includes different products with a different purported release date (after most of the asserted patents expired).

As another example, SIPCO improperly requests leave to re-elect claims (*see infra*, § II.C.1), but has withheld its alleged factual and legal support for the request despite requests during meet and confers.  As part of the drafting process, SIPCO provided only minimal detail on the basis for its request on May 4, 2023.  Emerson responded to SIPCO's positions on May 11, 2023. It was not until Sunday, May 14, 2023 that SIPCO disclosed its positions as detailed herein.

Emerson is, and has been, willing to respond to any motion for leave to obtain the requested relief, but Emerson must be provided with an opportunity to respond to SIPCO's requests.[3]

**B.    SIPCO's Position**

SIPCO's position is that this Joint Statement should clearly identify the parties' positions where there is disagreement, but that a joint statement is not the appropriate vehicle to attempt to fully brief those disagreements. SIPCO believes the Court's order was clear in requesting that that this Joint Statement should set forth the parties' "agreements and disputes" regarding, *inter alia*, the case schedule, and the patents and patent claims remaining at-issue after the decisions by the ITC and PTAB. It has become clear to SIPCO that Emerson does not agree with SIPCO regarding the claims that remain at issue in this case, on the supplementation of contentions, and on issues pertaining to the schedule. For that reason, and per the Court's order, SIPCO sought in this joint statement to provide the Court with a

---

[3] On May 15, 2023 at 10:21 PM Eastern, SIPCO provided numerous edits to the draft joint statement that Emerson did not have sufficient time to consider and respond to, including attempting to identify new products and make new arguments related to optional features in Emerson's products, and the "scalable address" and "wide area network" claim limitations as good cause to amend its contentions. Due to the filing deadline, Emerson did not have an opportunity to provide responsive edits to the new portions of the joint statement and reserves the right to seek leave to respond after having adequate time to review them.

general outline of those disputes so that they could be discussed with the Court at the upcoming Case Management Conference, including how the Court would like to proceed on the disputed issues (motion practice, briefing, referral to the Special Master, etc.). Emerson did not agree with this approach.

Specifically, late on the evening of May 11, 2023, and with about 2 business days before the parties' joint statement was due to the Court, Emerson provided substantial edits to the draft Joint Statement—adding more than 30 pages of material that more than doubled the size of the draft joint statement, including nearly 20 pages of substantive arguments on a single point of disagreement (whether SIPCO can update its preliminary election of claims). When it provided this new material, Emerson was well aware that the parties' had previously agreed to a schedule in which SIPCO would provide any remaining edits by that Sunday at noon. In other words, Emerson provided 30 pages of new substantive arguments late on a Thursday night that SIPCO would need to respond to by that Sunday (Mother's Day) at noon.

The very next day, Friday, counsel for SIPCO contacted Emerson's counsel about the impropriety of these edits and Emerson's attempt to engage in full briefing in a joint statement, and requested that Emerson consider agreeing to each party identifying its respective positions clearly but succinctly while reserving full briefing and substantive argument until and unless requested by the Court. Emerson refused.

As a result, in order to avoid the prejudice of having Emerson present substantive arguments, facts, and case law to the Court without rejoinder, SIPCO has had no other option but to include responsive substantive arguments despite its continued belief that a Joint Statement should not be an a means for parties to try to engage in quasi-motion practice and briefing.

According to its statement above, Emerson now accuses SIPCO of, in effect, "hiding the ball" by not previously identifying certain specific facts and case law in support of its positions (*e.g.*, the specific identity of Emerson's new accused products, or specific legal support for its ability to update its preliminary election of claims). Emerson's accusations are without merit. SIPCO was fully transparent in its position that this Joint Statement should be a general statement of the agreements and disputes between the parties on the issues requested by the Court, and not a brief with substantive arguments, and even asked Emerson to agree to that approach. When Emerson refused to agree to each party providing an outline of their positions and reasoning without engaging in brief-like substantive arguments, SIPCO reluctantly but necessarily needed to respond with substantive arguments as well. For Emerson to now complain about SIPCO providing such detailed arguments is disingenuous, at best. Emerson's accusations of sandbagging are particularly egregious given that Emerson waited until late in the evening on the Thursday before

this statement was due before providing 30 pages of new material—leaving SIPCO just two business days to respond.  On May 15, 2023 at 2:29 PM Easter, Emerson provided SIPCO with 21 more pages of substantive briefing, which SIPCO had to rush to respond to the same day.  Due to the filing deadline, SIPCO had limited opportunity to provide responsive edits to some of the new portions of the joint statement and reserves the right to seek leave to respond after having adequate time to review.

Notwithstanding Emerson's approach to this joint statement, SIPCO maintains that briefing would be beneficial and may be required on several areas of disagreement between the parties, and is prepared to provide such briefing at the request of the Court and the Special Master.

## I.    THE CASE SCHEDULE

As discussed in further detail below in Section II, the Parties currently dispute the patent claims that remain at issue in this litigation, which must be resolved prior to claim construction.   Attached as Exhibit A is the Parties' proposed schedule, which shows their points of agreement and disagreement.

### A.    Emerson's Position

Emerson proposes that the Court adopt a schedule, beginning with claim construction, that is consistent with the operative schedule entered by the Court prior to the stay.  *See* Dkt. No. 173.   While the parties agree to many of the relative deadlines in the Parties' proposed schedule in Exhibit A, Emerson disagrees with SIPCO regarding the following three issues.

### 1.    New Deadline for SIPCO to Amend Infringement Contentions and Re-Elect Claims

Emerson disagrees that the schedule should begin with SIPCO adding new patent claims to the case or otherwise amending its infringement contentions and prior binding claim elections.   Apparently recognizing the weaknesses in its remaining claims and infringement contentions, including those that the International Trade Commission found were not infringed by Emerson's products, SIPCO now seeks a do-over.  But the Local Patent Rules are meant to prohibit such

attempts to add new patent claims or otherwise alter infringement contentions and

claim elections years after having made claim elections:

> The Local Patent Rules have been characterized as an **"exercise in forced door closing," in the sense that they force the parties to take infringement . . . positions early** in the litigation and stick to them. . . . **[T]he rules were enacted to elicit the parties' positions on infringement . . . early in the case**. By requiring the parties to take positions sooner rather than later, **the Local Patent Rules discourage gamesmanship and tend to facilitate early resolution of the dispute**."

*McKesson Info. Sols. LLC v. Epic Sys. Corp.*, 495 F. Supp. 2d 1329, 1332 (N.D. Ga.

2007) (emphasis added). SIPCO has taken "positions on infringement," and now it

must "stick to them" under the Local Patent Rules. *Id.* SIPCO's attempt to redo its

infringement contentions and claim elections is precisely the type of gamesmanship

the Local Patent Rules were designed to prohibit.

> **(a)    SIPCO Cannot Show Entitlement Under the Local Patent Rules to Amend its Infringement Contentions and to Accuse the "New" Products of Infringement**

SIPCO originally stated in an earlier version of this statement that Emerson

released new products since SIPCO served its infringement contentions, but SIPCO

did not identify any new products. On Sunday, May 14, 2023, SIPCO for the first

time identified certain "new" products that it intends to accuse of infringing,

"including the new Emerson Wireless 1410S Gateway (2020), Emerson Wireless

1410S Gateway with 781S Smart Antenna (2020), and Emerson Wireless 1410S2

Gateway (2020)," all of which SIPCO alleges infringe the Asserted Patents by using the WirelessHART protocol. Then on Monday, May 15, 2023 at 10:21PM SIPCO for the first time alleged that certain products were released in 2019 (after all but three of SIPCO's asserted patents had expired).[4]  Nonetheless, the Court should prohibit SIPCO from amending its infringement contentions to include these products for at least the following reasons:

As a threshold issue, with the exception of U.S. Patent No. 9,439,126, which is not even currently asserted in this or in any litigation (and SIPCO's attempt to add it are improper for the reasons in Section V.A.1), all of SIPCO's patents asserted in this litigation expired no later than 2020, and SIPCO made no attempt to timely amend its infringement contentions, including before the case was stayed and administratively closed on March 21, 2018. *See, e.g.*, *Finesse Wireless LLC v. AT&T Mobility LLC*, Ca. No. 2:21-cv-00316-JRG-RSP, 2022 WL 16636930, at *3 (E.D. Tex. Nov. 2, 2022) (denying motion for leave to amend infringement contentions citing patent owner's lack of diligence upon receiving information on the products during discovery); *Definitive Holdings, LLC v. Powerteq LLC*, Ca. No. 2:18-cv-844 DBB DBP, 2022 WL 798863, at *2-3 (D. Utah Mar. 16, 2022) (denying leave to

---

[4] Emerson reserves the right to respond to these newly alleged release dates.

amend infringement contentions to address a new accused product where the product was publicly available for months before service of final infringement contentions).

Specifically, the Asserted Patents (many of which should not even remain at issue in this litigation because no elected claims survived the PTAB proceedings) expired no later than the dates provided below:

| Patent No. | Latest Expiration Date |
|---|---|
| 7,103,511 | September 29, 2020 |
| 6,044,062 | December 6, 2016 |
| 7,697,492 | September 23, 2020 |
| 6,914,893 | September 23, 2020 |
| 6,437,692 | June 22, 2018 |
| 6,249,516 | December 6, 2016 |
| 7,468,661 | June 22, 2018 |
| 8,000,314 | December 6, 2016 |
| 8,233,471 | December 6, 2016 |
| 8,625,496 | December 6, 2016 |
| 8,754,780 | June 22, 2018 |
| 8,908,842 | March 31, 2017 |
| 8,013,732 | June 22, 2018 |

Despite the expiration of the majority of patents between 2016 and 2018, SIPCO requests broad permission to amend its contentions across the board.

Critically, as SIPCO admits, the "new" products were released, at the earliest, in 2019. In fact, SIPCO admits that the "new Field Devices include, for example, Emerson's new Bettis XTE3000 Field Device that reached marked [sic] *just last month*." SIPCO cannot accuse these "new" products of infringement because it is

black-letter law that an expired patent cannot be infringed. 35 U.S.C. § 271(a) (defining infringement as unauthorized acts of making, using, selling, offering for sale or importing into the United States that occur "during the term of the patent"); *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 2407 ("[W]hen the patent expires, the patentee's prerogatives expire too, and the right to make or use the article, free from all restriction, passes to the public.").

Even setting aside the expiration dates of the Asserted Patents, SIPCO alleges that the new Gateways allegedly released by Emerson in 2019 "all . . . communicate using the WirelessHART protocol and infringe on SIPCO's Patents-In-Suit." But SIPCO's current contentions do not include assertions on a per-product basis. Instead, SIPCO elected to map the WirelessHART protocol in the same manner for all accused products. To do so, it identified the accused functionality by pointing to WirelessHART standards documents as the accused functionality. Therefore, the release of new products that SIPCO alleges incorporate the WirelessHART protocol does not justify SIPCO's attempt at a "do over" of its prior infringement contentions years later. SIPCO's shifting-sands approach to its infringement contentions is prohibited under the Local Patent Rules. *McKesson*, 495 F. Supp. 2d at 1332 ("The Local Patent Rules have been characterized as an 'exercise in forced door closing'").

> **(b)** **The IPRs and the ITC's Determinations Do Not Provide Good Cause for SIPCO to Amend its Infringement Contentions**

SIPCO further incorrectly argues that "the arguments and orders from the IPR proceedings involving the asserted patents and their appeals to the Court of Appeals for the Federal Circuit ("CAFC"), including arguments and orders on claim construction, had numerous effects on SIPCO's infringement positions, and SIPCO must now amend its infringement contentions to reflect those decisions." But LPR 4.5 provides two mechanisms for amending infringement contentions: First, under LPR 4.5(b), they may be amended in a "timely manner" under the Federal Rules of Civil Procedure; second, under LPR 4.5(c), they may be amended "in light of [] either a claim construction ruling by **the Court** or a modification of an opposing party's Disclosure or Response . . . within thirty (30) days of service of such ruling, Disclosure, or Response" (emphasis added). Neither of these methods of amendment provides SIPCO the ability to amend its contentions.

First, while SIPCO cites the IPRs as a basis for amending its infringement contentions, SIPCO can identify no legitimate reason for amending infringement contentions in view of the IPR invalidity findings. *See, e.g.*, *Papst Licensing GmbH & Co., KG v. Apple, Inc.*, Ca. No. 6:15-cv-01095-RWS, 2020 WL 11613777, at *3 (E.D. Tex. July 1, 2020) ("allowing a party to amend its claim election and

infringement contentions after every unfavorable IPR would . . . [allow] 'eleventh-hour alterations" to [its] position[], subjecting the opposing party to additional delay, expense and potential prejudice"); *Univ. of Va. Patent Found.*, No. 3:14-cv-00051, 2019 WL 1993552, at *5 (W.D. Va. May 6, 2019) (finding that an adverse IPR proceeding did not constitute "new information" supporting good cause to amend); *Capella Photonics, Inc. v. Cisco Sys. Inc.*, Ca. No. 14-cv-03348-EMC, 2019 WL 2359096, at *4-5 (N.D. Cal. June 4, 2019) (denying motion to amend infringement contentions to assert new claims post-IPR because the patent owner failed to "'act[] with diligence in promptly moving to amend' after a circumstance supporting amendment occur[red]") (quoting *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1363 (Fed. Cir. 2006)); *Trusted Knight Corp. v. IBM*, Ca. No. 19-cv-01206-EMC, 2021 WL 5205522, at *2 (N.D. Cal. Nov. 9, 2021) (denying patent owner's motion for leave to amend its disclosure of asserted claims because patent owner's "true rationale is evident from the timing of its motion: recognizing the asserted claims . . . were likely to be invalidated, it aimed to keep its case alive by switching gears to assert the only two claims not covered by [defendant's] IPR"); *see also infra* § II.C.1.

Second, SIPCO only vaguely refers to a need to amend in view of constructions in two related proceedings, but this does not satisfy the standard set by

the Local Patent Rules.  For example, SIPCO states that it must amend its claims to address the CAFC's constructions of the term "scalable address," without identifying any good faith belief why the CAFC's opinion impacts its infringement contentions or provides any justification for SIPCO to amend its contentions.  But the CAFC's construction of "scalable address" was foreseeable given the Parties' agreed upon construction of "scalable address": "an address that has a variable size based on the size and complexity of the system."  *See* Dkt. No. 132-1 (identifying agreed constructions).  The Federal Circuit construction is in line with this construction, holding that a scalable address requires "that the portion of the receiver address that identifies the specific intended recipient or recipients of the message be scalable and include the address of at least one remote device," wherein "scalability refers to the ability of that portion of the receiver address to vary based on the size and complexity of the system."  *SIPCO, LLC v. Emerson Elec. Co.*, 794 F. App'x 946, 950 (Fed. Cir. 2019).  The addresses SIPCO identified in its contentions as purportedly meeting the "scalable address" element each have only a single "portion."  SIPCO thus has not articulated any amendment to the contentions that is purportedly necessary to address the Federal Circuit's foreseeable construction—let alone why such an amendment could not have been made years ago.  And because this construction was foreseeable, SIPCO cannot reasonably argue that it "believes"

an amendment to its infringement contentions is required. L.P.R. 4.5(c) ("any amendment or modification of the Disclosures or Responses **which a party believes are required** in light of . . . a claim construction ruling by the Court") (emphasis added); *see also Sycamore IP Holdings LLC v. AT&T Corp.*, Ca. No. 2:16-CV-588-WCB, 2018 WL 1695231, at *4 (E.D. Tex. Apr. 6, 2018) (allowing amendment of contentions after claim construction only if the "the claim construction adopted by the court was 'unexpected or unforeseeable'"); *BookIT Oy v. Bank of Am. Corp.*, 817 Fed. Appx. 990, 994 (Fed. Cir. 2020) (affirming district court decision striking amendments to infringement contentions because the district court's claim construction was foreseeable and patent owner "lacked a good faith belief that its amendment was required by the court's claim construction"); *Parallel Networks, LLC v. Abercrombie & Fitch Co.*, 704 F.3d 958, 971 (Fed. Cir. 2013) (affirming district court decision finding no "good cause" to amend infringement contentions where the construction the court adopted was not an unanticipated construction). Thus, the CAFC's decision provides no basis for SIPCO's request to amend its infringement contentions (including its broad request for authorization across all asserted patents).

Similarly, SIPCO argues that it must amend its infringement contentions in view of an ITC ALJ's construction of the term "wide area network," but the ALJ

found the term "wide area network" recited by the '511 patent's asserted claims indefinite—thus rendering the claims invalid. *See Certain Wireless Mesh Networking Products and Related Components Thereof*, Inv. No. 337-TA-1131, Order No. 26 (*Markman* Order) at 37-45 (Aug. 13, 2019); *see* Dkt. No. 299-2. That is, the '511 patent's "claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014). SIPCO fails to explain how an amendment is warranted in view of the ALJ's finding that the '511's asserted claims are invalid for indefiniteness.

Finally, while SIPCO complains that "Emerson itself filed supplemental invalidity contentions while the case was stayed and **without leave of Court**" (emphasis original), SIPCO is incorrect, because Emerson served invalidity contentions on March 20, 2018, while discovery was open, and before the case was stayed and administratively closed the following day. And critically, unlike SIPCO, Emerson abided by its existing prior art elections when serving its supplemental contentions. Moreover, the Local Patent Rules require that such contentions be served in accordance with the Federal Rules of Civil Procedure, LPR 4.5(b), which further requires supplementation in a "timely manner." Fed. R. Civ. P. 26(e)(1)(A).

Thus, Emerson's March 20, 2018 supplementation was proper, and serves as an example of how SIPCO's belated attempt to amend and supplement its infringement contentions, which it could have done before March 2018, is now improper.[5]

### (c)    SIPCO Cannot Demonstrate Good Cause to Amend its Binding Claim Elections

As discussed in Section II.C.1, SIPCO is improperly seeking to amend its prior binding election of claims to assert claims that it previously withdrew. A new election of claims is unwarranted. *See, e.g.*, *CUPP Cybersecurity LLC v. Trend Micro, Inc.*, CA. No. 3:18-cv-01251-M, 2021 WL 3733014, at *1 (N.D. Tex. Jan. 12, 2021) ("The purpose of limiting [patent owner's] asserted claims and staying the case pending IPR was to effectively and efficiently litigate this case. [Patent owner] will be able to do so without adding claims it previously elected not to assert."); *Univ. of Va.*, 2019 WL 1993552, at *4 n.5 (asserting new claims after adverse IPR findings is "contrary to Congress's purpose in creating IPR 'as part of a more efficient and streamlined patent system that will improve patent quality and limit

---

[5] SIPCO irrelevantly argues that Emerson's March 20, 2018 supplemental responses and contentions were filed "without leave of Court," but leave of Court is not required under the Local Patent Rules—Emerson served its supplemental responses and contentions in a "timely manner," consistent with L.P.R. 4.5(b) and Federal Rule of Civil Procedure 26(e).

unnecessary and counterproductive litigation costs'" and "might drastically prolong litigation.").

> **2.  To the Extent the Court Grants Leave For a Deadline to Amend Infringement Contentions and Claim Elections, SIPCO's Proposed Date to Begin Claim Construction 15 Days After Serving Contentions Is Unworkable and Prejudicial**

SIPCO's proposal to begin claim construction a mere 15 days after serving updated infringement contentions and a new preliminary election of claims is illogical. SIPCO entirely disregards the fact that its new infringement contentions and claim elections would require Emerson to prepare new non-infringement and invalidity contentions and to then elect new prior art, which due to the potential complexity of the case (depending on SIPCO's new infringement theories and claim elections), would require at least 90 days of additional effort, before the parties can even begin identifying claims for construction. Indeed, if SIPCO were permitted to add the '126 patent into the case (which it should not be permitted to do for the reasons in Section V.A.1), this would necessitate an even greater extension. Moreover, if SIPCO is granted leave to amend its binding claim elections (but not its infringement contentions or to add the '126 patent), the deadline should be at least 60 days from the service date of those new elections. Otherwise, SIPCO would be provided with an unfair advantage because SIPCO would be well aware prior to the

deadline of the patents that it is electing, and the infringement theories associated with those elected claims, but Emerson would not.

### 3. Emerson's Remaining Proposed Dates Are Consistent with the Local Patent Rules and Prior Schedule (Dkt. No. 173)

As noted in Exhibit A, Emerson's proposed deadlines are consistent with the timeframes provided under the prior schedule and the Local Patent Rules and should be adopted.

### B. SIPCO's Position

SIPCO proposes a schedule as the Court entered prior to the stay, one that is not fixed in days, but is instead calculated based on the start of claim construction, and after resolution of the remaining claims at issue in this case. In other words, the case schedule moving forward should begin with supplemental infringement contentions, followed by SIPCO's revised election of claims, and then proceed to the claim construction process. This is the most efficient, fair, and speedy manner for the Court and all parties to proceed. Emerson itself recognized the need to resolve such issues in its initial drafts of this Joint Statement, stating that the Parties'

dispute of the remaining claims "is a gating issue for claim construction and litigation of this matter moving forward."[6]

### 1.    Supplemental Infringement Contentions Are Warranted

The need for supplemental infringement contentions arises at least out of (1) the passage of time and Emerson's continued production and release of new products that infringe the asserted patents, and (2) the arguments and orders from the IPR proceedings involving the asserted patents and their appeals to the Federal Circuit, including arguments and orders on claim construction.    Providing updated infringement contentions will ensure fair and efficient resolution of the patent disputes by allowing SIPCO to provide notice of infringement with respect to new products that were not available when its original contentions were served, and address the impact of several years of IPR proceedings and Federal Circuit appeals.

The Northern District of Georgia Local Patent Rule (LPR) 4.5 allows for a party to supplement or amend infringement contentions as follows:

> (b) Each party's Disclosures or Response shall be supplemented or amended pursuant to the rules for supplementation and amendment of discovery responses generally provided for under the Federal Rules of Civil Procedure.

---

[6] This language was proposed by Emerson in its draft of this Joint Statement and was agreed upon by SIPCO. Yet, Emerson changed its mind without explanation just four days from the Court's filing deadline.

LPR 4.5 ("SUPPLEMENTING OR AMENDING CONTENTIONS").

These Local Patent Rules "were adopted in order to 'facilitate the speedy, fair and efficient resolution of patent disputes' and thus "provide that parties may amend their [] contentions 'pursuant to the rules for supplementation and amendment of discovery responses generally provided for under the Federal Rules of Civil Procedure.'" *Chemfree Corp. v. J. Walter, Inc.*, No. 1:04-CV-3711-JTC, 2008 U.S. Dist. LEXIS 93376, at *6-7 (N.D. Ga. Aug. 26, 2008). "Under the Federal Rules of Civil Procedure, 'a party is under a duty seasonably to amend its discovery responses if the party learns that the response is in some material respect incomplete or incorrect . . . .'" *Id*. (citing Fed. R. Civ. P. 26(e)(2)). LPR 4.5 is akin to the Northern District of California's rules regarding amending contentions in that that they "provide that 'amendment or modification of the [Infringement Contentions] may be made . . . upon a showing of good cause.'" *Id*. (citing ND Cal. Patent L.R.) (citing *O2 Micro Int'l Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1363 (Fed. Cir. 2006)); *see also Advanced Micro Devices, Inc. v. LG Elecs., Inc.*, No. 14-cv-01012-SI, 2017 U.S. Dist. LEXIS 98630, at *12 (N.D. Cal. June 26, 2017) ("A plaintiff may amend its infringement contentions 'upon a timely showing of good cause.' N.D. Cal. Patent L.R. 3-6.").

In order to show good cause, "parties must be diligent in amending their contentions after the discovery of new evidence." *Id.* "The diligence required for a showing of good cause has two prongs: (1) diligence in discovering the basis for amendment; and (2) diligence in seeking amendment once the basis for amendment has been discovered. *Advanced Micro Devices, Inc. v. LG Elecs., Inc.*, No. 14-cv-01012-SI, 2017 U.S. Dist. LEXIS 26443, at *7 (N.D. Cal. Feb. 24, 2017). SIPCO easily meets both prongs as it discovered the basis for amendments during the period which the case was stayed and is seeking to amend its infringement contentions immediately after the Court lifted its stay. Emerson cites easily distinguishable cases to argue that SIPCO was not diligent. *See Finesse Wireless LLC v. AT&T Mobility LLC*, Ca. No. 2:21-cv-00316-JRG-RSP, 2022 WL 16636930, at *3 (E.D. Tex. Nov. 2, 2022) (The party waited eight months during open discovery before indicating its intent to amend infringement contentions); *Definitive Holdings, LLC v. Powerteq LLC*, Ca. No. 2:18-cv-844 DBB DBP, 2022 WL 798863, at *2-3 (D. Utah Mar. 16, 2022) (The party waited almost one year to amend based on a newly available product). Here, SIPCO's conduct is diligent—it raised the issue immediately after the Court has lifted its stay—a stay that the Court placed "until the last of the final written decisions issues from the PTAB on all other patents." Dkt. 274. In addition, "[c]ontinuing to work diligently on stayed proceedings would have been a waste of

time and resources." *Advanced Micro Devices, Inc. v. LG Elecs., Inc.*, No. 14-cv-01012-SI, 2017 U.S. Dist. LEXIS 26443, at *9 (N.D. Cal. Feb. 24, 2017). As the Court explains in *Boston Sci. Corp.*, it would "serve[] no purpose" for SIPCO to move to lift the stay in order to amend its contentions as it is "more efficient for all concerned for [the parties] to wait until the results of the IPR proceedings were known" to make such amendments. *Boston Sci. Corp. et al., v. Cook Grp. Inc., et al.,* Case No. 1:17-cv-03448-JRS-MJD, 2021 WL 3634776, at *4 (S.D. Ind. Aug. 16, 2021). This is reenforced by the Court's requirement that the parties notify the Court only after all the issues are made final on all related patents, not after a new ruling is issued that may affect these proceedings, or after any new infringing product is made available to market.

Aside from SIPCO diligence in seeking relief, amends are warranted. First, SIPCO needs to amend its infringement contentions due to Emerson's continued production and release of new products that infringe the asserted patents while the case was stayed. A timely showing of good cause is found when "a party claiming patent infringement discovers an accused instrumentality that was not previously disclosed or known." *Corel Software, LLC v. Microsoft Corp.*, No. 2:15-CV-00528-JNP-PMW, 2018 U.S. Dist. LEXIS 189832, at *6-7 (D. Utah Nov. 5, 2018); *see also Phigenix, Inc. v. Genentech, Inc.*, 783 F. App'x 1014, 1017 (Fed. Cir. 2019) (A

timely showing of good cause can be made after "a recent discovery of prior art, or a recent discovery of nonpublic information about the accused instrumentalities.").

### (a) Emerson has Released Several New Products that Infringe on SIPCO's Patents

Emerson has released several new products including new gateways, smart antennas, field devices, and new application software, that infringe on SIPCO's Patent-In-Suit. Emerson asserts that it is surprised by SIPCO's need to amend its infringement contentions to identify its new products, but it is Emerson who is in the best position to know about their newly released products that infringe on SIPCO's patents. Yet, even though it is clear that Emerson has released several new products since this prior to when this case was stayed, it has failed to meet its discovery obligations and provide SIPCO with this information, instead forcing SIPCO to deduct information of Emerson's new products, their capabilities, and their release dates from publicly available sources. Moreover, SIPCO notified Emerson as early as March 22, 2023, in its draft notice to the Court regarding the completion of the PTAB and ITC proceedings, and related meet and confers, that new products would need to be taken into account.

Emerson's new products include WirelessHART gateways[7], such as for example, the new Emerson Wireless 1410S Gateway (2019), Emerson Wireless 1410S Gateway with 781S Smart Antenna (2019), Emerson Wireless 1410H Gateway with 781 Field Link (2019), and Emerson Wireless 1410S2 Gateway (2020), all that communicate using the WirelessHART protocol and infringe on SIPCO's Patents-In-Suit:



**Emerson Wireless 1410S Gateway**

**The Next Generation of Wireless Infrastructure**

The Emerson Wireless 1410S Gateway is the newest, most versatile wireless networking solution from the leader in wireless infrastructure*. Increased network capacity allows users to strengthen or add to WirelessHART® networks seamlessly while connecting with host systems and data applications. Customizable networks and flexible installation allow users to create a wireless field network to fit the needs of even the most challenging applications and site requirements.

---

[7] The gateway devices identified here are not an exhaustive list, but included only to provide the Court with examples.

## Advanced Network Anayltics

The Plantweb™ Insight Network Management application is designed for continuous, centralized monitoring of wireless networks across industrial facilities. Helping ensure operations adherence to network best practices for improved performance, this application offers strategic analysis that enables teams to prioritize maintenance and make informed decisions fast.

- Adhere to network best practices for improved reliability
- Troubleshoot faster by easily recognizing problem areas
- Utilize the network diagram to visualize networks and identify areas for improvements
- Centralized view of wireless networks across your facilities

*See* https://www.emerson.com/documents/automation/flyer-emerson-1410s-wireless-gateway-en-7118422.pdf (2019 Release); *see also* https://www.emersonautomationexperts.com/2019/industrial-internet-things/cisco-emerson-collaboration-heavy-duty-networking-solution/ (Jun 11, 2019 Emerson's Automation Experts Blog post announcing the release of the Emerson Wireless 1410S Gateway in collaboration with Cisco).

**Product Data Sheet**
00813-0500-4410, Rev AC
September 2019

# Emerson Wireless 1410H Gateway with 781 Field Link



- Gateway connects the *Wireless*HART® self-organizing networks with any host system

*See* https://www.emerson.com/documents/automation/product-data-sheet-emerson-wireless-1410h-gateway-781-field-links-en-5377888.pdf (Sept. 12, 2019).

# Emerson Wireless 1410S2 Gateway

The Emerson Wireless 1410S2 Gateway is the next generation of wireless infrastructure. Network flexibility allows users to strengthen or add to *Wireless*HART® networks seamlessly, while connecting with host systems and data applications. The gateway is designed for use with the Emerson Wireless 781S Smart Antenna to enable flexible remote antenna locations of up to 1300 feet (400 m), allowing users to create a wireless field network to fit the needs of even the most challenging applications and site requirements.

https://www.emerson.com/en-us/catalog/emerson-sku-wireless-1410s2-gateway
(2020 Release).

## Emerson™ Wireless 1410S Gateway with 781S Smart Antenna

The Emerson Wireless 1410S Gateway is the next generation of wireless infrastructure. Network flexibility allows users to strengthen or add to WirelessHART® networks seamlessly, while connecting with host systems and data applications. The gateway uses the 781S Smart Antenna to enable flexible remote antenna locations of up to 1300 feet (400 m) allowing the gateway to be in an easily accessible location, while the 781S Smart Antenna can be in hazardous areas near your data points.

https://www.emerson.com/en-us/catalog/emerson-1410s-gateway-with-781s-smart-antenna (2019 Release).

Emerson's new WirelessHART Gateways have additional capabilities that further infringe on SIPCO's Patents-In-Suit.  For example, the new Emerson Wireless 1410S2 Gateway and new Emerson Wireless 1410S Gateway with 781S include a new "Smart Antenna to enable flexible remote antenna locations of up to 1300 feet (400m), allowing users to create a wireless field network to fit the needs of even the most challenging applications and site requirements."

https://www.emerson.com/en-us/catalog/emerson-sku-wireless-1410s2-gateway

(2020 Release);  https://www.emerson.com/en-us/catalog/emerson-1410s-gateway-with-781s-smart-antenna (2020 Release).  This new Smart Antenna is further evidence against Emerson's non-infringement position that an available non-

infringing alternative of Emerson's gateways includes "[t]he use of wired instead of wireless communication for the Elected Claims of U.S. Patent Nos. 6,044,062, 8,233,471, 8,625,496, 8,908,842, 7,103,511, 7,468,661, 8,013,732, and Claims 1, 2, 10, 14 of 7,697,492." (Emerson's Mar. 20, 2018 Suppl. Response to Infringement Contentions, at 19-21).

   In addition, Emerson has released various new application software for its WirelessHART gateways and field devices to allow for expanded monitoring and control capabilities across network facilities such as, for example, the new Emerson Plantweb Insight Application software:

*Emerson's Plantweb™ Insight application provides streamlined view of networked Rosemount™ wireless pressure gauges, helping maintenance personnel stay informed and safe*

SHAKOPEE, MINN (May 30, 2018) – Emerson announces a new that displays data in an easy-to-understand dashboard for maintenance leads and instrumentation and electrical (I&E) personnel. An entire suite of Plantweb Insight applications collectively helps users quickly make sense of plant data and drive overall enterprise profitability.

This Industrial Internet of Things (IIoT) application delivers field data from a fleet of wireless pressure gauges as frequently as once per minute. By keeping operators updated on changing conditions remotely, the app allows personnel to make fewer manual rounds and minimize their exposure to hazardous areas.

*See* https://www.emerson.cn/en-cn/news/automation/1805-plantweb-insight-pressure-gauge (May 30, 2018).

Emerson Plantweb Insight Application software is part of Emerson's new Advanced Network Analytics tools that are "designed for continuous, centralized monitoring of wireless networks *across industrial facilities*." *See* https://www.emerson.com/documents/automation/flyer-emerson-1410s-wireless-gateway-en-7118422.pdf (emphasis added). In other words, they operate using a wide area network that reaches across facilities—direct evidence against Emerson's non-infringement positions that argue "the Accused Gateways are not to be connected to a wide area network for network security purposes" and "[c]ustomers are instructed not to connect its gateway devices to wide area networks." (Emerson's Mar. 20, 2018 Suppl. Response to Infringement Contentions, at 27, 161, 169, 174, 176).

Emerson has also released several new field devices[8], including those that operate using the WirelessHART protocol and infringe on SIPCO's Patents-In-Suit, and including those that operate as electric actuators—direct evidence against Emerson's arguments that the Emerson systems may alternatively include the "absence of an actuator" (*Id.* at 19-20) or that "the Accused Network Devices do not have and are not 'electrically interfaced with' 'an actuator.'" (*Id.* at 167, 170, 176).

---

[8] The field devices identified here are not an exhaustive list, but included only to provide the Court with examples.

These new field devices include, for example, Emerson's TEC2 Electric Actuator (2018 Release), the Rosemount 3051S Series of Instrumentation field devices (2018 Release), and the Bettis XTE3000 Field Device that reached marked just last month[9]:

 **High Performance Digital Valve Control Made Easy**



**TEC2**

Proven technology in electric actuation coupled with simplified digital controls, TEC2 is the next step in reliable high-performance digital valve control to make your work easier and safer.

Enhanced data-logging feature with time and date stamp features provide you with information to make effective and timely preventive maintenance decisions.

https://www.emerson.com/documents/automation/bettis-tec2-electric-actuator-model-500-9x12-en-5186388.pdf (2018 Release).

---

[9] The inclusion of Emerson's newly released devices as early as last month is particularly relevant to SIPCO's patents that have not expired, such as the '126 patent.

**Product Data Sheet**
April 2018
00813-0100-4851, Rev AD

# Rosemount™ 3051S Series of Instrumentation

**High Pressure Solutions**

 

*See* https://www.instrumart.com/assets/Rosemount-3051SHP-Datasheet.pdf (2018 Release)

**Product Data Sheet**
FCDS-20008-EN Rev.0
April 2023

# Bettis XTE3000 with WirelessHART

The Bettis™ XTE3000 WirelessHART® with 775 Wireless THUM or P+F Bullet Adapter allows for basic control of the XTE3000 Multi-Turn Electric Actuator via WirelessHART, by leveraging the ability of the Wireless 1410s Gateway to interact with a Modbus host. The THUM or P+F Bullet Adapter can also be configured to burst extra information to be made available to the Wireless 1410s Gateway, including feedback, alarms and control parameters.

https://www.emerson.com/documents/automation/data-sheet-bettis-xte3000-wirelesshart-en-en-8989730.pdf (April, 2023).

The availability of these several new Emerson infringing products that include new capabilities and have additional features than the initially accused products is enough good cause for Emerson to supplement its infringement contentions. For

example, the court in *Acer* found it significant that the proposed amendments to infringement contentions would add newly-accused products which did not enter the market until after the initial contentions. *See Acer, Inc. v. Tech. Props. Ltd.*, No. 5:08-CV-00877 JF/HRL, 2011 U.S. Dist. LEXIS 55774, 2011 WL 1838768, at *4 (N.D. Cal. May 13, 2011) ("nothing requires parties to bring a motion to amend each time a new product enters the market, as this could cause undue delay in the proceedings and prejudice to all parties involved.").

Finally, Emerson's arguments that SIPCO should not be allowed to amend its infringement contentions because for some claim elements SIPCO includes infringement theories mapped to the WirelessHART protocol in the same manner for all accused products is in direct contradiction to Emerson's non-infringement contentions that argue these features are allegedly optional features of the standard, *i.e.*, may be in some products but not others. Emerson's Response to Infringement Contentions includes several arguments alleging that many of the WirelessHART features that SIPCO rely on are allegedly "optional" and "SIPCO has not shown that the specific features that it [] relies on are ***required*** by the WirelessHART standard." Emerson's March 20, 2018 Response to Infringement Contentions, at 27, 45, 46, 110, 111, 128, 145, 151, 166, and 173 (emphasis in original); *see also id*. at 54, 55, 65, 85, 91. Further, as already explained above, the new capabilities and additional

features of Emerson's new product provide for additional evidence of infringement on SIPCO's original contentions but also in additional ways

> **(b)    Infringement Contention Amendments Are Necessary In Light of Emerson's Arguments and Orders from the PTAB and Federal Circuit Proceedings**

The arguments and orders from the IPR proceedings involving the asserted patents and their appeals to the Federal Circuit, including arguments and orders on claim construction, had numerous effects on SIPCO's infringement positions, and SIPCO must now amend its infringement contentions to reflect those decisions. A timely showing of good cause is found when there exists "a claim construction by the court different from that proposed by the party seeking amendment." *Corel Software, LLC v. Microsoft Corp.*, No. 2:15-CV-00528-JNP-PMW, 2018 U.S. Dist. LEXIS 189832, at *6-7 (D. Utah Nov. 5, 2018); *see also Phigenix, Inc.*, 783 F. App'x 1014 at 1017 (A timely showing of good cause can be made after "an adverse claim construction").

For example, as Emerson recognizes, the claims of the Patents-In-Suit recite a "scalable address." The PTAB and the Federal Circuit have construed the term "scalable address" contrary to SIPCO's proposed construction. *See SIPCO, LLC v. Emerson Elec. Co.*, 794 Fed. Appx. 946, 948-50 (Fed. Cir. 2019); *Emerson Elec. Co. v. SIPCO, LLC*, 2022 WL 1548866, at *1-2 (Fed. Cir. May 17, 2022). Emerson

asserts that the constructions made by the Federal Circuit and the PTAB were "foreseeable" because it is "in line with" the Parties' Joint Claim Construction Statement made in 2017. However, this is purely conclusory attorney argument, and yet another example why briefing of this issue should never have happened in this joint statement. On remand after a second Federal Circuit appeal, the PTAB issued six pages of analysis on this term alone (Dkt. 300, Ex. 17) (Final Written Decision on Remand, IPR2016-01895, Paper 42 at 6-11 (PTAB February 17, 2021). The sheer amount of dispute and rulings that took place with regard to claim construction on this term alone is far from foreseeable. The amendments to the infringement contentions that are necessary include at least the additional evidence to SIPCO's existing infringement theories that show how the Emerson products meet the Federal Circuit's requirement that a "scalable address" requires "that the portion of the receiver address that identifies the specific intended recipient or recipients of the message be scalable and include the address of at least one remote device." *SIPCO, LLC v. Emerson Elec. Co.*, 794 F. App'x 946, 950 (Fed. Cir. 2019). Emerson cites to cases that are not instructive, as the claim construction rulings here are *adverse* to SIPCO—the party seeking to amend. *See Phigenix, Inc. v. Genentech, Inc.*, 783 F. App'x 1014, 1017 (Fed. Cir. 2019) (Good cause can be made after "an adverse claim construction").

As another example, although not binding on this Court, the ITC construed the term "wide area network" adverse to SIPCO's proposed construction. *See Certain Wireless Mesh Networking Products and Related Components Thereof*, Inv. No. 337-TA-1131, Comm'n Op. (Apr. 23, 2020); *see* Dkt. No. 299-4. In this case, Emerson appears to confuse the Court, as it is not the incorrect finding of indefiniteness that creates good cause for SIPCO to amend its contentions, but instead the many arguments and positions taken by Emerson of what the term "wide area network" means throughout those challenges (*i.e.* the scope of the term). SIPCO stresses that these terms are only examples, and SIPCO can provide the Court with additional examples on arguments and adverse rulings on the many disputed claim construction terms through proper briefing.[10]

Ironically, Emerson itself filed supplemental invalidity contentions while the case was stayed and **without leave of Court**, on March 20, 2018.[11]  *See* Dkt. 266.

---

[10] Emerson charged SIPCO with not identifying enough details on how the various claim construction arguments and rulings affect its contentions just hours prior to the Court's deadline to file this joint statement.

[11] The Court stayed the present proceedings on March 6, 2017, until the PTAB issued institution decisions on all of the pending IPR and CBM petitions (Dkt. No. 218), and then extended the stay until the PTAB's issuance of a final written decision on the last pending IPR, except for the parties to conduct only limited discovery through March 20, 2028, at which time the Court fully stayed the proceeding and directed the Clerk to administratively close the case on March 21, 2018.  Dkt. 218, 258.

In its filing, Emerson states that its "Supplemental Invalidity Contentions are further made in view of the Patent Trial and Appeal Board's ("PTAB" or "Board") issuance of Final Written Decisions in [the various] *Inter Partes* and Covered Business Method Review proceedings." *Id*. at 3 (listing IPR2016-01602, CBM2016-00095, IPR2016-00984, IPR2015-01901, and IPR2017-00001 as the basis for its supplemental invalidity contentions). Emerson also based its need for amending its invalidity contentions "as a result of the arguments raised by the SIPCO Entities before the PTAB." *Id*. at 7 (listing IPR2017-00216, IPR2016-01895, IPR2017-00359, IPR2017-00213, IPR2017-00007, IPR2017-00008, IPR2017-00252). It is difficult to understand why Emerson asserts a right to amend its invalidity contentions without leave of Court due to the decisions made by the PTAB in these proceedings, while at the same time seeks to prevent SIPCO from properly seeking leave of Court of supplement its infringement contentions.

Finally, it is much more efficient for SIPCO to amend its infringement contentions now so that Emerson is fully aware of SIPCO's contentions against its new products, and in view of IPR proceedings, before it commits to claim construction positions.

### 2.    New Deadlines for Claim Elections

Following supplemental infringement contentions, SIPCO's proposed schedule provides for an updated preliminary election of claims. As explained in greater detail in Section II, an updated preliminary election of claims is necessary given the passage of time and the events of the IPR proceedings.

As shown in Exhibit A, SIPCO's proposed schedule otherwise agrees with the approach of setting the remaining deadlines relative to the Court's resolution of preliminary matters.

## II.    THE PATENTS AND PATENT CLAIMS REMAINING AT-ISSUE AFTER THE DECISIONS BY THE ITC AND PTAB

### A.    Procedural History

On January 30, 2015, Emerson filed a Complaint for Declaratory Judgment of Patent Non-Infringement and Invalidity for U.S. Patent Nos. 7,103,511 ("the '511 patent") and 6,044,062 ("the '062 patent"). Dkt. No. 1. On October 16, 2015, and December 30, 2015, respectively, SIPCO filed a complaint and an amended complaint for Patent Infringement against Emerson in the Eastern District of Texas ("the E.D. Tex. Action") asserting U.S. Patent Nos. 7,697,492 ("the '492 patent), 6,914,893 ("the '893 patent"), 6,437,692 ("the '692 patent"), 6,249,516 ("the '516 patent"), 7,468,661 ("the '661 patent"), 8,000,314 ("the '314 patent"), 8,233,471 ("the '471 patent"), 8,625,496 ("the '496 patent"), 8,754,780 ("the '780 patent"), 8,908,842 ("the '842 patent"), and 8,013,732 ("the '732 patent"). *SIPCO v. Emerson*

*Elec. Co.*, Ca. No. 6:15-cv-00907, Dkt. Nos. 1, 19 (E.D. Tex. Oct. 16, 2015).  On July 1, 2016, the E.D. Tex. Action was ordered transferred to the Northern District of Georgia.  Dkt. No. 109.  On August 18, 2016, the transferred E.D. Tex. Action, transferred into the Northern District of Georgia as Ca. No. 1:16-CV-2690-AT, was consolidated into this Northern District of Georgia Ca. No. 1:15-CV-0319-AT.  Dkt. No. 121.  The "Original Patents-in-Suit" in the consolidated Northern District of Georgia action are as follows: the '511 patent, the '062 patent, the '492 patent, the '692 patent, the '893 patent, the '516 patent, the '661 patent, the '314 patent, the '471 patent, the '496 patent, the '780 patent, the '842 patent, and the '732 patent.

On August 3, 2018, SIPCO, LLC filed a complaint with the U.S. International Trade Commission ("ITC") against Emerson Electric Co., Emerson Process Management LLLP, Emerson Process Management Asia Pacific Private Limited, Emerson Process Management Manufacturing (M) Sdn. Bhd., Fisher-Rosemount Systems, Inc., Rosemount Inc., Analog Devices, Inc., Linear Technology LLC, Dust Networks, Inc., Tadiran Batteries Inc., and Tadiran Batteries Ltd., asserting a violation of 19 U.S.C. § 1337 based upon alleged infringement of the '893 patent and the '511 patent, as well as U.S. Patent Nos. 8,964,708 ("the '708 patent") and 9,439,126 ("the '126 patent").  *Certain Wireless Mesh Networking Products and Related Components Thereof*, Inv. No. 337-TA-1131, Compl. (Aug. 3, 2018) (EDIS

Doc. ID No. 652035).  The ITC Investigation was instituted on September 5, 2018 (Dkt. No. 273, Ex. J).

On August 3, 2018, SIPCO, LLC also filed a complaint for infringement against Emerson Process Management LLLP, Emerson Process Management Asia Pacific Private Limited, Emerson Process Management Manufacturing (M) Sdn. Bhd., and Fisher-Rosemount Systems, Inc. in the District of Delaware asserting the '893 patent, the '511 patent, the '708 patent, and the '126 patent in Case No. 1:18-cv-1170 ("Del. Case") (Dkt. No. 268, Ex. F).  On the same day, SIPCO, LLC also filed a complaint for infringement against Emerson Electric Co. and Rosemount Inc. in the Southern District of Texas asserting the '893 patent, the '511 patent, the '708 patent, and the '126 patent in Case No. 4:18-cv-02689 ("SDTX Case") (Dkt. No. 268, Ex. G).  SIPCO, LLC attached claim charts of these "Del. and SDTX Patents-In-Suit" to the complaints in the Del. Case and the SDTX Case (Dkt. No. 1.).[12]  On October 4, 2018, "Emerson acknowledge[d] service of SIPCO's allegations of infringement of U.S. Patent Nos. 6,914,893, 7,103,511, 8,964,708, and 9,439,126, on August 3, 2018," (*i.e.*, the "Del. and SDTX Patents-In-Suit") and "agree[d] that potential damages will be calculated in accordance with 35 U.S.C. §§ 286, 287 as if

---

[12] Emerson Position Only (not joined by SIPCO): The Patent-in-Suit in the Del. Case and SDTX Case that have not been asserted in this case are as follows: the '708 and '126 patents.

the suit was filed on August 3, 2018," and "agree[d] to refrain from filing another action for declaratory judgment on any of the patents in the Del. and SDTX Cases at any time before SIPCO refiles a lawsuit for infringement of those patents."  Dkt. No. 274 at 5.  SIPCO, LLC agreed to dismiss both the Del. Case and the SDTX Case without prejudice, *see* Dkt. 274, and filed voluntary dismissals of both cases on October 5, 2018.

Emerson filed petitions for *inter partes* review (IPR) and a petition for covered business method review before the PTAB, and also filed requests for *ex parte* reexamination with the USPTO.  Emerson eventually brought PTAB proceedings against all possible Original Patents-in-Suit, which excluded the '511 and the '062 patents.  On March 6, 2017, this Court stayed the present proceedings until the PTAB issued institution decisions on all of the pending IPR and CBM petitions (Dkt. No. 218), and then extended the stay until the PTAB's issuance of a final written decision on the last pending IPR, except for the parties to conduct limited discovery.[13]  Dkt. No. 258.

On October 4, 2018, the Parties filed a Joint Stipulation and Motion to Continue Stay in which the Parties agreed that this case would be stayed through the

---

[13] Emerson Position Only (not joined by SIPCO): The discovery period ended on March 20, 2018, and the Court stayed the proceeding and directed the Clerk to administratively close the case on March 21, 2018.

ITC Investigation, including any appeals thereof, and "until the last of the final written decisions issues from the PTAB on all other patents, at which point the parties will notify the Court and Special Master regarding the status of the proceedings." Dkt. 274.

On October 5, 2018, the Court extended the stay in this case until the determination of the ITC became final, including any appeals, and until the last of the final written decisions issued from the PTAB on all other patents. (Dkt. No. 275).

On April 23, 2020, the ITC action concluded.[14],[15] *Certain Wireless Mesh Networking Products and Related Components Thereof*, Inv. No. 337-TA-1131, Comm'n Op. (Apr. 23, 2020); *see* Dkt. No. 299-4.[16]

---

[14] <u>Emerson Position Only (not joined by SIPCO)</u>: The ITC's findings that Emerson had not violated Section 337 are persuasive authority for the District Court.

[15] <u>SIPCO Position Only (not joined by Emerson)</u>: On April 23, 2020, the ITC made various determinations in its Investigation, including denying Emerson's Motion for Summary Determination of Patent Ineligibility Under 35 U.S.C. § 101. However, these determinations are not enforceable or binding on this Court.

[16] <u>Emerson Position Only (not joined by SIPCO)</u>: On June 18, 2020, SIPCO, LLC filed a notice of appeal at the U.S. Court of Appeals for the Federal Circuit. *SIPCO, LLC v. ITC*, No. 20-1904 (Fed. Cir. 2020). On October 13, 2020, SIPCO, LLC moved to voluntarily dismiss the appeal pursuant to Federal Rule of Appellate Procedure 42(b), and on October 14, 2020, the Federal Circuit dismissed the appeal.

On December 15, 2022, the PTAB issued its final written decision against the last of the patents subject to the extended stay.

### B.    The Patents and Claims No Longer At Issue

The Parties agree that, because there are no remaining asserted claims for the '062 patent, '516 patent, '314 patent, '471 patent, '780 patent, and '842 patent, that these patents are no longer at-issue in the present case and should be dismissed from the case.    However, the Parties disagree as to whether these patents should be dismissed with or without prejudice.  *See* § V.B.

### C.    The Parties Disagree Regarding the Patents and Claims Remaining At-Issue

The Parties dispute which of the remaining asserted claims are still at-issue in the case and provide their differing positions below.

#### 1.    Emerson's Position

With respect to the patents and claims still at issue in this case, despite SIPCO previously making admittedly binding claim elections on December 9, 2016, SIPCO now seeks to jettison its prior claim election and elect an entirely new set of claims. As explained below, SIPCO's attempt to redo its claim elections is contrary to (a) the rationale for this Court's stay, (b) the rules governing claim elections, and (c) the Parties' prior understandings.  Indeed, on August 31, 2018, SIPCO expressly stated that only "5 of the 13 asserted patents and 19 of the 30 asserted claims are free and

clear of PTAB and Federal Circuit review."  Dkt. No. 270 at 5; *see also* Dkt. No.

212 at 2 ("On December 9, 2016 . . . SIPCO reduced the number of asserted claims

from 62 to 30 (Doc. 201 at 30). ***Of the 30 claims asserted against Emerson, 10 are***

***not subject to an IPR or CBM challenge***." (emphasis added)).

Despite SIPCO's repeated acknowledgement and embrace of its claim

elections, it now argues that it should be allowed to re-elect a new set of 30 claims.[17]

SIPCO should be prohibited from doing so because it cannot demonstrate the

required good cause under Federal Rule of Civil Procedure 16, and the Northern

District of Georgia's Local Patent Rules prohibit this type of gamesmanship.

### (a)    The Procedural History Confirms that SIPCO's Claim Elections Are Binding

#### (i)    SIPCO Knew that its Claim Elections Would Be Binding

On May 20, 2016, Emerson filed an opposed Motion to Limit the Number of

Asserted Claims and Prior Art References.  Dkt. No. 93.  On August 19, 2016, the

Court held a Hearing on the Motion, and SIPCO acknowledged that a forthcoming

claim election would narrow the case.  Dkt. No. 140 at 22:23-23:1 (counsel for

SIPCO discussing "funnel[ing] down the number of claims" through claim election),

---

[17] As discussed in Section V.A, SIPCO even attempts to improperly amend its
pleadings to assert the '126 patent against Emerson.  For the reasons discussed
below, this should be rejected as well.

26:6-9 (counsel for SIPCO discussing "narrow[ing] down our claims" through claim election).  Additionally, the Court clarified its expectation that claim election will bind the parties to help narrow the case.  Dkt. No. 140 at 35:11-18 (stating that claim construction briefing will "have to be narrowed down"), 36:14-17 (stating "you can at least significantly trim down what are the claims . . . that are going to be dealt with").  The Court ultimately denied Emerson's motion as moot, but it instructed a soon-to-be-appointed Special Master to "work with the parties and the Court [to] fashion[] a scheduling order that acceptably limits claims and prior art references." Dkt. No. 145.

On October 3, 2016, the Court appointed Mr. Gale R. Peterson to serve as Special Master in this action.  Dkt. No. 158.  The Court subsequently entered an Order on October 6, 2016, providing, *inter alia*, that "the Special Master is DIRECTED to submit a final schedule for the Court to adopt."  Dkt. No. 166.  On October 25, 2016, Special Master Peterson submitted an agreed upon proposed Amended Scheduling Order, Dkt. Nos. 172 and 172-1, and the Court adopted the Amended Scheduling Order the following day.  Dkt. No. 173.

Critically, the Amended Scheduling Order required SIPCO to "serve a Preliminary Election of Asserted Claims, which shall assert no more than ten (10) claims from each patent and not more than a total of 30 claims" by December 9,

2016.  Dkt. No. 173, Ex. A at 2.  SIPCO carefully selected and served its list of 30 claims on December 9, 2016, in accordance with the Amended Scheduling Order. Dkt. No. 268-3.  SIPCO's December 9, 2016 election included the following elected claims, and following findings of unpatentability by the United States Patent and Trademark Office ("USPTO")/Patent Trial and Appeal Board ("PTAB") and SIPCO's disclaimers, the following elected claims remain at issue in this litigation:

| Patent No. | SIPCO's Elected Claims ("Elected Claims") | Remaining Elected Claims ("Remaining Elected Claims") |
|---|---|---|
| 6,044,062 | 2, 3, 4, 10, 11, 12 | None |
| **6,437,692** | 24, 26, 30, 55, 57 | 24, 26, 30 |
| **6,914,893** | 1, 17, 18, 37 | 1, 17, 18, 37 |
| **7,103,511** | 1, 3, 4, 27 | 1, 3, 4, 27 |
| **7,468,661** | 9, 11 | 9, 11 |
| **7,697,492** | 1, 2, 10, 14, 19 | 19 |
| 8,013,732 | 1 | None |
| 8,233,471 | 17 | None |
| 8,625,496 | 39 | None |
| 8,908,842 | 7 | None |
| **Total** | **30** | **14** |

As explained above, on March 6, 2017, the Court stayed the proceedings until the PTAB issued institution decisions, Dkt. No. 218, and extended the stay until after final written decisions, except for limited discovery through March 20, 2018.  Dkt. No. 258.

The Amended Scheduling Order does not allow SIPCO to amend its claim elections at will. Instead, the intent behind the Scheduling Order was to bind SIPCO to its claim elections.[18]

### (ii) SIPCO Expressly Embraced Its Claim Elections

SIPCO not only knew that its claim elections were binding, but it expressly embraced those prior claim elections. First, on November 14, 2016, Emerson filed a Motion to Stay Pending *Inter Partes* Review. Dkt. No. 175. SIPCO filed an opposition on December 15, 2016, arguing that "SIPCO has preliminarily elected to proceed with six claims from the '062 patent and four claims from the '511 patent— fully one third of all elected claims. . . . Because a stay would 'not eliminate the need to address infringement and validity issues' with respect to these claims, Emerson's motion should be denied." Dkt. No. 190 at 16-17 (citations omitted).[19] SIPCO argued against a stay throughout the rest of the opposition in view of these elected claims. *See e.g.*, *id.* at 23 ("Emerson has not and cannot file IPRs against one third of the asserted claims. An additional 53% of the asserted claims have already

---

[18] Indeed, the Amended Scheduling Order provides that "[a]bsent agreement, post-entry motions to modify this Order's numerical limits on asserted claims . . . must demonstrate good cause warranting the modification." Dkt. No. 173, Ex. A at 7.

[19] While SIPCO "reserved the right to elect additional or substitute claims pursuant to LPR 4.5," Dkt. No. 190 at 17 n.10, LPR 4.5 does not apply to these claim elections.

survived IPR challenges.  IPR review has not been instituted with respect to any of the asserted claims.").  Special Master Peterson expressly considered SIPCO's arguments and embrace of its elections in issuing a Report and Recommendation on Emerson's Motion to Stay Pending *Inter Partes* Review.  Dkt. No. 201 at 25-28.

Emerson filed an objection to the Report and Recommendation, Dkt. No. 210, and in response, SIPCO once again embraced its claim election:

> On December 9, 2016 . . . **SIPCO reduced the number of asserted claims from 62 to 30** (Doc. 201 at 30). Of the 30 claims asserted against Emerson, 10 are not subject to an IPR or CBM challenge.  Stated differently, one-third of the asserted claims that SIPCO elected under the (now-defunct) Amended Scheduling Order would proceed through the remaining phases of this litigation regardless of the outcome of the IPR and CBM proceedings with respect to the 20 other asserted claims. This more than justifies the recommendation in the Report that fact discovery and discovery disputes already initiated should remain open.

Dkt. No. 212 at 2 (citations omitted, emphasis added).  On March 6, 2017, the Court adopted Special Master Peterson's Report and Recommendation—which found that a stay would simplify the issues in this case—in view of SIPCO's arguments.  Dkt. No. 218.

Second, on August 17, 2018, Emerson moved the Court to administratively reopen the case, lift the stay, and consider its motion to stay all cases pending (1) all PTAB proceedings and any appeals and (2) final determination and any appeal of SIPCO's ITC action.  Dkt. No. 268.  SIPCO opposed on August 31, 2018, and

expressly stated that it understood only the elected claims to remain at issue.

Specifically, SIPCO stated that only "5 of the 13 asserted patents and 19 of the 30

[elected] asserted claims are free and clear of PTAB and Federal Circuit review."[20]

Dkt. No. 270 at 5. SIPCO's table attached to its brief further reflects the patents and

claims that it understood to be at issue:

---

[20] As discussed *supra*, SIPCO's position on the number of claims "free and clear of PTAB and Federal Circuit review" was premature, as additional claims were found unpatentable as PTAB decisions were appealed.

| TABLE 1: PATENTS AND CLAIMS FREE AND CLEAR OF IPR AND FEDERAL CIRCUIT APPEAL | | |
|---|---|---|
| **Patent Number** | **PTAB / Appeal Status** | **Asserted Claims Free and Clear of IPR and Federal Circuit Appeal** |
| 6,044,062 (Brownrigg Patent) | Emerson did not petition the PTAB for IPR review. | 2, 3, 4, 10, 11, 12 |
| 7,103,511 (Petite Patent) | Emerson did not petition the PTAB for IPR review. | 1, 3, 4, 27 |
| 6,914,893 (Petite Patent) | Emerson petitioned for IPR review two times. The PTAB denied institution of an IPR. Appeal to the Federal Circuit is not permitted. | 1, 17, 18, 37 |
| 6,437,692 (Petite Patent) | Emerson petitioned for IPR review three times. The first two times, the PTAB denied institution on any ground. The third time, the PTAB instituted partially, but asserted claims 24, 26, and 30 were not part of the instituted claims. | 24, 26, 30 |
| 7,468,661 (Petite Patent) | Emerson petitioned for IPR review. The PTAB denied institution of an IPR with respect to claims 9 and 11. Appeal to the Federal Circuit is not permitted. | 9, 11 |
| **TOTAL PATENTS FREE AND CLEAR: 5 out of 13 asserted patents** | | **TOTAL CLAIMS FREE AND CLEAR: 19 out of 30 asserted claims** |

Dkt. No. 270-1 (Ex. 1) (emphasis added); Dkt. No. 270 ("As shown in Table 1 (Ex. 1), 5 patents and 19 claims stand free and clear of PTAB and Federal Circuit review"). SIPCO's statements are dispositive of the binding nature of its claim elections.

### (iii)    SIPCO Notified Emerson for the First Time in March 2023 that It Wants to Re-Elect Claims

On October 4, 2018, the Parties filed a Joint Stipulation and Motion to Continue Stay. Dkt. 274. The case remained stayed until April 18, 2023, when the Court granted the Parties' Joint Motion to Lift the Stay and Re-open the Case. Dkt. No. 301. Not until March 2023 did SIPCO inform Emerson that it believes it has the ability to re-elect any claims included in its original infringement contentions that have not been found invalid or disclaimed. Indeed, on April 7, 2023, SIPCO stated it believes it has "the ability . . . to assert claims that were properly included in its infringement contentions and that Emerson has been aware of and on notice of for many years and which survived Emerson's numerous challenges at the USPTO," regardless of whether those claims were elected or, in the case of the '126 patent, asserted in other litigations.[21] SIPCO's attempt to re-elect asserted claims and add new patents should be rejected.

### (b)    Over Eight Years into this Litigation, SIPCO Should Not be Given a Do-Over of Its Claim Elections

### (i)    Legal Standard

---

[21] For reasons discussed in further detail below, *see infra* § V.A.1, SIPCO cannot show good cause to amend the complaint to assert the '126 patent.

Rule 16(b)(4) provides that a court's scheduling order "may be modified only for good cause and with the judge's consent." The 11th Circuit has held that "[t]his good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (quoting Fed. R. Civ. P. 16 advisory committee's note; further citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.1992)). A party "lacks the diligence required under Rule 16 when (1) the information giving rise to the need to amend was available to the [party] before the deadline expired; or (2) where a [party] fails to seek the information needed to determine 'whether an amendment is in order.'" *Diversey, Inc. v. Pops Techs., LLC*, Ca. No. 1:18-cv-04210-AT, 2019 WL 11003292, at *2 (N.D. Ga. Nov. 13, 2019) (citing *S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241 n.3 (11th Cir. 2009)); *see also Thermolife Int'l, LLC v. Hi-Tech Pharms, Inc.*, Ca. No. 1:15-cv-00892-ELR, 2021 WL 4185899, at *3 (N.D. Ga. Aug. 3, 2021) (adopting a report and recommendation requiring diligence to amend the due date for invalidity contentions); *Univ. of Va.*, 2019 WL 1993552, at *4 (finding that Rule 16(b) requires a patent owner to show good cause to amend claim elections included in a scheduling order).

Importantly, a district court has inherent authority "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). This includes the authority to reasonably limit the number of patent claims asserted in a patent case. *Stamps.com Inc. v. Endica, Inc.*, 437 F. App'x 897, 902 (Fed. Cir. 2011); *see also Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001) (a district court enjoys "broad discretion" over pre-trial matters such as discovery and scheduling).

### (ii)    SIPCO Cannot Show Good Cause to Amend Its Claim Elections

SIPCO has not and cannot show good cause to amend its claim elections because it failed to diligently amend pursuant to the Amended Scheduling Order.[22] Moreover, asserting new claims after adverse IPR findings is "contrary to Congress's purpose in creating IPR 'as part of a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and

---

[22] Emerson objects to SIPCO's improper disclosure of Rule 408 communications in its Section II.C.2.a.ii. Emerson did not seek to delay, but did communicate with SIPCO to convey Emerson's surprise that SIPCO is continuing to pursue the litigation after losing on all four patents before the ITC and having had significant portions of its portfolio invalidated by the PTAB.

counterproductive litigation costs'" and "might drastically prolong litigation." *Univ.*
*of Va.*, 2019 WL 1993552, at *4 n.5.

Other district courts have held patent owners to their claim elections in similar
situations.  For example, in *Papst Licensing GmbH v. Apple, Inc.*, Papst asserted
claim 14 of the patent-at-issue in its initial infringement contentions, it included that
claim in its preliminary election, and it did not include that claim in its final election.
2020 WL 11613777, at *1 (E.D. Tex. July 1, 2020).[23]  After the final election, the
PTAB issued Final Written Decisions finding all finally-elected claims of the patent-
at-issue invalid.  *Id*.  Papst then moved for leave to amend its infringement
contentions and elections to add claim 14 to its elected claims.  In the Eastern District
of Texas, amendment to claim elections "require a showing of good cause" under
Federal Rule of Civil Procedure 16.  *Id*. at *2.  Good cause "requires the party to
show that, despite the exercise of diligence, it cannot reasonably meet the court-
mandated deadline." *Id*. at *2 (citing *S&W Enters., L.L.C. v. Southtrust Bank of Ala.*,
315 F.3d 533, 535 (5th Cir. 2003)).

---

[23] This Court has expressed "a lot of respect for the approach to narrowing [claims]
that the Eastern District of Texas" takes and apparently modeled the claim election
process off of the practice in the Eastern District of Texas.  Dkt. No. 140 at 35:15-
18.

The *Papst* court found no good cause because the patent owner had "not shown diligence and because the amendment would cause significant prejudice." *Id*. Notably, the court rejected Papst's argument that "it could not have known the outcome of the pending IPRs," finding that "the adverse IPR decision alone is not sufficient to excuse Papst's delay" in amending its claim elections. *Id*. at *2-3. Ultimately, the court found that "[t]o permit Papst to amend its claim election under these circumstances would inappropriately allow Papst a 'do over' of claim election." *Id*. at *3.[24]

Other district courts have reached similar conclusions. As a further example, a court in the Northern District of Texas issued an Amended Scheduling Order requiring the patent owner to make a series of claim elections. *CUPP Cybersecurity*, 2021 WL 3733014, at *1. After the patent owner had narrowed its asserted claims pursuant to the Amended Scheduling Order, the Court granted the parties' request to stay the case pending the resolution of the accused infringer's IPR petitions. *Id*. The PTAB found that 14 of the 20 asserted claims were invalid, and the patent owner moved for leave to drop the 14 invalidated claims and "swap" in a new set of non-

---

[24] SIPCO attempts unsuccessfully to distinguish *Papst*. First, the procedural posture of the case was irrelevant to its discussion of good cause (the posture factored only into finding that the defendant was prejudiced, a factor not relevant in this district). Second, the unreasonable delay in *Papst* was an alternative basis for finding that Papst failed to diligently amend.

elected claims—precisely what SIPCO is seeking to do here.  *Id*. at *1-2.  Similar to SIPCO's arguments here, the patent owner in *CUPP* argued that the accused infringer was already on notice of the non-elected claims because they had been previously asserted in the litigation, and it further argued that the outcome of the PTAB proceedings "is a type of litigation development that impedes [patent owner's] ability to move forward in its litigation, giving [the accused infringer] an unfair advantage."  *Id*. at *2.  The court was not persuaded by these arguments, finding that the patent owner was not diligent and stating that "[t]he purpose of limiting [patent owner's] asserted claims and staying the case pending IPR was to effectively and efficiently litigate this case.  [Patent owner] will be able to do so without adding claims it previously elected not to assert."  *Id*.[25]

---

[25] SIPCO unsuccessfully attempts to distinguish *CUPP*.  First, *CUPP* involved claim elections, contrary to SIPCO's contention: "CUPP argues that it was diligent in seeking to amend its infringement contentions, because '[s]hortly after the stay was lifted, CUPP notified Trend Micro that it intended to *'swap' eight of the 20 non-elected claims for the fourteen asserted claims found invalid in the IPR proceedings*."  *CUPP*, 2021 WL 3733014, at *2 (emphasis added).  Second, SIPCO's criticism that *CUPP* applied the N.D. Texas Local Patent Rules instead of the N.D. Georgia Local Patent Rules is inapposite given that SIPCO does not cite a single N.D. Georgia case in support of its position.  Third, claim construction proceedings were *not* completed as the *CUPP* court never issued a *Markman* Order, and in fact ordered *additional* briefing in view of the IPR proceedings.  Fourth, the *CUPP* court's analysis of undue prejudice is not relevant in N.D. Georgia.

Similarly, a court in the District of Delaware had issued an order requiring the patent owner to make two sets of claim elections. *VLSI Tech. LLC v. Intel Corp.*, Ca. No. 18-0966-CFC, 2020 WL 4437401, at *1 (D. Del. Aug. 3, 2020). Pursuant to the court's order, the patent owner dropped claims to meet the first claim election requirement, but it filed a first motion to reintroduce claims soon thereafter. *Id*. The patent owner later dropped additional claims to meet the second claim election, and once again, filed a second motion to reintroduce claims soon thereafter. *Id*. The court denied both motions to reintroduce claims, finding no good cause because patent owner "has pointed to no changed circumstances since [the court's] claims narrowing order . . . that would justify the reintroduction of the claims in question." *Id*. at *2.[26]

As another example, a court in the Southern District of California also reached the same conclusion. That court had issued an order directing patent owner "to select five claims for assertion against each Defendant." *In re Ameranth Patent Lit.*, Ca. No. 11-cv-01810, 2021 WL 6750642, at *1 (S.D. Cal. Dec. 27, 2021). After that election, the patent owner sought to assert new claims, but the court found no good cause to amend the infringement contentions to assert new claims. *Id*. In particular,

---

[26] SIPCO unsuccessfully attempts to distinguish *VLSI*. As discussed *supra*, the outcomes of IPR proceedings are not changed circumstances that warrant good cause to amend claim elections.

the court found that patent owner "fail[ed] to present any evidence that it informed the Court of its belief" that "its was entitled to seek leave of court to assert any claims that survived th[e] Court's summary judgment order and the appeal." *Id*. at *3. The court further found that patent owner's request was an improper "attempt at a 'do-over.'" *Id*.[27]

The foregoing decisions are instructive. The only new information since SIPCO's December 9, 2016 claim election is the PTAB results. But numerous courts have found that such invalidity findings in other forums are not good cause to amend claim elections or infringement contentions required according to a scheduling order. *See, e.g., Papst*, 2020 WL 11613777 at *3 ("Ultimately, the adverse IPR decision alone is not sufficient to excuse Papst's delay."); *Capella Photonic*, 2019 WL 2359096, at *4-5 (denying motion to amend infringement contentions to assert new claims post-IPR because the patent owner failed to "'act[] with diligence in promptly moving to amend' after a circumstance supporting amendment occur[red]") (quoting *O2 Micro*, 467 F.3d at 1363); *Trusted Knight*, 2021 WL 5205522, at *2 (denying patent owner's motion for leave to amend its disclosure of

---

[27] SIPCO unsuccessfully attempts to distinguish *In re Ameranth*. While SIPCO contends that the case "dealt with a patentee's attempt to amend its infringement contentions, and included an attempt by the patentee to introduce claims that had never been asserted," this is a mischaracterization as *Ameranth* concerned one claim that had never been asserted and one claim that *had* been asserted.

asserted claims because patent owner's "true rationale is evident from the timing of its motion: recognizing the asserted claims . . . were likely to be invalidated, it aimed to keep its case alive by switching gears to assert the only two claims not covered by [defendant's] IPR"); *CUPP Cybersecurity*, 2021 WL 3733014, at *2 (finding that adverse IPR outcomes do not weigh in favor of allowing amendment of infringement contentions); *Uniloc USA, Inc. v. Distinctive Devel. Ltd.*, Ca. No. 6:12-cv-00462-RWS, 2016 WL 11485612, at *2 (E.D. Tex. Dec. 13, 2016) (denying plaintiff's attempt to assert claims after an adverse IPR because plaintiff failed to show diligence or why it could not have amended its contentions earlier). The mere fact that SIPCO lost during IPR is not good cause.[28] This Court initially stayed this case to simplify the issues and allow for efficient, effective resolution of all claims. *See* Dkt. No. 201 at 25-28 (Special Master Report and Recommendation finding that a stay would simplify the issues); Dkt. No. 218 (adopting the Special Master's Report and Recommendation); *see also CUPP Cybersecurity*, 2021 WL 3733014, at *1

---

[28] Additionally, SIPCO failed to timely amend its claim elections after each IPR decision became final. Despite months and years since issuance of final written decisions, SIPCO waited until March 2023 to notify Emerson that it believes all originally asserted claims remain at issue. *See Papst*, 2020 WL 11613777, at *3 ("Even accepting Papst's argument that it could not file the amended infringement contentions until the Final Written Decisions issued, Papst waited until October 2018, six months after the conclusion of the final IPR, to file its motion. Papst does not explain this six-month delay.").

("The purpose of limiting [patent owner's] asserted claims and staying the case pending IPR was to effectively and efficiently litigate this case. [Patent owner] will be able to do so without adding claims it previously elected not to assert."); *see also Click-to-Call Techs. v. Ingenio, Inc.*, 45 F.4th 1363, 1372-73 (Fed. Cir. 2022) (affirming a denial of the patent owner's request for leave to amend its claim elections to assert at trial two other claims from the patent, after the PTO had cancelled other asserted claims in an IPR, the Federal Circuit finding that the district court had not abused its discretion in denying leave where the patentee had not sought leave when the PTO granted a partial institution, waited almost 12 years before seeking leave, and did so in a perfunctory manner after the IPR was finalized that failed to show good cause to allow amendment). SIPCO is merely requesting a do-over because it did not like the outcomes of the PTAB decisions, and its request should be denied.

### (iii) The Local Rules Further Support Emerson's Position

Additionally, the Northern District of Georgia's Local Patent Rules support Emerson's position that SIPCO may not re-elect claims. As explained above, the Local Patent Rules are "an exercise in forced door closing" meant to "discourage gamesmanship and [] to facilitate early resolution of the dispute." *Supra* § I.A (quoting *McKesson*, 495 F. Supp. 2d at 1332). SIPCO's attempt to re-elect claims

is precisely the type of gamesmanship the Local Patent Rules intend to prohibit—SIPCO lost several key issues before the PTAB, and it is now attempting to shift its theories to prolong this case.

Moreover, the Local Patent Rules provide that amendments to infringement contentions must be made consistent with Rule 26 of the Federal Rules of Civil Procedure, which requires parties to supplement responses "in a timely manner." While SIPCO has the opportunity to supplement its discovery responses before the Court stayed and administratively closed the case on March 21, 2018, SIPCO did not amend its discovery responses or inform Emerson in any way that it intended to re-assert claims that it had previously withdrawn, and no significant factual developments since then would warrant a new election. *See, e.g., Thermolife Int'l.*, 2021 WL 4185904, at *1 ("If a party fails to supplement its [infringement contentions] in a timely manner, the party is not allowed to rely on such information to supply evidence, unless the failure was substantially justified or harmless."). In fact, as discussed above, *see supra*, § II.C.1.a.ii, SIPCO instead doubled down on its elected claims. Dkt. No. 270 at 5; *see also* Dkt. No. 190 at 16-17; Dkt. No. 212 at 2.

SIPCO incorrectly argues that "updating of its preliminary election of claims is in fact entirely consistent with the purpose of" the Local Patent Rules. As an

initial matter, the Local Patent Rules are silent as to claim elections, and the claim elections included within the Amended Scheduling Order do not refer to any provision within the Local Patent Rules. *See* Dkt. No. 173 at 2, 4. And SIPCO's attempt to equate amendment of infringement contentions and claim elections is misguided as these are two distinct issues.

### (c)    SIPCO Fails to Show Good Cause

In response, SIPCO fails to address the good cause requirement to amend its claim elections, and instead make several unsubstantiated arguments. First, SIPCO contends that "the Special Master, after hearing the parties' arguments, found as follows: SIPCO would be permitted to preliminarily elect 30 claims from its asserted patents prior to claim construction, and would be required to narrow that list of elected claims down to 15 prior to trial. (Dkt. Nos. 93, 104, 107, 142, 172, 172-1.)." *Infra*, § II.C.2.a. Contrary to SIPCO's framing of the report and recommendation, SIPCO was required per the Court's instruction to limit the number of claims in the case to make the case more manageable moving forward. SIPCO was never guaranteed the right to proceed into claim construction with 30 claims from its patents by backfilling for later invalidated claims, as it incorrectly argues. *See infra* § II.C.2.

Second, SIPCO states that the claim election process "was not meant to preclude SIPCO from ever asserting additional claims against Emerson, as Emerson now proclaims despite its recognition of this in its Motion to Limit the Number of Asserted Claims and Prior Art References." This mischaracterizes Emerson's position. Emerson's position is that the claim election is binding unless SIPCO can show the requisite need or good cause to amend and/or add new claims to its preliminary elections, as explained above.

Third, while SIPCO claims that "Emerson's demand is based *solely* on case law that is readily distinguishable from this case," this is incorrect. As explained above, the Federal Rules of Civil Procedure, Local Patent Rules, Amended Scheduling Order, case law, and specific facts of this case support Emerson's position.

Fourth, SIPCO incorrectly contends that holding it to its elections "would also violate SIPCO's due process rights because a need exists to replace those claims found to be invalid by the PTAB with claims that have survived Emerson's challenges." The many cases cited above reject that position. Moreover, making out a due process claim requires SIPCO to "demonstrate that the district court's claim selection procedure risked erroneously depriving it of its rights and that the risk outweighed the added costs associated with a substitute procedure." *In re Katz*,

639 F.3d 1303, 1311 (Fed. Cir. 2011) (citing *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976)). SIPCO has failed to do so. The claim election process recognizes that claims will be narrowed through claim construction and discovery. *E.g.*, Dkt. No. 173 at 7 ("SIPCO shall serve a Final Election of Asserted Claims, which shall identify no more than five (5) asserted claims per patent from among the ten (10) previously identified claims and no more than a total of 15 claims."); *see also* Eastern District of Texas Model Order Focusing Patent Claims and Prior Art to Reduce Costs, at 2 ("[T]he patent claimant shall serve a Final Election of Asserted Claims, which shall identify no more than five asserted claims per patent from among the ten previously identified claims and no more than a total of 16 claims."); *id.* at 3 n.3 ("This Order contemplates that the parties and the Court may further narrow the issues during pretrial proceedings in order to present a manageable case at trial."). Indeed, under SIPCO's reading of *Katz*, "district courts could never limit the number of claims asserted by a plaintiff, and this Court's docket would grind to a halt." *VLSI*, 2020 WL 4437401, at *2; *see also Papst*, 2020 WL 11613777, at *2 (finding that the court's requirement that patent owner show good cause to amend its claim election complies with the due process requirement set out in *Katz*). Absent "a showing of need or good cause," *id.*, SIPCO's due process rights are not violated.

Fifth, the handful of isolated cases that SIPCO cites are inapposite and, if anything, are part of only a small minority of cases that permitted this extreme form of relief. In *Boston Scientific Corp.*, the Southern District of Indiana court did not require the claim elections itself; rather, it inherited the claim elections when the case was transferred from the District of Delaware and thus decided to not hold the parties to them. *Boston Sci. Corp. v. Cook Grp. Inc.*, Ca. No. 1:17-cv-03448-JRS-MJD, 2021 WL 3634776, at *1 (S.D. Ind. Aug. 16, 2021). In addition, there was only a single round of claim elections at issue, *id.*, where here, there is a "narrowing" set of elections. *EMED* is also distinguishable because the patentee's sole asserted claim had been invalidated and it would not have had any remaining claims to assert, *EMED Techs. Corp. v. Repro-Med Sys., Inc.*, Ca. No. No. 2:15-CV-01167-JRG-RSP, 2018 WL 6440893, at *1-2 (E.D. Tex. Nov. 16, 2018), but here SIPCO has multiple elected claims remaining. *ZiLOG* is similarly distinguishable in that the sole asserted claim had been invalidated through an *ex parte* reexamination—a proceeding distinct from an *inter partes* review. *ZiLOG, Inc. v. Quicklogic Corp.*, Ca. No. C03-03725 JW, 2006 WL 563057, at *1 (N.D. Cal. Mar. 6, 2006). Additionally, *ZiLOG* did not involve claim elections and the plaintiff requested to amend its preliminary contentions within months of the adverse USPTO decision while the district court case was still stayed, *id.*, which is at odds with SIPCO's

decision to wait until almost five months after the last final written decision in the IPRs. *Corel Software* is also distinguishable because its good cause analysis relied exclusively upon the "related provisions of the [District of Utah] Local Patent Rules to determine what may constitute good cause," and the court did not require diligence. *Corel Software, LLC v. Microsoft Corp.*, Ca. No. 2:15-CV-00528-JNP-PMW, 2018 WL 5792323, at *2 (D. Utah Nov. 5, 2018).

Sixth, Emerson did not expressly address undue prejudice because courts in this district have recognized that prejudice is irrelevant to a motion to amend a scheduling order under Rule 16. *See E.E.O.C. v. Eel Inc.*, 259 F.R.D. 652, 656 (N.D. Ga. 2008) ("[T]he Rule 16 inquiry does not turn on issues of prejudice. The issue is the integrity of the court's scheduling orders and pretrial deadlines, not the risk of harm to opposing parties.") (quoting *Smith v. West Facilities Corp.*, No. Civ. 05–0429WSC, 2006 WL 898134, at *4 (S.D. Ala. Apr. 5, 2006)). Nevertheless, as acknowledged during the subsequent IPR proceedings and appeals, Emerson focused on the remaining asserted claims. For example, in IPR2017-01359 concerning the '692 patent, the Board revisited its original institution decision in light of *SAS Institute Inc. v. Iancu*, 138 S. Ct. 1348 (2018) and instituted as to all originally challenged claims—up to that point the Board's practice had been to institute on only those claims where a reasonable likelihood of unpatentability had

been shown. Emerson in response indicated "it did not wish to brief issues related to claims 1, 3–8, 11–14, 27–29, 31, 42, 43, 46–49, 51–54, and 60–64 because they are not asserted in the related district court litigation. [Emerson] wished to have briefing on claims 24, 25, 26, and 30, which are asserted." Ex. B, *Emerson Elec. Co. v. SIPCO, LLC*, IPR2017-00359, Paper 41, *1-2 (PTAB May 16, 2018). Notably, SIPCO never disputed this characterization of the asserted claims, and Emerson would now clearly be prejudiced if SIPCO may re-elect such claims.

Seventh, SIPCO's argument that "[a]t no point has Emerson litigated this case as though the only claims at issue are the ones identified by SIPCO on December 19, 2016" because "Emerson initiated IPR and other validity challenges against nearly *all* of the asserted claims identified in SIPCO's infringement contentions" is non-sensical. SIPCO elected claims *after* Emerson filed all IPRs against the Asserted Patents. SIPCO could have picked from any of the claims in its Eastern District of Texas elections and infringement contentions for the '511 and '062 patents.[29] SIPCO also contends that because Emerson "cited the IPR proceedings as a basis for supplementing its invalidity contentions … these same rules prohibit

---

[29] Unlike the other Original Patents-in-Suit, the '511 and '062 patents were never asserted in the Eastern District of Texas and were not part of the Eastern District of Texas election.

SIPCO from amending its election of claims based on the outcomes of those same IPR proceedings." Critically, SIPCO misleadingly equates amendment of invalidity contentions to the election of claims for infringement. Moreover, Emerson's timely amendments to its invalidity contentions adhered to Emerson's existing prior art elections. SIPCO should not be able to change its elected claims now just because it lost.

*            *            *

SIPCO is upset with the outcome of the IPRs and now seek a re-do of its elected claims. The Court should prohibit it from doing so. While SIPCO complains that "Emerson provided substantial edits to the draft Joint Statement" several days before the submitting the Joint Statement to the Court, SIPCO fails to provide the proper context. After several weeks of emailing on which claims remain asserted in this case, SIPCO requested on April 12, 2023 that Emerson provide "case law and authority" to support Emerson's position that SIPCO is bound by its claim elections. Emerson responded the following day, relying upon statements from the Court and case law demonstrating that elections are meant to be binding absent good cause. Emerson's response further requested that SIPCO provide factual and legal authority supporting its position that it may amend its claim elections. SIPCO never responded to this email. After the Court ordered the Parties to submit this Joint

Statement by May 15, 2023, the Parties agreed to a schedule by which they would exchange draft positions to include in the Joint Statement. Emerson provided its first draft on the agreed upon exchange date—April 26, 2023. When SIPCO provided its responsive edits, on May 4, it for the first time provided its position on claim election. Significantly, SIPCO's position requested direct relief within this Joint Statement—SIPCO did not state an intent to move the Court to allow it to re-elect claims. Instead, SIPCO baked re-election directly into its proposed schedule and argued that the Court should allow it to re-elect claims. Emerson had no choice but to directly respond to SIPCO's position in full.[30]

### 2.    SIPCO's Position

SIPCO asserted the below set of claims from the Original Patents-in-Suit consolidated in this Court. (Dkt. Nos. 1, 109, 125). SIPCO provided infringement contentions to Plaintiff on each asserted claim listed below. As such, the following Asserted Claims remain at issue in this litigation following the proceedings at the USPTO and PTAB:

---

[30] SIPCO also alleges that SIPCO initiated the proceedings to lift the stay and that Emerson made no attempt to notify the Court. SIPCO is incorrect. First, the parties jointly approached the Court to lift the stay. Dkt. No. 298. Additionally, Emerson was preparing a joint notice to inform the Court regarding the outcome of various PTAB decisions, when SIPCO unilaterally filed its own notice, without consulting Emerson. Dkt. No. 300; *see infra*, § V.F.

| Patent No. | SIPCO's Asserted Claims ("Asserted Claims") | Remaining Asserted Claims ("Remaining Asserted Claims") |
|---|---|---|
| **7,103,511** | 1, 3, 4, 8-11, 27-29, 33-35, 44, 46-47, 56-58 | 1, 3, 4, 8-11, 27-29, 33-35, 44, 46-47, 56-58 |
| 6,044,062 | 2-4, 10-12, 14-16 | None |
| **7,697,492** | 1-4, 6, 8-11, 13-21, 25 | 4, 15, 17, 19-21, 25 |
| **6,914,893** | 1-3, 10, 17-18, 37 | 1-3, 10, 17-18, 37 |
| **6,437,692** | 1, 3-8, 11-14, 24-32, 34, 36-38, 42, 43, 46-49, 51-57, and 59-64 | 1, 3-8, 11-14, 24-31, 36, 42, 43, 46-49, 51-54, 58, and 60-64 |
| 6,249,516 | 1, 2, 4-5, 10-11, 13-14 | None |
| **7,468,661** | 1, 5, 6, 8-12, 14 | 1, 8-12, 14 |
| 8,000,314 | 1, 4, 10, 12-14 | None |
| 8,233,471 | 2-4, 6-8, 10-12, 14-22, 31-36, 40-41 | None |
| **8,625,496** | 1-5, 7-27, 33-42, 44, 45 | 1-5, 7-20, 25-27, 33-36, 40-42, 44 |
| 8,754,780 | 1-2, 4-8 | None |
| 8,908,842 | 1, 7, 9, 16-17 | None |
| **8,013,732** | 1, 13, 14, 16-19, 31-35 | 17, 34 |

**(a)    Good Cause Supports SIPCO's Ability To Update Its Preliminary Election of Claims At This Stage Of The Proceedings**

Emerson does not dispute that it had a full and fair opportunity to present its Motion to Limit the Number of Asserted Claims and Prior Art References, that the matter was fully-briefed and referred to the Special Master, and that the Special Master, after hearing the parties' arguments, found as follows: SIPCO would be permitted to preliminarily elect 30 claims from its asserted patents prior to claim construction, and would be required to narrow that list of elected claims down to 15 prior to trial. (Dkt. Nos. 93, 104, 107, 142, 172, 172-1.) The Special Master

recognized that 30 claims was a reasonable number that could be efficiently litigated at this stage of the case.  However, while this election was required for efficiency purposes, it was not meant to preclude SIPCO from ever asserting additional claims against Emerson, as Emerson now proclaims despite its recognition of this in its Motion to Limit the Number of Asserted Claims and Prior Art References.  *See* Dkt No. 93 (citing *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1309-13 (Fed. Cir. 2011) (emphasis added) ("District Courts presiding over patent cases have discretion to limit the number of claims asserted by a patent holder, and such claim selection procedures do not violate the patent holder's due process rights *if the District Court keeps open the possibility for assertion of additional claims upon a showing of need*.).  Now that the ITC investigation and proceedings at the USPTO and PTAB have been resolved, a need exists for SIPCO to revise its list of preliminary elected claims to select from the claims originally asserted.

Emerson's demand that SIPCO be bound by its prior preliminary election is, in effect, a demand that SIPCO be limited to just 14 claims going into claim construction—less than half of the 30 that was found to be appropriate by the Special Master at this stage.  Moreover, Emerson's demand is based *solely* on case law that is readily distinguishable from this case:  SIPCO is not attempting to amend its infringement contentions in violation of Local Patent Rules in order to add new

claims to the case that Emerson was not aware of; instead, all of the 30 claims that SIPCO intends to preliminary elect are ones that were identified in SIPCO's infringement contentions and for which Emerson has long been on notice of. Nor is SIPCO seeking to revise its final election of claims on the eve of trial; SIPCO is revising its preliminary election prior to claim construction, as was intended in the original scheduling order and found to be appropriate for this stage of the proceedings. Emerson cites no relevant, applicable case law to support its position.

Emerson's demand would be highly prejudicial to SIPCO for other reasons as well. At no point has Emerson litigated this case as though the only claims at issue are the ones identified by SIPCO on December 19, 2016. Instead, Emerson initiated IPR and other validity challenges against nearly *all* of the asserted claims identified in SIPCO's infringement contentions. Emerson forced SIPCO to spend significant amounts of time and money defending the validity of all of those claims, and SIPCO would be highly prejudiced if it is not allowed to proceed on claims that have survived Emerson's challenges. Emerson's demand that the Court order SIPCO be limited to just 14 claims at this stage would also violate SIPCO's due process rights because a need exists to replace those claims found to be invalid by the PTAB with claims that have survived Emerson's challenges. Such claims are necessarily different in scope and represent aspects of SIPCO's patents that it would otherwise

be precluded from asserting if limited to the previous elected claims. SIPCO is entitled to have these infringement claims against Emerson heard in this litigation. *See In re* Katz, 1303 F.3d at 1310-12. If SIPCO were limited to only the 14 claims that Emerson proposes, SIPCO would have no option but to bring another complaint (in this or in another forum) in order to have its claims heard. Not only would this approach be highly inefficient, it would result in unnecessary costs and delay to SIPCO.

> **(i)      The Outcomes Of The IPR Proceedings Gives Rise To Good Cause For SIPCO To Update Its Preliminary Election Of Claims**

Courts in similarly situated proceedings have found that good cause exists for updating an election of claims when the Patent Office has concluded IPR proceedings deciding the patentability of elected and unelected claims. *Boston Sci. Corp., v. Cook Grp. Inc.* is instructive in that regard. Case No. 17-cv-03448-JRS-MJD, 2021 WL 3634776 (S.D. Ind. Aug. 16, 2021). There, the parties had completed the claim construction process and the patentee had been ordered to reduce the number of asserted claims from fifty to sixteen. *Id.* at *1. Shortly thereafter, the case was stayed pending IPRs challenging fourteen of the sixteen claims asserted by the patentee. *Id.* at *2. The case remained stayed and administratively closed until the IPR proceedings and subsequent appeals were

resolved. *Id.*. As a result of the IPR proceedings, twelve of the sixteen claims were held to be unpatentable. *Id.* Thus, the patentee moved to reassert one of the claims that had been in the initial group of fifty claims, but that was not in the reduced number of sixteen claims. *Id.* As the court stated:

> Plaintiffs are arguing that, because of the evolution of the case since they made their claim selection—namely, the results of the IPR proceedings—they should now be permitted to amend their choice of claims, so long as they stay within the sixteen claim limit.

*Id.* at *3. The court accepted the plaintiffs argument and found that the results of the IPR proceedings gave rise to "good cause" for the patentee to amend, notwithstanding the fact that claim construction had already taken place and fact discovery had close. *Id.* at *8. The court noted, in particular, that the patentee was reasserting a claim that had already been in the case, and had been subject to an IPR challenge by the accused infringer, and it noted that patentee is "not attempting to interject an entirely new claim into the case." *Id.* at *5. The court also rejected the alleged infringer's prejudice argument, finding that because the reasserted claim "was litigated in and survived the IPR proceedings; it is not 'prejudice' for Defendants to have to litigate [the reasserted claim] in this case." *Id.* at *7. The court's reasoning in *Boston Sci. Corp., v. Cook Grp. Inc.* applies with equal force here—if not greater, given the fact that in that case the parties had already completed claim construction and fact discovery, whereas in the present case SIPCO's updates

to its preliminary election would occur *before* claim construction begins anew, and long before the close of fact discovery.

Another instructive case is *EMED Techs. Corp. v. Repro-Med Sys., Inc.*, No. 2:15-CV-01167-JRG-RSP, 2018 WL 6440893, (E.D. Tex. Nov. 16, 2018), *report and recommendation adopted sub nom. EMED Techs. Corp. v. EMED Techs. Corp.*, No. 2:15-CV-01167-JRG-RSP, 2018 WL 6436102 (E.D. Tex. Dec. 7, 2018). In *EMED Techs.*, plaintiff alleged one patent against defendant, asserting only independent claim 1 of the patent in its infringement contentions. *Id.* at *1. Defendant then filed an IPR petition against all the patent's claims, causing the Court to stay the case in light of the IPR proceedings. *Id.* The PTAB invalidated some of the patent's claims, including independent claim 1, and the Federal Circuit affirmed, at which point defendant moved to dismiss plaintiff's complaint arguing that dismissal was warranted in light of the invalidation of independent claim 1. *Id.* In its defense, plaintiff argued that a motion to dismiss was not warrant as it had sought leave to amend its infringement contentions to assert dependent claim 9, which had not been invalidated. *Id.* The Court agreed, finding good cause for plaintiff to amend its infringement contentions to assert a patent claim after the Patent Office confirmed its validity, and identifying four distinct factors of why good cause existed given those circumstances:

(1)     The Court found that good cause was present because plaintiff's explanation for allegedly failing to meet the deadline by three years is reasonable in light of the circumstances—the case was stayed for a majority of that time and was stayed prior to any claim construction hearing.  *Id*. at *2.

(2)     The Court found that good cause was present because without the amendment, plaintiff's case would be dismissed and plaintiff would lose any potential damages from alleged past infringement, an important reason in favor of allowing the amendment.  *Id*.

(3)     The Court found that good cause was present because there was no prejudice to defendant as the case was far along before the Court stayed the matter, and the parties had already submitted claim construction briefing because any work done before the stay, whether in discovery or in claim construction preparation, will not have been in vain in light of the similarities between the patent claims.  *Id*.

(4)     The Court found good cause was present because, even if prejudice were present in the third factor identified, such prejudice would be cured by a continuance of the claim construction hearing and an amended docket control order setting out a supplemental briefing schedule addressing the additional claim.  *Id*.

The finding of the Northern District of California in *ZiLOG, Inc. v. Quicklogic Corp.* is also highly relevant.  2006 WL 563057, at *1-2 (N.D. Cal. Mar. 6, 2006).

In that case, the patentee filed an initial disclosure of asserted claims that alleged infringement of just one claim. *Id*. The alleged infringer then challenged the patent via an *ex parte* reexamination proceeding at the USPTO.[31] *Id*. The alleged infringer requested a stay, which the court granted. *Id*. The USPTO invalidated the sole claim initially asserted by the patentee, but confirmed the patentability of another claim. *Id.* Following the USPTO's decision and the lifting of the stay, the court conducted a case management conference at which time the patentee sought leave to amend. *Id.* The court found that the patentee was sufficiently diligent to meet the "good cause" standard when it filed its motion to amend approximately two months after the case management conference following the stay. *Id.* at *1-2. The court rejected the alleged infringer's argument that the patentee was seeking to amend its claims in "bad faith," finding such evidence of bad faith "insufficient to justify depriving [patentee] of its constitutionally protected right to an adjudication on the merits." *Id.* at *2.

Similar to the cases noted above, and as further discussed below, SIPCO has acted diligently to amend its preliminary election of claims.

---

[31] A request for *ex parte* reexamination is another means by which a third party can challenge the validity of a claim through the U.S. Patent and Trademark Office.

### (ii)    SIPCO Has Acted Diligently And Without Delay

With respect to diligence, SIPCO has raised the need to update its preliminary election of claims at the earliest opportunity following the resolution of the pending IPRs involving the asserted patents.  The Court had stayed and administratively closed the case pending the completion of the ITC and IPR proceedings.  Dkt. No. 275.  The Court only lifted the stay and re-opened the case on April 18, 2023, less than a month ago.  Dkt. No. 301.  Upon lifting the stay, the Court ordered that the parties file a joint statement setting forth their agreements and disputes regarding, *inter alia*, "the patents and patent claims remaining at-issue after the decisions by the ITC and PTAB."  *Id.*  Consistent with the Court's order, SIPCO is raising the need to update its preliminary election of claims.  In other words, less than a month has passed between the Court lifting the stay and SIPCO seeking to update its preliminary election of claims.  In addition, Emerson was aware of SIPCO's position that it needed to update its preliminary election of claims even earlier—more than a month ago in late March and early April when SIPCO first approached Emerson about the need to notify the Court that the IPR proceedings had concluded and that the case needed to move forward.

Emerson argues that SIPCO has not been diligent because certain IPRs concluded years ago.  But Emerson ignores the fact that the case was stayed and

administratively closed when these IPRs concluded, and Emerson does not explain how SIPCO could have updated its preliminary election as a result. Nor does Emerson explain how or why it would've been efficient or made sense for SIPCO to provide a "rolling" update of any preliminary election of claims after each proceeding involving a challenge to its patents, as opposed to waiting until the conclusion of those proceedings and the lifting of the stay. Emerson's argument is contradicted by the findings of other courts confronted with similar situations, who have disregarded the period of the stay in their diligence analysis. *See*, *e.g.*, *Bos. Sci. Corp. v. Cook Grp.*, Case No. 1:17-cv-03448-JRS-MJD, 2021 WL 3634776, at *4 (rejecting accused infringer's argument that patentee delayed over three-and-a-half years and finding it "ignores the fact that the case was stayed for almost all of that time," and that "[t]here is no question that [patentee] acted diligently when they moved to reassert Claim 13 less than three weeks after the case was reopened"); *and ZiLOG, Inc. v. Quicklogic Corp.*, 2006 WL 563057, at *1-2 (N.D. Cal. Mar. 6, 2006) (ignoring period between USPTO decision invalidating claims of patent and Court's lifting of stay in determining whether patentee acted diligently); *Corel Software, LLC v. Microsoft Corp.*, 2018 WL 5792323 (D. Utah Nov. 5, 2018) (finding that a 14-day deadline to move for amendment of final infringement contentions under the

local rule was "tolled" because the PTO decisions giving rise to the need to amend occurred when the litigation was stayed).

Moreover, it must be noted that it was SIPCO, not Emerson, that initiated the proceedings to lift the stay so that SIPCO could update its preliminary election. The Court's Order made it incumbent on *all* parties to notify the Court and the Special Master of the status of the IPR proceedings following their conclusion. Dkt. No. 275 ("The Court's stay [Docs. 218, 258] shall be extended until the last of the final written decisions issues from the PTAB on all other patents, at which point the parties will notify the Court and the Special Master regarding the status of the proceedings"). The Court's order in this regard was not discretionary. Yet, Emerson made no effort to take steps to notify the Court about the completion of the IPR proceedings until SIPCO initiated those discussions. Emerson's initial response was to delay further to see if the parties' could reach a settlement. It took SIPCO reaching out to Emerson's counsel again and following up in order to get Emerson's agreement to notify the Court via the Joint Notice. Dkt. 297. Emerson's argument that SIPCO lacked diligence or delay is not credible given the fact that it was SIPCO that drove the process to notify the Court of the completion of the IPR proceedings and to lift the stay.

### (iii) Amending The Preliminary Election of Claims Will Not Result In Any Undue Prejudice to Emerson

Emerson will not be prejudiced by SIPCO amending its preliminary election of claims—and in fact, Emerson does not argue any such prejudice. The number of claims that the parties will need to address heading into the claim construction process is the same number that the Special Master recommended when this matter came up for dispute—30 claims. Dkt. Nos 172, 172-1. To the extent Emerson might argue that SIPCO's amending its preliminary election of claims would result in additional work in defending against claims that weren't previously in the preliminary election, such arguments would not represent the type of "prejudice" that would factor into a "good cause" analysis here. *See Trans Video Elecs., Ltd. v. Sony Elecs., Inc*., 278 F.R.D. 505, at 510 n.2 (N.D. Cal. Nov. 15, 2011) ("Generally, the issue is not whether the defendant would be required to engage in additional work in response to newly amended claims. The question is what incremental prejudice results from the delay in asserting those claims (*e.g.*, in ability to complete discovery because of approaching trial date).") To the extent having to engage in additional work could be considered prejudicial, then it would be *SIPCO* that would be prejudiced if it were unable to elect 30 claims at this stage of the proceedings. Emerson continued to pursue its IPRs against preliminarily unelected claims, and

filed appeals and requests for *ex parte* reexamination against unelected claims after SIPCO's preliminary election of claims.[32]  It would be unfair and prejudicial to have forced SIPCO to defend the validity of claims—successfully so—but now preclude SIPCO from being able to assert those claims.

Emerson argues that undue prejudice is not relevant in this case because "prejudice is irrelevant to a motion to amend a scheduling order under Rule 16."  But Emerson does not explain why SIPCO updating its preliminary election of claims requires the showing for amending a scheduling order under Rule 16.  The present case was stayed and administratively closed pending the completion of IPR proceedings.  There is no dispute that a new scheduling order is required in order to determine how best to proceed in this case given the remaining claims at issue and in view of the parties disputes.  Nevertheless, as shown above in connection with the *Boston Scientific*, *ZiLOG*, and *EMED* cases, when confronted with similar questions

---

[32] Emerson identifies one IPR proceeding involving the '692 Patent where it made a statement that it did not wish to pursue briefing on non-elected claims and wanted to focus its briefing on claims 24, 25, 26, and 30.  But Emerson conveniently ignores the fact that Emerson's statement came after the PTAB had already determined that Emerson's IPR petition failed to show that these claims were likely to be invalid.  *Emerson Elec. Co. v. SIPCO, LLC*, IPR2017-00359, Paper 7, at 1 and 23 (PTAB June 1, 2017).  In other words, Emerson was seeking a "second bite at the apple" at trying to invalidate claims 24, 25, 26, and 30— although Emerson was unsuccessful and these claims were not shown to be unpatentable.  *Emerson Elec. Co. v. SIPCO, LLC*, IPR2017-00359, Paper 58, at 51 (PTAB Nov. 28, 2018).

regarding updating elections of claims, courts have consistently applied a "good cause" analysis that considers prejudice.

SIPCO has been diligent and is raising the issue of amending its preliminary election of claims at the first opportunity following the stay. There is no prejudice to Emerson in amending the preliminary election of claims up to the 30 claims that the Special Master previously found reasonable at this stage in the proceedings. For these reasons, SIPCO meets the "good cause" requirement to amend its preliminary election of claims.

   **(b) Emerson's Arguments Against Allowing SIPCO To Update Its Preliminary Election Of Claims Are Not Persuasive**

      **(i) Emerson's Case Law Is Readily Distinguishable From The Present Case And Does Not Justify Emerson's Opposition To An Updated Preliminary Election Of Claims**

The cases that Emerson cites in support of its position are readily distinguishable, and do not justify Emerson's request to limit the claims.

Emerson argues that *Papst Licensing GmbH v. Apple, Inc.*, 2020 WL 11613777 (E.D. Tex. July 1, 2020), is an example of a district court holding patent owners to their claim elections in a "similar situation." But the facts of *Papst* are anything but similar to the present case. First, the procedural posture of *Papst* is clearly distinct from the present case. In *Papst,* the court found that the alleged

infringer would be prejudiced because the patentee in *Papst* sought to amend its elected claims *after* it had already made its *final* election of claims, and *after* the court had issued its claim construction order, *after* amended contentions had been served, *after* fact discovery had closed, and *after* expert discovery had closed. *Papst* at \*1, \*3. The present case involves SIPCO's preliminary election of claims, and no claim construction order has been entered, amended contentions have not yet been served, and fact discovery and expert discovery are still many months away. Second, the court in *Papst* found that the patentee had unreasonably delayed in seeking to amend its final claim election. *Id.* at \*3. In this case, SIPCO is raising the need to modify the preliminary election of claims at the earliest opportunity possible and less than a month after the Court lifted the stay on April 18, 2023. Dkt. No. 301. In fact, Emerson was aware of the parties' dispute about updating the preliminary election of claims even before the stay was lifted. Thus, *Papst* does not present a "similar situation" and does not support Emerson's opposition to SICPO updating its preliminary election of claims.

Emerson's reliance on *CUPP Cybersecurity LLC v. Trend Micro, Inc.*, CA. No. 3:18-cv-01251-M, 2021 WL 3733014 (N.D. Tex. Jan. 12, 2021), is also misplaced. In *CUPP*, the patentee sought leave to amend its *infringement contentions*—not its preliminary election of claims—and the court's determination

in that case was governed by the local patent rules specific to the Northern District of Texas. *CUPP* at *1 (citing Northern District of Texas "Local Patent Rule 3-7" as legal standard guiding the court's analysis, including the local patent rule's guidelines regarding "good cause" factors and required statements). The "good cause" analysis made in that case is not the one before the Court here. *CUPP* is also distinguishable because the parties had already completed claim construction proceedings. *Id.* at *3 ("Before the case was stayed, the parties submitted claim construction briefing and the Court held a Markman hearing."). Again, SIPCO will be updating its preliminary election of claims *before* the claim construction process begins, not after it has already completed. Lastly, *CUPP* is distinguishable because the court found unfair prejudice based in part on the alleged infringer's inability to challenge certain of the newly asserted claims in IPR proceedings. *Id.* Whereas in this case, Emerson challenged *all* claims asserted by SIPCO—both those that were preliminary elected, and those that were not—and cannot claim to have been prejudiced. Thus, *CUPP* also does not present a "similar situation" and does not support Emerson's opposition to SIPCO updating its preliminary election of claims.

The *VLSI Tech. LLC v. Intel Corp* case cited by Emerson is also readily distinguishable. Ca. No. 18-0966-CFC, 2020 WL 4437401, at *1 (D. Del. Aug. 3, 2020). As Emerson admits, in that case the court based its finding of no good cause

entirely on the fact that there was "no changed circumstances" that would justify the reintroduction of the claims in question. *Id.* at *1. In this case, there are clearly changed circumstances—the IPR proceedings and their outcomes. As noted above, other courts have recognized that the outcome of IPR proceedings presents a change in circumstances that would provide "good cause" for changing an election of claims. In fact, the court in *VLSI Tech.* suggested that an adverse IPR proceeding might justify reintroduction claims when it listed "an adverse claim construction ruling" as one example of "changed circumstance". *Id.* at *2. Thus, *VLSI Tech.* does not support Emerson's opposition to SIPCO updating its preliminary election of claims—if anything it supports SIPCO's position that the outcomes of IPR proceedings provide a "changed circumstance" that would justify reintroducing claims that were not previously preliminarily elected.

The *In re Ameranth Patent Lit.* case cited by Emerson also addressed clearly distinguishable facts. Ca. No. 11-cv-01810, 2021 WL 6750642, at *1 (S.D. Cal. Dec. 27, 2021). First, the procedural posture of the *In re Ameranth* case was much later than the present case—namely, after the district court had already made a summary judgment ruling against the patent at issue, and after that ruling had been affirmed on appeal by the Federal Circuit. *Id.* at *1, *3, n.3. Second, *In re Ameranth* dealt with a patentee's attempt to amend its infringement contentions, and included

an attempt by the patentee to introduce claims that had never been asserted. *Id.* at *2 ("Ameranth also fails to meet the good cause standard for amending its infringement contentions."); *id.* at *3 ("As Defendants point out, Ameranth never asserted claim 2 against any Defendant, and did not assert claim 12 against many Defendants."). Unlike the patentee in *In re Ameranth*, SIPCO is not seeking to update its infringement contentions to introduce any claims that have not already been asserted against Emerson. Thus, *Ameranth* also does not support Emerson's opposition to SIPCO updating its preliminary election of claims.

Emerson also argues that "numerous courts have found that such invalidity findings in other forums are not good cause to amend claim elections or infringement contentions," and cites several cases in passing. But like the cases distinguished above, none of the other cases cited by Emerson is comparable to the present facts. The *Capella Photonics, Inc. v. Cisco Sys. Inc.* case involved a patentee's motion for leave to amend infringement contentions to assert claims that were never asserted in the litigation, where the motion was brought well after the deadline for "'the last day for [patentee] to seek leave to amend Disclosure of Asserted Claims and Infringement Contentions'" had long since passed, and where the patentee waited *three years* after receiving the final written decisions in its IPRs before seeking leave to amend its infringement contentions. Ca. No. 14-cv-03348-EMC, 2019 WL

2359096, at *1, *3 (N.D. Cal. June 4, 2019). The *Trusted Knight Corp. v. IBM* case is distinguishable because it involved a patentee's motion to amend its infringement contentions to assert claims that had never before been asserted, and because the court specifically found the accused infringer would be prejudiced because it "relied on [patentee's] original identification of asserted claims in deciding which claims to challenge through IPR" and "[t]he IPR claim bar has passed such that [the accused infringer] may not now challenge [the newly asserted claims]." Ca. No. 19-cv-01206-EMC, 2021 WL 5205522, *1, *4 (N.D. Cal. Nov. 9, 2021). Lastly, the *Uniloc USA, Inc. v. Distinctive Devel. Ltd.* case is distinguishable because the patentee sought to amend its contentions to assert claims that had never before been asserted (the patentee's original infringement contentions only identified a single claim), and the patentee delayed nine months in seeking its amendment. Ca. No. 6:12-cv-00462-RWS, 2016 WL 11485612, at *2 (E.D. Tex. Dec. 13, 2016). In this case, SIPCO is not attempting to assert new claims by amending its infringement contentions, no final deadline to amend has passed, and SIPCO has not delayed—in fact, SIPCO is seeking to update its preliminary election at the earliest opportunity following the issuance of the last of the final written decisions in the IPRs and the lift of the stay in this case.

The *Click-to-Call Techs. v. Ingenio, Inc.* case is also readily distinguishable. 45 F.4th 1363, 1372-73 (Fed. Cir. 2022). Like in several other cases cited by Emerson, in *Ingenio* the patentee sought to assert claims that were not at issue in the IPRs. *Id.* at 1366. The patentee in *Ingenio* also sought to amend its selection of claims much later in the case—in fact, the patentee was seeking to amend its selection of claims for *trial* (not its preliminary election of claims) and sought such amendment after a claim construction order had already been entered at the summary judgment stage. *Id.* at 1372. In addition, the patentee in *Ingenio* attempted to amend its claims in a "perfunctory" manner in a few sentences in its response to a summary judgment motion. *Id.* Unlike in *Ingenio*, SIPCO would only be asserting claims that were subject to an IPR challenge, is doing so in the relatively early stages (claim construction), and can provide detailed support to show that there is "good cause" to update its preliminary election.

In short, *none* of the cases that Emerson cites is comparable to the present case, and *none* of these cases supports its position. The cases cited by Emerson stand in stark contrast to cases like *Boston Sci. Corp.*, and *EMED Techs. Corp.*, and *ZiLOG, Inc. v. Quicklogic Corp* which are more aligned with the facts of the current case, and which establish that good cause is met where, as here, the IPR proceedings

have upheld certain unelected claims and where a party has moved diligently to amend its preliminary election of claims.

### (ii)    The Local Patent Rules Support SIPCO Updating its Preliminary Election Of Claims

Emerson is incorrect in arguing that allowing SIPCO to update its preliminary election of claims at this stage of the proceeding would contradict the Court's Local Patent Rules.  The opposite is true—SIPCO's updating of its preliminary election of claims is in fact entirely consistent with the purpose of those rules, and with Emerson's own behavior in this case concerning supplementation of its contentions. In particular, the Local Patent Rules specifically recognize the ability to supplement and amend contentions.  LPR 4.5(b) (noting "Each party's Disclosures or Response shall be supplemented or amended pursuant to the rules for supplementation and amendment of discovery responses generally provided for under the Federal Rules of Civil Procedure.").  In that regard, Emerson has already taken the position that the outcomes and positions of the party's during the IPR proceedings provide a basis for amending—in fact, Emerson has specifically cited the IPR proceedings as a basis for supplementing its invalidity contentions—without leave of Court—pursuant to LPR 4.5(b).  *See* Emerson's March 20, 2018 Supplemental Invalidity Contentions. Emerson cannot now reasonably claim that these same rules prohibit SIPCO from

amending its election of claims based on the outcomes of those same IPR proceedings.

### (iii)    SIPCO's Prior Statements Do Not Somehow Preclude The Ability To Update Its Preliminary Election of Claims

Emerson argues that certain statements by SIPCO following its preliminary election of claims show that SIPCO "doubled down" on its election, and that these statements somehow preclude SIPCO from updating its preliminary election. First, Emerson cites no case law in support of this argument. Second, none of the statements identified by Emerson states that SIPCO has conceded that it can no longer assert unelected claims at a later point in time.

Third, Emerson does not claim that it was in any way prejudiced by these statements. To the contrary, Emerson continued to litigate and challenge all of SIPCO's asserted claims—including claims that were not in SIPCO's preliminary election. Emerson also made several of its own statements recognizing that SIPCO's preliminary election of claims was not completely binding. For example, in its "Supplemental Invalidity Contentions" that Emerson served without leave of Court on March 20, 2018, Emerson made a specific reservation to modify its contentions "[t]o the extent that the Court or the Local Patent Rules permit the SIPCO Entities to assert additional claims against the Emerson Entities." In other words, and despite

the positions that Emerson is taking now, Emerson's statements and behavior in this case clearly reflect its awareness that SIPCO's preliminary election of claims was not immutable, and was subject to change.

For the above reasons, Emerson's arguments against SIPCO being able to amend its preliminary election of claims at this early stage of the litigation are not persuasive.

### (iv)    SIPCO Has Never Conceded its Preliminary Election of Claims Were Final

Emerson argues that certain statements by SIPCO following its preliminary election of claims show that SIPCO "doubled down" on its election, and that these statements somehow preclude SIPCO from updating its preliminary election. First, Emerson cites no case law in support of this argument. Second, none of the statements identified by Emerson states that SIPCO has conceded that it can no longer assert unelected claims at a later point in time.

## III.    THE PRECISE ISSUES REMAINING TO BE LITIGATED BY THIS COURT

The Parties agree that claim construction discovery and briefing from earlier in the litigation, before the two matters were consolidated, will need to be redone for the claims that remain at issue in this litigation. The Parties have proposed claim construction deadlines in the proposed schedule. *See* Section I.

The Parties further agree that after claim construction, they will be litigating all issues concerning the remaining claims at issue, including infringement/non-infringement, validity/invalidity, each party's defenses, the form and amount of damages, willful infringement and any need for enhanced damages, and attorneys' fees and costs.

## IV.    ANY ISSUES THAT CAN BE RESOLVED ON SUMMARY JUDGMENT BASED ON RECORDS BEFORE THE ITC AND/OR PTAB

### A.    Emerson's Potential Motions for Summary Judgment

Emerson intends to move for Summary Judgment of Non-Infringement of U.S. Patent Nos. 7,697,492 and 6,914,893 ("Motion for Summary Judgment of Non-Infringement for the '492/'893 Patents").  The claims of both patents recite a "scalable address," and the two patents share substantially the same specifications. The CAFC has now weighed in twice on the proper construction of this term. *SIPCO, LLC v. Emerson Elec. Co.*, 794 Fed. Appx. 946, 948-50 (Fed. Cir. 2019) (construing the claim term "scalable address"); *Emerson Elec. Co. v. SIPCO, LLC*, 2022 WL 1548866, at *1-2 (Fed. Cir. May 17, 2022) (same).  And with respect to the '893 patent, the ITC found that none of the accused products practices this limitation, either literally or under the doctrine of equivalents.  *Certain Wireless Mesh Networking Products and Related Components Thereof*, Inv. No. 337-TA-

1131, Comm'n Op. at 14-15 (Apr. 23, 2020); *see* Dkt. No. 299-4. Moreover, SIPCO, the alleged owner of the '492 and '893 patents, is collaterally estopped from taking positions that are inconsistent with the positions it took before the USPTO/PTAB and CAFC.

The resolution of Emerson's Motion for Summary Judgment of Non-Infringement for the '492/'893 Patents will simplify claim construction and narrow the remaining issues in dispute. Therefore, Emerson intends to move for summary judgment on these two patents.

SIPCO is incorrect that claim construction is required to decide the Motion for Summary Judgment of Non-Infringement for the '492/'893 Patents and has not identified any claim term that it believes would need to be construed or further construed in order for Emerson to move for summary judgment of non-infringement based on the non-infringement finding previously made by the International Trade Commission, the CAFC's two prior determinations and constructions, and prior statements by SIPCO during the IPRs. While SIPCO includes a laundry list of terms that it contends affect its infringement theories, its arguments still fail to address why the term "scalable address" must be addressed yet again. Simply put, Emerson's products do not practice the "scalable address" limitation, and so cannot infringe the claims reciting this limitation, regardless of the other limitations in those claims.

Moreover, while SIPCO alleges that the ITC's findings are not particularly relevant here, because Emerson allegedly has many new products, SIPCO's infringement contentions map the '492 and '893 patents to the WirelessHART standard rather than specific functionality in individual products, and SIPCO is not alleging that the WirelessHART standard has changed.  Moreover, these two patents expired in 2020—rendering new products after expiration irrelevant for purposes of infringement.

Following *Markman*, Emerson intends to file additional summary judgment motions directed to the Remaining Elected Claims, based at least in part on the record established before the ITC, USPTO/PTAB, and the CAFC.

For example, Emerson plans to show during claim construction that the claims of the '511 and the '661 patents are indefinite.  During the ITC Investigation, SIPCO dropped its allegations concerning the '511 patent after claim construction, where the Administrative Law Judge held that the claims of the '511 patent were invalid for indefiniteness.  *Certain Wireless Mesh Networking Products and Related Components Thereof*, Inv. No. 337-TA-1131, Order No. 26 (*Markman* Order) at 37-45 (Aug. 13, 2019); *see* Dkt. No. 299-2.  The Remaining Elected Claims of the '661 patent recite the same indefinite term.

### B.     SIPCO's Potential Motions for Summary Judgment

SIPCO intends to file for summary judgment of validity for certain patents and claims that Emerson challenged with IPRs.  Under 35 U.S.C. § 315(e)(2), Emerson is precluded from asserting that a claim is invalid on any ground that Emerson raised or reasonably could have raised during any IPR challenging such claim that resulted in a final written decision.

Summary judgment of non-infringement is not appropriate on any patent at this stage of the proceedings, for at least the reason that claim construction has not taken place.  Any determination of non-infringement will necessarily require the interpretation of claims by this Court.  Emerson's argument that its summary judgment motions will simplify claim construction is an exercise in putting the cart before the horse—requesting that the Court go through the exercise of claim construction twice:  once for the '492 and '893 patents, and again later for the remaining Asserted Patents.  Such an approach would be inefficient.  Emerson has put forth proposed constructions for several other terms of the '492 and '893 patents, including "remote / remotely," "remote device / target remote device / remotely located device / remote [wireless communication] devices," "commands / command code / command message / command indicator," and "scalable message."  *See* Dkt. 200-3 (Preliminary Proposed Constructions and Support).  All of these terms affect

SIPCO's infringement theories, and SIPCO therefore agrees with maintaining the Court's original schedule where Summary Judgment Motions are due after claim construction.

Furthermore, the ITC findings against certain accused products with respect to one of these two patents is not particularly relevant here, especially in light of Emerson's many new products that infringe on these patents even under the allegedly settled "scalable address" construction.

## V.    OTHER PERTINENT ISSUES

### A.    SIPCO's Proposed Amendment of the Complaint to Assert '126 Patent

#### 1.    Emerson's Position

As an initial matter, as Emerson explained above (*see supra*, § II.C.1), SIPCO is bound by its claim elections.  For this reason alone, SIPCO may not now inject additional claims into this case, including claims from the '126 patent.  *See supra*, § II.C.1.

Even setting aside the claim election issue, the Court should deny SIPCO's proposed motion.  The '126 patent is not at issue in this case.  SIPCO has not pled infringement of the '126 patent in this judicial district.  Instead, SIPCO chose to

assert the '126 patent in the Del. Case, SDTX Case, and the ITC.[33] Yet SIPCO now insists—over eight years after this case was initiated and almost seven years after the '126 patent issued—that "amendment of the pleadings to include U.S. Patent No. 9,439,126 would not result in any undue prejudice to Emerson." SIPCO is wrong. If SIPCO moves for leave to amend its complaint to assert the '126 patent, the Court should deny any such motion at least because SIPCO cannot show good cause.[34]

As explained above, *see supra*, § II.C.1, Federal Rule of Civil Procedure 16 provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). This judicial district applies this standard when a party attempts to amend its pleadings to add a new patent after a deadline to amend pleadings has passed. *See, e.g.*, *Diversey*, 2019 WL 11003292, at *1-2. Additionally, only once the party demonstrates good cause under Rule 16 should the Court consider whether the party satisfies the requirements of Federal Rule of Civil Procedure 15(a). *Id*. at 1419. Under Rule 15(a), the Court may deny leave to amend for reasons "such as undue delay, bad faith or dilatory motive on the part of the

---

[33] SIPCO dropped its allegations concerning the '126 patent during the ITC Investigation. *Certain Wireless Mesh Networking Products and Related Components Thereof*, Inv. No. 337-TA-1131, Comm'n Not. (July 12, 2019) (determining not to review an Initial Determination terminating the Investigation with respect to the '126 patent).

[34] Emerson reserves the right to amend and supplement any arguments made herein if SIPCO move for leave to amend its complaint to assert the '126 patent.

movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendments, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Under Federal Rule of Civil Procedure 16, SIPCO was not diligent. This Court entered a Scheduling Order on August 28, 2015 (Dkt. No. 25) that adopted the Parties' agreement that "[t]he deadline for amendments [to the pleadings] filed without leave of court required under this paragraph is September 25, 2015."[35] Dkt. No. 22. SIPCO knew the precise metes and bounds of the '126 patent's claims after receiving a Notice of Allowance on May 20, 2016, and the '126 patent issued on September 6, 2016. Even though this case was partially stayed on March 6, 2017, discovery remained open until March 21, 2018, when the case was administratively closed. Dkt. No. 258. During this time, SIPCO never informed the Court or Emerson that it intended to move for leave to amend its complaint to assert the '126 patent in this case. And after the stay was entered and extended, SIPCO decided to assert the '126 patent in *three* different forums on August 3, 2018: the U.S. District

---

[35] Additionally, the Amended Docket Control Order entered in the Eastern District of Texas set February 29, 2016 as the deadline for SIPCO to "add new patents and/or claims for patents-in-suit. . . . [After this date], it is necessary to obtain leave of Court to add patents or claims." *SIPCO, LLC v. Emerson Elec. Co.*, Ca. No. 6:15-cv-00907, Dkt. No. 73 at 7 (E.D. Tex. Apr. 12, 2016).

Court for the District of Delaware;[36] the U.S. District Court for the Southern District of Texas;[37] and the ITC.[38]  For the first time on April 26, 2023, SIPCO notified Emerson that it intends to move for leave to amend its complaint to assert the '126 patent in this case.  SIPCO provided no explanation for its delay; rather, it simply stated that Emerson has been on notice of the '126 patent and its infringement contentions because SIPCO asserted this patent against Emerson in the three 2018 cases.

SIPCO's proposed motion should be denied because it was not diligent in seeking leave to amend its complaint.  It made the strategic decision to sit on the '126 patent before this case was fully stayed and then assert it against Emerson in August 2018 in other forums.  These post-stay assertions prove that had SIPCO been diligent here, it could have filed a motion for leave to file an amended complaint soon after issuance of the '126 patent.  But it did not, and it should not now be rewarded and allowed to amend its complaint to add infringement claims based on the '126 patent.[39]

---

[36] *SIPCO, LLC v. Emerson Elec. Co.*, Ca. No. 1:18-cv-01170-MN (D. Del.).

[37] *SIPCO, LLC v. Emerson Elec. Co.*, Ca. No. 4:18-cv-02689-VDG (S.D. Tex.).

[38] As discussed above, *see supra*, § II.A, the Del. Case and SDTX Case were dismissed without prejudice, and in the ITC Investigation, SIPCO withdrew its '126 patent infringement allegations.

[39] SIPCO has yet to inform Emerson of the products it intends to accuse of infringing the '126 patent, but even if they are the same products already at issue,

Moreover, SIPCO's argument that it should be allowed to amend its complaint to assert the '126 patent against newly released products actually supports Emerson's position. First, SIPCO's claim charts from the SDTX and Del. Cases again rely upon the WirelessHART specifications generally and not specific features of individual products. SIPCO has not alleged that those specifications have changed with respect to any allegedly new accused products. *E.g.*, SDTX Case, Dkt. 5-16 (citing to 2016 IEC 62591 WirelessHART standard). Despite SIPCO alleging that it provided detailed claim charts, those claim charts covered only the independent claims and not claims 1-14 that SIPCO has now informed Emerson that it seeks to assert.

Second, SIPCO incorrectly argues that Emerson would not suffer undue hardship because "Emerson was provided with detailed claim charts relating to their product's infringement of the '126 patent claims in the complaints filed the in [sic] Delaware and Texas cases." However, SIPCO has not stated that its infringement contentions in this case are identical to its contentions in those other cases. To the contrary, SIPCO has stated throughout this Joint Statement that it intends to accuse new products of infringement, and it has not stated that these contentions would be

---

the '126 patent may have unique issues that require additional discovery and development of theories that will undoubtedly delay this case even further. If SIPCO moves to amend, Emerson reserves the right to explain these issues in full.

based on the same theory of infringement presented in the D. Del. Case, the SDTX Case, or at the ITC.  Even if not amended, the contentions in the D. Del. and SDTX Cases address only three of the fourteen claims that SIPCO now plans to assert. Thus, SIPCO's prior claim charts do not put Emerson on notice of SIPCO's current infringement theories.

Third, courts have recognized that new patents should not be added to existing actions because "[it] is entirely likely Defendants will continue to introduce new products throughout [] litigation.  The forward progress of these cases will be repeatedly stalled if Plaintiff introduces a new patent to this litigation in response to each new market entrant."  *In re West View Research, LLC*, Ca. No. 14-cv-2668-CAB (WVG), Dkt. No. 42 (S.D. Cal. Jun. 10, 2015) (permitting the plaintiff to initiate new lawsuits to assert additional patents but refusing to add the patents to the existing action).  Here, the addition of the '126 patent to this litigation would result in additional complexity, potentially including different products than are at issue for the remaining patents, a different damages period with different sales information, potentially different discovery, and a restart of the schedule with a deadline for responses to infringement contentions and invalidity contentions, resulting in months of delay.

While SIPCO claims it was "surprised" that Emerson opposed SIPCO's request to amend its complaint to include infringement allegations of the '126 patent on May 12, 2023, Emerson stated to SIPCO over a month earlier on April 6, 2023 that "the '126 Patent was never asserted in this action," and Emerson expressly informed SIPCO during a meet and confer on May 10, 2023 that it does not agree that SIPCO should be allowed to assert the '126 patent in this case. And even the Parties' October 2018 stipulation regarding the '126 patent recognized that SIPCO would need to "refile[] a lawsuit for infringement of [the '126] patent[]" if it ever sought to reassert the '126 patent in the future. Dkt. No. 274 at 5. SIPCO can hardly claim it was surprised. Contrary to SIPCO's suggestion, Emerson was not well aware of SIPCO's attempt to reassert this patent, because SIPCO unilaterally withdrew it during the ITC proceeding after considering Emerson's expert reports with clear non-infringement and invalidity opinions.

Even if the Court finds good cause to amend (it should not), under Rule 15(a), SIPCO's potential motion should be denied for several of the reasons explained by the Supreme Court in *Foman*. For example, as explained above, SIPCO unduly delayed in moving for leave to amend its complaint. As another example, Emerson would be unduly prejudiced if the Court granted the motion because it would require

additional discovery, leading to further costs and delays in this litigation that has already been pending for over eight years.

If SIPCO moves for leave to amend its complaint to assert the '126 patent, the Court should deny such a motion for at least the foregoing reasons.[40]

### 2.    SIPCO's Position

SIPCO intends to seek leave to amend its pleadings to assert U.S. Patent No. 9,439,126 in the current Georgia litigation.  SIPCO has determined that Emerson released new products that infringe on claims 1-14 of the '126 patent, and intends to assert the '126 patent to address the new products that were not produced when its original contentions were served, and the impact of relevant years of IPR proceedings.

Pursuant to Federal Rule of Civil Procedure 15(a)(2), a party may amend its pleadings with the Court's leave, and "the [C]ourt should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  When a motion seeking to amend the complaint is filed after the Court's scheduling order deadline for filing such motions, the movant should still be freely given leave to amend its pleadings after a showing

---

[40] If SIPCO intends to assert the '126 patent, it must do so in a new complaint filed in the Northern District of Georgia.  Dkt. No. 268-2 at *4 (E.D. Tex. finding that SIPCO's patents claiming substantially similar subject matter "should properly be litigated in one forum," *i.e.*, N.D. Ga.).

of good cause under Rule 16(b).  *Hanner v. City of E. Point*, No. 1:18-CV-01050-MHC-JCF, 2019 U.S. Dist. LEXIS 249359, at *3 (N.D. Ga. Apr. 16, 2019) (citing *Smith v. Sch. Bd. Of Orange Cnty.*, 487 F.3d 1361, 1366 (11th Cir. 2007)).  Under Rule 16(b), "[t]he guiding principle of whether a party has 'good cause' is diligence." *Collins v. GKD Mgmt., LP*, NO. 3:19-cv-121-TCB, 2022 U.S. Dist. LEXIS 221385, at *4 (N.D. Ga. Aug. 31, 2022) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)).  "A party's diligence can be determined by its attempts to gather relevant information during discovery, the timing of when the information became available, and how soon the party moved to amend after discovering the information." *Snadon v. SEW-Eurodrive*, Inc., 859 F. App'x 896, 897 (11th Cir. 2021).

SIPCO has been and continues to be diligent in this case, particularly given the Court's stay as discussed in prior sections of this document.  Since the Court stayed the case in 2017, SIPCO has released and continues to release new products that infringe on the '126 patent.  Although SIPCO assessed the need to assert the '126 as products were released, as discussed in Section I, it would have been undesirable, a waste of the Court's resources, and procedurally improper for SIPCO to seek to lift the stay in order to amend its pleadings in light of Emerson's new infringing products.  SIPCO was also barred by this Court from filing "a lawsuit

against Emerson on the patents in the dismissed cases [including the '126 patent] for the duration of the 28 U.S.C. § 1659 stay." Dkt. No. 274 at 5.

Any delay in seeking to amend its pleadings after the stay was lifted was caused by Emerson's lack of diligence. In accordance with the Court's April 18, 2023, Order lifting the stay, SIPCO refrained from amending the complaint until it conferred with Emerson and submitted a joint statement setting forth agreements and disagreements regarding disputes including the patents and patent claims at issue. Dkt. No. 301. That same day, SIPCO filed an update on the "patents at issue between the parties" (Dkt. No. 300) including the '126 patent. On April 26, 2023, counsel for SIPCO requested that Emerson confirm that it did not oppose SIPCO's proposed amendment to assert the '126 patent in this litigation, and was promised an answer. But after weeks of delay, and to counsel's surprise, on May 12, 2023, Emerson refused SIPCO's request. Contrary to Emerson's allegations, any delay so far has been caused by Emerson, and SIPCO intends to amend its pleadings as soon as the Court grants such leave.

Moreover, Emerson will suffer no undue hardship or prejudice if SIPCO is granted leave to amend its Complaint to assert the '126 patent. Emerson cannot be unduly prejudiced by an amendment that it anticipated years ago. Emerson knew of SIPCO's intent to assert the '126 patent as early as August 3, 2018, when it agreed

that potential damages would be calculated as of that date per the parties' stipulation October 4, 2018 stipulation. Dkt. 274. Emerson was provided with detailed claim charts relating to their product's infringement of the '126 patent claims in the complaints filed the in Delaware and Texas cases (Del. Case, Dkt. 1; SDTX Case, Dkt. 1). Emerson also agreed that damages would be calculated in accordance with 35 U.S.C. §§ 286, 287 as of August 3, 2018, when the '126 patent was asserted. Emerson then, clearly anticipating SIPCO's assertion of the '126 patent in this action, filed IPR2019-00548 (Dkt. No 300-43) on January 18, 2019, and IPR2019-00549 (Dkt No. 300-44) on January 19, 2019, challenging all claims of the '126 patent. Thus, Emerson was well-aware that these claims would be asserted upon conclusion of the patent proceedings at the PTAB.

Finally, Emerson itself argues that the N.D. of Georgia is the only proper forum in which SIPCO can assert its '126 patent rights. *See* Dkt. No. 268 at 2 ("the EDTX court held that SIPCO must litigate in ***this Court*** every patent in its portfolio that is substantially similar to the patents currently already at issue here." (emphasis in original)); *Id.* at 10 ("the D. Del. and SDTX cases [] involve: [] the same patents as the NDGA case ('511 and '893 patents) as well as substantially similar patents from the same name inventor and family at issue in NDGA ('708 and '126)"). And there is plenty of discovery time left in this case to seek discovery on Emerson's new

infringing products—which in any case will be necessary discovery for the other Patents-In-Suit.

Emerson frames SIPCO's need to amend the pleadings as a change to the schedule. However, SIPCO does not seek to amend the current case schedule[41] to accommodate SIPCO's amended pleadings. Discovery has yet to close, claim construction has not started, and the trial is still in the distant future. On the other hand, if SIPCO is limited from asserting the '126 patent, it would have no option but to bring another complaint in this very forum to have its claims heard. Not only would this be highly inefficient, resulting in unnecessary costs and delay to all parties, it would also be a waste of this Court's resources. In fact, the most likely outcome of such an exercise is this Court merging these overlapping actions.

Emerson has already forced SIPCO to spend significant amounts of time and resources defending the validity of the '126 in PTAB proceedings, and SIPCO would be highly prejudiced if it is not allowed to proceed on claims that have survived Emerson's challenges. Therefore, the Court should grant SIPCO leave to amend its

---

[41] The case schedule for the case is not yet set. In the Parties' Joint Motion to Lift the Stay (Dkt. No. 298), the Parties jointly requested "a case management conference to set a proposed schedule" and the Court ruled that "the parties shall submit a joint statement outlining their agreements and disputes regarding[] the case schedule." (Dkt. No. 301).

Complaint to assert the '126 patent, and proceed to claim construction on SIPCO's new preliminary elected claims.

### B.    Dismissal of Patents No Longer at Issue

#### 1.    The Parties Agree to Dismiss Certain Claims

As discussed above, the Parties agree that the following patents should be dismissed, but the parties disagree about whether the dismissal should be with or without prejudice (as discussed below):

- U.S. Patent No. 8,908,842

- U.S. Patent No. 8,754,780

- U.S. Patent No. 6,044,062

- U.S. Patent No. 6,249,516

- U.S. Patent No. 8,000,314

- U.S. Patent No. 8,233,471

#### 2.    Disputes

##### (a)    Emerson's Position

Each of the foregoing patents should be dismissed with prejudice because reassertion is barred by claim preclusion.  The Federal Circuit has explained that "[c]laim preclusion will generally apply when a patentee seeks to assert the same patent against the same party and the same subject matter."  *Senju Pharm. Co., Ltd. v. Apotex Inc.*, 746 F.3d 1344, 1349 (Fed. Cir. 2014) (citing *Kearns v. Gen. Motors*

*Corp.*, 94 F.3d 1553, 1557 (Fed. Cir. 1996) (concluding that five patents already asserted against the same party in a previous action were properly dismissed on *res judicata* grounds); *Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298, 1305 (Fed. Cir. 2007) (noting that two cases involved the same cause of action because the cases included the same patent and the same accused devices)). All of the patents that SIPCO now seeks to dismiss expired, and all but the '780 patent expired more than six years ago. Specifically, the patents for dismissal expired no later than the following dates:

| Patent | Latest Expiration Date |
|---|---|
| U.S. Patent No. 8,908,842 | March 31, 2017 |
| U.S. Patent No. 8,754,780 | June 22, 2018 |
| U.S. Patent No. 6,044,062 | December 6, 2016 |
| U.S. Patent No. 6,249,516 | December 6, 2016 |
| U.S. Patent No. 8,000,314 | December 6, 2016 |
| U.S. Patent No. 8,233,471 | December 6, 2016 |

Moreover, all 15 claims of the '780 patent have been found unpatentable. *See* Dkt. Nos. 300 at 11 (SIPCO admitting that all claims ever asserted in this case were found unpatentable); 300-41 (final written decision finding claims 1-15 of the '780 patent unpatentable). SIPCO therefore has no basis to seek dismissal other than with prejudice, because SIPCO would not otherwise be entitled to damages for these patents, even if it attempted to improperly reassert them at a later date. *See* 35 U.S.C.

§ 286 ("no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action").

SIPCO's arguments below fail to address the fact that each of the patents listed above expired years before each of the allegedly "new" products it identifies in this joint statement. This too is fatal.

### (b)    SIPCO's Position

SIPCO is not precluded from enforcing its unasserted patent claims against Emerson's products, or any of its patents claims against Emerson's new infringing products. Emerson's positions here serve only to highlight yet another missed opportunity to reach agreement. Instead, Emerson insists on summarily briefing every issue it puts forth under this Joint Statement, forcing SIPCO to also do so.

Contrary to Emerson's assertions, the Federal Circuit has long held that "claim preclusion does not bar later infringement allegations 'with respect to accused products that were not in existence at the time of the [previous actions] for the simple reason that [claim preclusion] requires that in order for a particular claim to be barred, it is necessary that the claim either was asserted, or could have been asserted, in the prior action.'" *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1298 (Fed. Cir. 2017). Moreover, "for products made or sold after the previous actions, it did not matter whether the new products were 'essentially the

same' as the previously accused products—claim preclusion [does] not bar the infringement allegations as to the new products." *Id.* at 1299.

The cases cited by Emerson are easily distinguishable. In *Senju Pharm. Co., Ltd.*, the Court found that claim preclusion could apply "even though the accused infringer has not yet made, used, or sold the [accused] drug" under a special "legal fiction" theory "because the filing of an [Abbreviated New Drug Application (ANDA]] creates a statutory act of infringement." *Senju Pharm. Co. v. Apotex Inc.*, 746 F.3d 1344, 1350 (Fed. Cir. 2014). This unique "legal fiction" theory has no place here, a patent case not involving the ANDA. And in *Transclean Corp.*, the parties conceded during oral argument that its second suit precluded because it involved the very same accused device. *See Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298, 1305 (Fed. Cir. 2007). But again, as already discussed in Section I.B, during five years of stay, Emerson has brought several new infringing products to market containing new capabilities that SIPCO would not be precluded from asserting its patent claims against.

## C.    Harmonizing the Pleadings

On February 6, 2017, the Court directed the Parties to confer with the Special Master "regarding whether the former Texas action and the Atlanta action can be harmonized, so that the litigation is based on one operative Complaint brought by

Emerson and one operative Answer with counterclaims (and an Answer to such counterclaims), or whether, on the other hand, this is not pragmatically feasible." Dkt. No. 211. The Parties intend to confer with the Special Master on this issue.

### D. Transfer of the ITC Record Under 28 U.S.C. § 1659(b)

On October 5, 2018, the Court extended its stay of the case as to the '893 and '511 patents pursuant to 28 U.S.C. § 1659(a). Dkt. No. 275. On April 10, 2023, the Parties filed a Joint Motion to Lift the Stay and Re-Open the Case. Dkt. No. 298. On April 18, 2023, the Court granted the Joint Motion to Lift the Stay and Re-Open the Case. Dkt. No. 301.

28 U.S.C. § 1659(b) provides the following:

> [A]fter dissolution of a stay under subsection (a), the record of the proceeding before the United States International Trade Commission shall be transmitted to the district court and shall be admissible in the civil action, subject to such protective order as the district court determines necessary, to the extent permitted under the Federal Rules of Evidence and the Federal Rules of Civil Procedure.

Consistent with the requirements of Section 1659(b), the Parties intend to file a Joint Motion to Request International Trade Commission Record Pursuant to 28 U.S.C. § 1659(b).

On April 28, 2023, Emerson filed a written notice of the dissolution of the stay with the ITC pursuant to 19 C.F.R. § 210.39(b)(2). Emerson will provide the ITC with another update after the Court rules on the Parties' Motion.

### E.    Amendments to the Discovery Order to Address Procedural Issues such as Privilege Logs and Expert Discovery

#### 1.    Agreements

On August 26, 2015, the Parties filed a Joint Preliminary Report and Discovery Plan.  Dkt. No. 22.

#### (a)    Privilege Logs

The Parties agree that the preparation and exchange of privilege logs is a costly and burdensome exercise.  Accordingly, the Parties shall not, as a general matter, be obligated to exchange privilege logs.  In the event a dispute arises where a Party believes that the production of a privilege log limited in scope may be appropriate, the Parties agree to meet and confer in good faith regarding the propriety and scope of such a privilege log.

Notwithstanding the foregoing paragraph, a Party who inadvertently discloses or produces any privileged matter and requests return or destruction of such privileged matter under Federal Rule of Civil Procedure 26(b)(5) must provide a privilege log as specified by that section.

#### (b)    Expert Discovery Stipulation

The Parties agree that the limitations of Rule 26, Fed. R. Civ. P., including Rules 26(b)(4)(B) and (C), shall govern the discovery and disclosure of expert testimony, communications, and materials in this litigation.

Drafts of reports prepared by an expert who will give testimony or their assistants (collectively, "Testifying Expert"), as part of the Testifying Expert's investigation and/or in developing the Testifying Expert's opinions and reports, shall not be subject to discovery. This limitation applies regardless of whether such draft reports have been disclosed or otherwise transmitted to, or contain any notes, writing, or markings created by, in-house counsel or outside counsel, or employees of or consultants for the Party or Parties who engaged such Testifying Expert.

Notes, preparatory materials, and other documents prepared by or for a Testifying Expert as part of the investigation, in preparing an expert report, and/or in preparing for the expert's deposition, shall not be subject to discovery.

Discovery of materials provided to Testifying Experts is limited to those materials, facts, consulting expert opinions, and other matters actually relied upon by the Testifying Expert in formulating their final report, trial or deposition testimony, or any opinion in this action. Details regarding compensation and fee agreements remain discoverable.

No discovery may be taken from or about any consulting expert that will not provide testimony and/or an expert opinion in the above-captioned action ("Consulting Expert") except to the extent that the Consulting Expert has provided information, opinions, or other materials that a Testifying Expert relied on in

-116-

formulating their final report, trial, or deposition testimony or any opinion in this action ("relied on"). In such a case where a Consulting Expert has provided materials or information that a Testifying Expert has relied on, a deposition may be taken of the Consulting Expert regarding those materials and information.

Written or oral communications between any Testifying Expert or Consulting Expert, their assistants, and/or in-house counsel or outside counsel, or employees of or consultants for the Party or Parties who engaged such Testifying Expert or Consulting Expert, are not subject to discovery unless the conversations or communications are relied upon by a Testifying Expert in formulating his/her final report, trial or deposition testimony, or any opinion in this action.

The limitations herein do not preclude a Party from discovery of prior opinions or testimony of an expert in matters other than the above-captioned action, to the extent the prior opinions, or testimony are related to and/or may be inconsistent with the opinions given in this action.

For the avoidance of doubt, (a) emails, lists, agendas, outlines, memoranda, presentations, letters, whether in draft or any other form, that are provided to, or by or on behalf of, any expert and (b) any other types of preliminary work product created by or on behalf of any expert are not subject to discovery unless relied upon

by a Testifying Expert in formulating their final report, trial or deposition testimony, or any opinion in this action.

Communications and materials exempt from discovery under this provision shall be treated as attorney work product and need not be listed on any privilege log.

### F.     SIPCO's Notice (Dkt. No. 300)

#### 1.     Emerson's Position

While Emerson appreciates SIPCO's preparation of a notice informing the Court of the status of parallel proceedings, SIPCO unilaterally filed the notice at the same time that Emerson was preparing a similar notice.  To ensure a complete and accurate record, Emerson wishes to highlight a few omissions and errors in SIPCO's Notice to the Court and Special Master Regarding Orders and Determinations Issued by the Patent Trial and Appeal Board and U.S. Patent and Trademark Office for Other Patents at Issue, Dkt. No. 300.  Emerson does not believe any of these issues is a disputed factual issue, other than the issues briefed above regarding the claims that remain at issue.  *See supra*, §§ II.C.1, V.A.1.

First, SIPCO incorrectly states that claim 59 of U.S. Patent No. 6,437,692 is an "[a]sserted claim[] found patentable or not unpatentable."  Dkt. No. 300 at 6.  In fact, the Court of Appeals for the Federal Circuit affirmed the PTAB's determination

that claim 59 is unpatentable because it is anticipated by, or would have been obvious over the prior art.  Dkt. No. 300-6 at 2.

Second, SIPCO incorrectly states that Emerson challenged claims 1-3, 10, 17-18, and 37 of the '511 patent before the PTAB.  Dkt. No. 300 at 14-15.  In fact, Emerson was barred from ever challenging the validity of the '511 patent claims before the PTAB.  Instead, Aruba Networks, LLC and Hewlett Packard Enterprise Company filed a Petition for *Inter Partes* Review, and the Board instituted the Petition for claims 1-4, 6, 7, 27-30, 32-41, and 44.  Dkt. Nos. 299 at 3; 299-10.

Third, SIPCO did not include the emphasized decisions below, which are attached to this joint notice for completeness:

| Patent No. | Proceeding No. | Dkt. No. or Exhibit |
|---|---|---|
| 8,908,842 | CBM2016-00095 | Dkt. No. 208-1 (ID)[42]<br>Dkt. No. 269-3 (FWD)[43]<br>Dkt. No. 300-35 (CAFC1)[44]<br>**Ex. C (SCT)[45]**<br>**Ex. D (CAFC2)** |

---

[42] "ID" refers to institution decisions rendered by the PTAB.
[43] "FWD" refers to final written decisions rendered by the PTAB.
[44] "CAFC" refers to decisions rendered by the United States Court of Appeals for the Federal Circuit.  Numbers are used to distinguish between first, second, and third decisions by the PTAB or CAFC when there are multiple remands and appeals in a proceeding.
[45] "SCT" throughout this table refers to decisions of the United States Supreme Court.

| Patent No. | Proceeding No. | Dkt. No. or Exhibit |
|---|---|---|
| 8,754,780 | IPR2016-00984 | Dkt. No. 222-1 (ID)<br>Dkt. No. 269-1 (FWD1)<br>**Ex. E (CAFC1)**<br>**Ex. F (FWD2)**<br>Dkt. No. 300-42 (CAFC2) |
| 6,249,516 | IPR2016-01602 | Dkt. No. 213-1 (ID)<br>Dkt. No. 269-2 (FWD)<br>**Ex. G (CAFC)** |

### 2.    SIPCO's Position

Emerson continues to create unnecessary disputes under what should have been an effort to reach agreements. Emerson alleges "several errors" in a prior unrelated filing, and then goes on to identify two irrelevant disagreements. First, as discussed above, Emerson's position is that unelected claim 59 of the '692 Patent should not be at issue at all in this case, but it then seeks to create issue with SIPCO's notice, which sought to properly notified the Court of all issues still relevant to this case. For any doubt, SIPCO provided the Court with the Final Written Decision of the PTAB and the Opinion of the U.S. Court of Appeals for the Federal Circuit dated 9/30/2020, that shows in detail all of the Asserted Claims found patentable or not unpatentable, in addition to its summary. SIPCO further provided a summary of all asserted claims that remain at issue in this case in this Joint Statement, mooting this "dispute" all together. Emerson was welcome to join in this effort to provide the

Court with a summary of all asserted claims that remain at issue, but chose not to do so.

Second, with regard to the '511 Patent, SIPCO's statement reflects the fact that Emerson is precluded by statute to bring invalidity challenges against the '511 Patent at the PTAB—which Emerson acknowledges. Again, there is no "dispute" to resolve here with regard to the '511 Patent at this time. SIPCO's notice did not provide additional details of the '511 Patent proceedings because it points back to the Parties' Joint Notice (Dkt. No. 299), that already did so. There is no issue to resolve here, and this section is completely unnecessary.

Finally, attaching decisions that do not effect on this Join Statement simply highlights yet again why this Joint Statement is not the proper vehicle to brief all future issues to be decided in this litigation.

Dated:  May 15, 2023

Respectfully Submitted:

/s/ *Damon J. Whitaker*

William V. Custer
(Georgia Bar No. 202910)
Damon J. Whitaker
(Georgia Bar No. 752722)
**BRYAN CAVE LEIGHTON
PAISNER, LLP**
1201 W. Peachtree St. N.W., 14th Floor
Atlanta, Georgia 30309
Tel: (404) 572-6828
Fax: (404) 420-0828
bill.custer@bclplaw.com
damon.whitaker@bclplaw.com

James R. Batchelder (*pro hac vice*)
James L. Davis, Jr. (*pro hac vice*)
Daniel Richards (*pro hac vice*)
**ROPES & GRAY LLP**
1900 University Ave. Sixth Floor
East Palo Alto, CA 94303-2284
Tel: (650) 617-4000
Fax: (650) 617-4090
James.Batchelder@ropesgray.com
James.L.Davis@ropesgray.com
Daniel.Richards@ropesgray.com

Jesse J. Jenner (*pro hac vice*)
Steven Pepe (*pro hac vice*)
Matthew R. Shapiro (*pro hac vice*)
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, New York 10036
Tel:  (212) 596-9000
Fax:  (212) 596-9090

/s/ *Daniel A. Kent*

Daniel A. Kent
(Georgia Bar No. 415110)
Kent & Risley LLC
5755 N Point Pkwy Suite 57
Alpharetta, GA 30022
Telephone: 404-585-4214
Facsimile: 404-829-2412
dankent@kentrisley.com
James A. (Tripp) Fussell (*pro hac vice*)
Jamie B. Beaber (*pro hac vice*)
Alison T. Gelsleichter (*pro hac vice*)
Tariq Javed (*pro hac vice*)
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-3300
jfussell@mayerbrown.com
jbeaber@mayerbrown.com
agelsleichter@mayerbrown.com
tjaved@mayerbrown.com

Michael J. Word (*pro hac vice*)
Luiz Miranda (*pro hac vice*)
Nicholas Ciulla (*pro hac vice*)
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711
mword@mayerbrown.com
lmiranda@mayerbrown.com
nciulla@mayerbrown.com

Jesse.Jenner@ropesgray.com
Steven.Pepe@ropesgray.com
Matthew.Shapiro@ropesgray.com

*Attorneys for Plaintiffs and Counter-Defendants Emerson Electric Co., Emerson Process Management LLLP, Fisher-Rosemount Systems, Inc. and Rosemount Inc.*

*Counsel for Defendants and Counter-Plaintiffs SIPCO, LLC and IP CO, LLC (d/b/a INTUS IQ)*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1</u>

The undersigned hereby certifies that this filing was prepared using one of the font and point selections approved by this Court in Local Rule 5.1C.  Specifically, Times New Roman font was used in 14 point.

<u>/s/ Damon J. Whitaker</u>
Georgia Bar No. 752722

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I filed a copy of the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically notify all counsel of record.

Dated:  May 16, 2023                <u>/s/ Damon J. Whitaker</u>
Georgia Bar No. 752722