# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| EMERSON ELECTRIC CO., et al., | § | |
| | § | |
| Plaintiffs, | § | Case No. 1:15-cv-00319-AT |
| | § | |
| v. | § | Special Master Peterson |
| | § | |
| SIPCO, LLC, and IP CO, LLC | § | JURY TRIAL DEMANDED |
| (d/b/a INTUS IQ), | § | |
| | § | |
| Defendants. | § | |
| | § | |

# EMERSON'S OPPOSITION TO
# SIPCO'S MOTION TO AMEND (1) ITS CLAIM ELECTIONS AND
# (2) ITS PLEADINGS TO ASSERT U.S. PATENT NO. 9,439,126

# TABLE OF CONTENTS

I.     Introduction.................................................................................1

II.    Background and Procedural History ........................................2

III.   SIPCO does not Show the Requisite Good Cause to Undo its Binding
       Claim Elections.............................................................................4

       A.   Legal Standard.....................................................................4

       B.   District Courts Across the Country Have Denied Similar
            Requests to Amend Claim Elections....................................5

       C.   SIPCO's PTAB and ITC Losses Do Not Constitute Good
            Cause, and in any Event, SIPCO Was Not Diligent ............9

       D.   SIPCO's "Fundamental Fairness" Argument Is Nonsensical and
            Ignores the Benefit of IPR Estoppel....................................11

       E.   Emerson Would Be Prejudiced if SIPCO Were Permitted to
            Undo Its Claim Elections ...................................................13

IV.    SIPCO Does Not Show the Requisite Good Cause to Amend Its
       Pleadings to Include the '126 Patent .......................................15

       A.   SIPCO Delayed Asserting the '126 Patent for Years .........15

       B.   SIPCO Was Not Diligent and Cannot Show Good Cause.................17

       C.   SIPCO Also Cannot Satisfy FRCP 15 ...............................19

V.     Conclusion ................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Boston Scientific Corporation v. Cook Group Incorporated*,
No. 1:17-cv-03448-JRS-MJD, 2021 WL 3634776
(S.D. Ind. Aug. 16, 2021) ...................................................................9

*Capella Photonics, Inc. v. Cisco Systems Inc.*,
No. 14:cv-03348-EMC, 2019 WL 2359096
(N.D. Cal. June 4, 2019) .............................................................5, 15

*Click-to-Call Technologies LP v. Ingenio, Inc.*,
45 F.4th 1363 (Fed. Cir. 2022) ......................................................5, 8

*CUPP Cybersecurity LLC v. Trend Micro, Inc.*,
No. 3:18-cv-1251-M, 2021 WL 3733014 (N.D. Tex. Jan. 12, 2021) .........*passim*

*Diversey, Inc. v. Pops Technologies, LLC*,
No. 1:18-cv-04210-AT, 2019 WL 11003292
(N.D. Ga. Nov. 13, 2019) ..........................................................17, 18

*Equal Employment Opportunity Commission v. Exel Incorporated*,
259 F.R.D. 652 (N.D. Ga. 2008) .....................................................13

*EMED Technologies Corporation v. Repro-Med Systems, Inc.*,
No. 2:15-cv-01167-JRG-RSP, 2018 WL 6440893
(E.D. Tex. Nov. 16, 2018) ................................................................9

*Foman v. Davis*,
371 U.S. 178 (1962)........................................................................19

*Ironburg Inventions Ltd. v. Valve Corporation*,
64 F.4th 1274 (Fed. Cir. 2023) .......................................................13

*McKesson Information Solutions LLC v. Epic Systems Corporation*,
495 F. Supp. 2d 1329 (N.D. Ga. 2007).............................................5

*Neville v. Lanier Parking Solutions, IV, LLC*,
    No. 1:19-cv-2151-TWT-RDC, 2020 U.S. Dist. LEXIS 257706
    (N.D. Ga. Aug. 27, 2020) ................................................................17

*Neville v. Lanier Parking Solutions, VI, LLC*,
    No. 1:19-cv-2151-TWT-RDC, Dkt. 65 (N.D. Ga. Oct. 28, 2020) ..............17, 18

*Papst Licensing GmbH v. Apple, Inc.*,
    No. 6:15-cv-01095, 2020 WL 11613777 (E.D. Tex. July 1, 2020) ...........6, 7, 10

*SIPCO, LLC v. Emerson Electric Co.*,
    No. 6:15-cv-00907, Dkt. 73 (E.D. Tex. Apr. 12, 2016) ....................................18

*Sosa v. Airprint Systems, Inc.*,
    133 F.3d 1417 (11th Cir. 1998) ....................................................................4, 19

*Stamps.com Inc. v. Endicia, Inc.*,
    437 F. App'x 897 (Fed. Cir. 2011) ......................................................................4

*Trusted Knight Corporation v. International Business Machines*
    *Corporation (IBM)*,
    No. 19:cv-01206-EMC, 2021 WL 5205522
    (N.D. Cal. Nov. 9, 2021) ......................................................................................5

*Uniloc USA, Inc. v. Distinctive Developments Ltd.*,
    No. 6:12-cv-00462-RWS, 2016 WL 11485612
    (E.D. Tex. Dec. 13, 2016) .....................................................................................5

*University of Virginia Patent Foundation v. General Electric*
    *Company*, No. 3:14-cv-00051, 2019 WL 1993552
    (W.D. Va. May 6, 2019) ................................................................................5, 10

*ZiLOG, Inc. v. Quicklogic Corporation*,
    No. C03-03725 JW, 2006 WL 563057 (N.D. Cal. Mar. 6, 2006) .......................9

## Statutes

35 U.S.C. § 315(e)(2) ...............................................................................................12

**Other Authorities**

Fed. R. Civ. P. 15 ............................................................................................17, 19

Fed. R. Civ. P. 16 ...........................................................................................*passim*

## <u>TABLE OF EXHIBITS</u>

| Exhibit No. | Title |
|---|---|
| 1 | *SIPCO, LLC v. Emerson Elec. Co.*, No. 1:16-cv-02690-AT, Plaintiffs SIPCO, LLC and IP CO, LLC's Preliminary Election of Asserted Claims Against Defendants Emerson Electric Co., Emerson Process Management LLLP, Fisher-Rosemount Systems, Inc., Rosemount Inc., BP, P.L.C., BP America, Inc. and BP America Production Company (N.D. Ga. July 28, 2016) |
| 2 | Letter from Paul Cronin to Special Master Gale R. "Pete" Peterson, Esq. (Oct. 21, 2016)<br><br>[Highlighting added; Exhibit A to the letter excerpted] |
| 3 | Email thread between James L. Davis, Jr. to Paul Cronin and James Hall (June 1, 2018, through June 29, 2018) |
| 4 | *Emerson Elec. Co. v. SIPCO, LLC*, IPR2017-00359, Paper 41 (May 16, 2018)<br><br>[Highlighting added] |
| 5 | U.S. Patent Application No. 11/814,632, Notice of Allowance and Fee(s) Due (May 20, 2016)<br><br>[Highlighting added] |
| 6 | *Certain Wireless Mesh Networking Products and Related Components Thereof*, Inv. No. 337-TA-1131, Notice of Commission Decision Not to Review an Initial Determination Granting an Unopposed Motion for Partial Termination of the Investigation as to Certain Patent Claims (Apr. 5, 2019)<br><br>[Highlighting added] |
| 7 | *Certain Wireless Mesh Networking Products and Related Components Thereof*, Inv. No. 337-TA-1131, Notice of a Commission Determination Not to Review an Initial Determination Terminating the Investigation with Respect to Certain Asserted Claims (July 12, 2019)<br><br>[Highlighting added] |

| Exhibit No. | Title |
|:---:|---|
| 8 | *Neville v. Lanier Parking Sols., VI, LLC*, No. 1:19-cv-2151-TWT-RDC, Dkt. 65 (N.D. Ga. Oct. 28, 2020) <br><br> [Highlighting added] |
| 9 | Federal Communications Commission, Office of Engineering and Technology Exhibits List for FCC ID LW2775-01 (accessed June 23, 2023), https://apps.fcc.gov/oetcf/eas/reports/ ViewExhibitReport.cfm?mode=Exhibits&RequestTimeout =500&calledFromFrame=N&application_id= mXf6yIz5UyuKWahGLkAi3Q%3D%3D&fcc_id=LW2775-01 <br><br> [Highlighting added; red box annotation added to final page; images excerpted from "Internal photos" hyperlink] |

## I.    INTRODUCTION

SIPCO does not show the requisite good cause to amend (1) SIPCO's binding claim elections or (2) its pleadings to assert the '126 patent.  SIPCO wishes to re-elect claims because over half of its elected claims were either invalidated by the Patent Trial and Appeal Board ("PTAB") or disclaimed by SIPCO.  Yet the purpose of the elections was to narrow the case such that the elected claims could be the focus both of Emerson's already-filed IPRs and subsequently of this litigation once the IPR-based stay was lifted.  SIPCO's request is antithetical not only to the purpose of the elections but also to the Local Patent Rules and the rationale for staying this case in the first place.  Having lost these IPRs and the ITC case that it filed, SIPCO should not be rewarded with the opportunity to elect new claims because it previously elected invalid claims or disclaimed previously-elected claims.  Simply put, good cause is not shown by losing IPRs, losing an ITC case, and disclaiming claims.

Nor does SIPCO show the requisite good cause for injecting an entirely new patent (the '126 patent) into this thirteen-patent case.  SIPCO was not diligent in asserting the '126 patent in this case.  The '126 patent issued six months before this case was partially stayed, 1.5 years before this case was administratively closed, and two years before the Parties entered into a stipulation concerning the future assertion of the '126 patent in a "new lawsuit."  Dkt. 274, ¶ 3.  The stipulation allows SIPCO

to "fil[e] a lawsuit" on the '126 patent after the ITC appeal was dismissed in 2020—three years ago. *Id.*, ¶ 1. SIPCO never filed a new lawsuit, nor did it notify the Court or Emerson of its intent to assert the '126 patent in this case until April 2023.

SIPCO cites no precedent that has allowed for the extreme relief it seeks. Despite an utter absence of good cause, it seeks to undo years of discovery and heap significant complexity and delay onto an already complex case filed over eight years ago. Rather, this case should proceed on SIPCO's 14 remaining elected claims.

## II.    BACKGROUND AND PROCEDURAL HISTORY

This is a thirteen-patent case with over 208 originally-asserted claims. On May 20, 2016, Emerson first moved to limit the number of asserted claims. Dkt. 93. SIPCO's infringement suit filed in E.D. Texas was then transferred to this Court (Dkt. 109-1) and pursuant to the schedule previously entered in that case, SIPCO limited its asserted claims in that action to 32 on July 28, 2016. Ex. 1. This Court subsequently consolidated the transferred case with the instant case. Dkt. 121, 7. After a hearing, the Court and SIPCO agreed that new elections were necessary, and that such elections would narrow this case. Dkt. 140, 22:23-23:3, 26:6-9, 35:11-18, 36:14-17. The Court appointed Special Master Peterson to recommend a scheduling order to limit claims at issue, including those transferred from E.D. Tex. Dkt. 145.

On October 26, 2016, the Court adopted the Special Master's recommended

schedule, which required SIPCO to "serve a Preliminary Election of Asserted Claims, which shall assert no more than ten (10) claims from each patent and not more than a total of 30 claims" by December 9, 2016. Dkt. 173, Ex. A, 2. The schedule did not include any provision permitting SIPCO to amend its claim elections at will. Indeed, the Amended Scheduling Order provides that "[a]bsent agreement, post-entry motions to modify this Order's numerical limits on asserted claims ... must demonstrate good cause warranting the modification." *Id.*, 7.

Contrary to SIPCO's implication that it elected claims *before* Emerson filed its PTAB petitions (Op. Br. 3-4), SIPCO asked to (Ex. 2, 3, Ex. A, 1) and did elect claims *after* Emerson filed all PTAB petitions challenging claims in this case with full knowledge of Emerson's PTAB challenges. As a result, SIPCO elected claims on December 9, 2016, and following findings of unpatentability by the PTAB and SIPCO's disclaimers, the claims remaining at issue in this litigation are as follows:

| Patent No. | SIPCO's Elected Claims (30) | Remaining Elected Claims (14) |
|---|---|---|
| 6,044,062 | 2, 3, 4, 10, 11, 12 | None |
| **6,437,692** | 24, 26, 30, 55, 57 | 24, 26, 30 |
| **6,914,893** | 1, 17, 18, 37 | 1, 17, 18, 37 |
| **7,103,511** | 1, 3, 4, 27 | 1, 3, 4, 27 |
| **7,468,661** | 9, 11 | 9, 11 |
| **7,697,492** | 1, 2, 10, 14, 19 | 19 |
| 8,013,732 | 1 | None |
| 8,233,471 | 17 | None |
| 8,625,496 | 39 | None |
| 8,908,842 | 7 | None |

The Court ultimately extended the stay through the conclusion of the PTAB proceedings, except for limited discovery through March 20, 2018.  Dkt. 218; Dkt. 258.  In March 2023, SIPCO informed Emerson for the first time that SIPCO believes it now can, at will, undo its binding claim elections and re-elect any claims included in its original infringement contentions.

## III.   SIPCO DOES NOT SHOW THE REQUISITE GOOD CAUSE TO UNDO ITS BINDING CLAIM ELECTIONS

SIPCO's attempt to redo its claim elections is contrary to (a) the rules and case law governing claim elections, (b) the rationale for this Court's stay, and (c) the Parties' and Court's prior understandings.  SIPCO cannot show good cause.

### A.   Legal Standard

Claim elections are integral to the Amended Scheduling Order, and the election date passed over six years ago.  Dkt. 173, Ex. A.  A court's scheduling order "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  The 11th Circuit routinely finds a lack of good cause for amendments outside the deadline of the scheduling order where plaintiff's "failure to comply with the court's scheduling order resulted from a lack of diligence in pursuing her claim." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998).

Further, a district court has inherent authority to reasonably limit the number of patent claims asserted in a patent case.  *Stamps.com Inc. v. Endicia, Inc.*, 437 F.

App'x 897, 902 (Fed. Cir. 2011).  In this regard, the Federal Circuit "defer[s] to the broad discretion of the district court to manage its own docket." *Click-to-Call Techs. LP v. Ingenio, Inc.*, 45 F.4th 1363, 1371 (Fed. Cir. 2022).

Finally, while the Local Patent Rules do not require claim elections, the Rules' intent is to serve as an "exercise in forced door closing" to "discourage gamesmanship and … facilitate early resolution of the dispute" by "forc[ing] parties to take infringement … positions early in the litigation and stick to them." *McKesson Info. Sols. LLC v. Epic Sys. Corp.*, 495 F. Supp. 2d 1329, 1332 (N.D. Ga. 2007).

## B.    District Courts Across the Country Have Denied Similar Requests to Amend Claim Elections

This is not an issue of first impression.  District courts have repeatedly denied patent owners' attempts to re-elect or assert new claims after adverse IPR decisions.[1]

---

[1] The vast weight of authority has rejected SIPCO's arguments.  *See, e.g.*, *Univ. of Va. Pat. Found. v. Gen. Elec. Co.*, No. 3:14-cv-00051, 2019 WL 1993552, at *5 (W.D. Va. May 6, 2019) (finding an adverse IPR result does not constitute "new information" supporting good cause to amend elections); *Capella Photonics, Inc. v. Cisco Sys. Inc.*, No. 14:cv-03348-EMC, 2019 WL 2359096, at *3-5 (N.D. Cal. June 4, 2019) (denying motion to amend infringement contentions to assert new claims post-IPR because the patent owner failed to "'act[] with diligence in promptly moving to amend' after a circumstance supporting amendment occur[red]"); *Trusted Knight Corp. v. IBM*, No. 19:cv-01206-EMC, 2021 WL 5205522, at *3 (N.D. Cal. Nov. 9, 2021) (denying patent owner's motion for leave to amend its disclosure of asserted claims because patent owner's "true rationale is evident from the timing of its motion: recognizing the asserted claims ... were likely to be invalidated, it aimed to keep its case alive by switching gears to assert the only two claims not covered by [defendant's] IPR"); *Uniloc USA, Inc. v. Distinctive Devs. Ltd.*, No. 6:12-cv-

Indeed, in putting these claim election requirements in place, this Court expressed "a lot of respect for the approach to narrowing [claims] that the Eastern District of Texas" takes.  Dkt. 140, at 35:15-18.  A decision from that district, *Papst Licensing GmbH v. Apple, Inc.*, is instructive.  No. 6:15-cv-01095, 2020 WL 11613777 (E.D. Tex. July 1, 2020).  There, patent owner (1) initially asserted claim 14 of the patent-at-issue, (2) included that claim in its preliminary election, and (3) dropped that claim in its final election.  *Id*. at *1.  The PTAB subsequently found all finally-elected claims invalid.  *Id*.  Patent owner then moved for leave to amend its elections to add claim 14.  *Id*.  The *Papst* court found no good cause because, *inter alia*, the patent owner had "not shown diligence and because the amendment would cause significant prejudice" where the defendant "ha[d] spent considerable time and resources litigating th[e] case," and "[i]t would be highly prejudicial to force [the defendant] into another round of litigation."  *Id*. at *1-3.  Notably, the court rejected the patent owner's argument that "it could not have known the outcome of the pending IPRs"—finding that "the adverse IPR decision alone is not sufficient to excuse [patent owner's] delay" in amending its claim elections.  *Id*. at *3.  "To permit [a patent owner] to amend its claim election under these circumstances would

---

00462-RWS, 2016 WL 11485612, at *2 (E.D. Tex. Dec. 13, 2016) (denying plaintiff's attempt to assert claims after an adverse IPR because plaintiff failed to show diligence or why it could not have amended its contentions earlier).

inappropriately allow [it] a 'do over' of claim election." *Id.*

The Northern District of Texas also considered a highly analogous situation in *CUPP Cybersecurity LLC v. Trend Micro, Inc.* There, the court issued an Amended Scheduling Order requiring the patent owner to elect 40, then 20, then 10 claims.  No. 3:18-cv-1251-M, 2021 WL 3733014, at *1 (N.D. Tex. Jan. 12, 2021). After the patent owner narrowed to 20 elected claims, the court stayed the case pending resolution of the accused infringer's IPRs.  *Id.*  While the case was stayed, the PTAB found 14 of the 20 asserted claims invalid.  *Id.*  In response to the PTAB's decisions, the patent owner moved for leave to drop the 14 invalidated claims and "swap" in a new set of six previously dropped claims.  *Id.* at *2.

Like SIPCO, the patent owner in *CUPP* raised the same flawed arguments that (1) it had been diligent because it notified the accused infringer of its intent to "swap" out claims, (2) the accused infringer "had notice of the six claims since the claims were included in the group of 40 claims [patent owner] elected to assert," and (3) "the outcome of the PTAB proceedings 'is a type of litigation development that impedes [patent owner's] ability to move forward in this litigation, giving [the accused infringer] an unfair advantage.'"  *Id.*  The court instead found that patent owner had not been diligent and stated that "[t]he purpose of limiting [patent owner's] asserted claims and staying the case pending IPR was to effectively and

efficiently litigate this case.  [Patent owner] will be able to do so without adding claims it previously elected not to assert." *Id*.  Importantly, the *CUPP* court had not issued a *Markman* Order when it denied patent owner's attempt to re-elect claims, and it did so even though patent owner was able to proceed with only six claims— fewer than the 10 claims permitted by the court's post-*Markman* claim election.

Not only have district courts repeatedly held patent owners to claim elections post-IPR, but the Federal Circuit has condoned this practice.  In *Click-to-Call*, the district court required claim elections.  45 F.4th at 1371.  Shortly thereafter, the PTAB instituted IPR on the one patent at issue.  *Id*.  The district court stayed the case in view of the IPR, finding that it "would 'simplify the issues in th[e] case' because 'a[ll] but one of the claims to be asserted at trial in this case' were at issue in the IPR."  *Id*.  The patent owner argued that "good cause" existed to amend its election because it "promptly gave notice after the IPR was final."  *Id*. at 1372.  The district court denied patent owner's request to re-elect claims because "*[c]ourts generally refuse to reopen what has been decided previously*."  *Id*. (emphasis added). The Federal Circuit affirmed.  *Id*. at 1373.

The three isolated cases that SIPCO cites are inapposite, cut against the weight of authority discussed above, and, if anything, reflect the very narrow set of circumstances where this relief has been permitted.  In all three cases, the court

allowed the patent owner to *add a single claim* where either *all of the asserted/elected claims had been found unpatentable* and/or the *claim to be added depended from a previously-asserted claim*. *See Bos. Sci. Corp. v. Cook Grp. Inc.*, No. 1:17-cv-03448-JRS-MJD, 2021 WL 3634776, at *2 (S.D. Ind. Aug. 16, 2021) (allowing patentee to amend its elections to *add a single claim that depended from an elected claim* after 12 of 16 elected claims found unpatentable); *EMED Techs. Corp. v. Repro-Med Sys., Inc.*, No. 2:15-cv-01167-JRG-RSP, 2018 WL 6440893, at *1-2 (E.D. Tex. Nov. 16, 2018) (allowing patentee to add one claim because the sole asserted claim was invalidated in an IPR and patentee would not have had any remaining claims to assert); *ZiLOG, Inc. v. Quicklogic Corp.*, No. C03-03725 JW, 2006 WL 563057, at *1 (N.D. Cal. Mar. 6, 2006) (allowing patentee to add a claim that depends from the originally asserted claim because the sole asserted claim was invalidated in an *ex parte* reexamination and patentee would not have had any remaining claims to assert). Here, in contrast, SIPCO wants *carte blanche* to re-elect 16 or 30 claims (SIPCO does not make clear the relief it is requesting and refuses to identify the claims it seeks to add), even though it has 14 claims already in the case.[2]

**C.    SIPCO's PTAB and ITC Losses Do Not Constitute Good Cause, and in any Event, SIPCO Was Not Diligent**

---

[2] SIPCO's identified pool of previously asserted claims challenged before the PTO includes 75 claims, and with the addition of the '126 patent includes 87 claims.

SIPCO cannot show good cause to amend its claim elections.  As an initial matter, asserting new claims after adverse IPR findings is "contrary to Congress's purpose in creating IPR as part of a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs" and "might drastically prolong litigation."  *Univ. of Va.*, 2019 WL 1993552, at *4 n.5 (quotations omitted).

Second, allowing SIPCO to undo its elections now would (1) undermine the purpose of staying the case in view of IPRs and (2) prevent the parties and the Court from "effectively and efficiently" litigating the case.  *CUPP*, 2021 WL 3733014, at *2.  Indeed, the Court initially stayed this case to simplify the issues and allow for efficient, effective resolution of all claims—even before all IPRs were instituted.  *See* Dkt. 201, 25-28 (R&R); Dkt. 218 (adopting R&R).

Third, "adverse IPR decision[s] alone [are] not sufficient to excuse" SIPCO's delay in amending its claim elections, and granting a motion to amend now would allow SIPCO a "do over" of its binding election.  *Papst*, 2020 WL 11613777, at *3.

Fourth, the record belies SIPCO's assertion that it has raised this request "at the earliest opportunity."  Op. Br. 10-12.  SIPCO could have sought to do so at any point after the elected claims were found unpatentable or disclaimed, *e.g.*:

| Date | Event |
|------|-------|
| 1/16/18 | '842 elected claim unpatentable (Dkt. 300-34, aff'd Dkt. 303-4) |
| 3/21/18 | '492 elected claims initially found unpatentable (Dkt. 300-15); four elected claims ultimately found unpatentable (Dkt. 300-19) |
| 3/29/18 | '471 elected claim unpatentable (Dkt. 300-29) |
| 5/11/18 | '496 elected claim unpatentable (Dkt. 300-31) |
| 5/15/18 | '732 elected claim unpatentable (Dkt. 300-25) |
| 4/12/19 | '692 two elected claims unpatentable (Dkt. 300-5, aff'd Dkt. 300-6) |
| 11/11/20 | '062 elected claims disclaimed by SIPCO (Dkt. 300-53) |

Emerson also wrote SIPCO about these claims in June 2018, asking whether SIPCO would drop the invalidated claims, but SIPCO never responded. Ex. 3. SIPCO also could have raised this issue in August 2018 when the parties were briefing whether to reopen the case. Instead, SIPCO did the opposite and reiterated that the 30 previously-elected claims were the only ones at issue: "5 of the 13 asserted patents and 19 of the 30 asserted claims are free and clear" of PTAB and Federal Circuit review.[3] Dkt. 270, 5; *see also* Dkt. 270-1. It was only when SIPCO's new outside counsel entered the case *five years later* that SIPCO first raised this issue.

### D. SIPCO's "Fundamental Fairness" Argument Is Nonsensical and Ignores the Benefit of IPR Estoppel

SIPCO's baseless "fundamental fairness" arguments serve to only highlight the extreme and unprecedented form of relief that it seeks here. SIPCO argues that

---

[3] SIPCO's position on the number of claims "free and clear of PTAB and Federal Circuit review" was premature, as additional claims were found unpatentable as PTAB decisions were appealed and SIPCO disclaimed the '062 elected claims.

it should be allowed to re-elect claims that it "successfully" defended, but by that logic, every time an unelected claim survives an IPR, SIPCO argues it can be added back into the case. Indeed, under SIPCO's view, the prior claim election has zero impact on the case if previously-elected claims are found unpatentable. Courts have repeatedly rejected this notion. *Supra* § III.B.

Similarly, SIPCO's argument that it is guaranteed to be able to elect "fifteen claims" as part of a "final election" is without basis. Op. Br. 12-13. Again, by SIPCO's flawed logic, it would have free rein to replenish its elected claims whenever this Court or another tribunal invalidated any elected claim. Courts have rejected this same argument. *See, e.g.*, *CUPP*, 2021 WL 3733014, at *1 (denying request to elect additional claims beyond six claims surviving IPR despite final election permitting up to 10 claims); *supra* § III.B. Worse yet, SIPCO itself disclaimed six of the previously elected claims from the '062 patent that it now seeks to replace. Dkt. 300-53. Again, by SIPCO's flawed logic, if it ever wants to amend its elections, it need only disclaim the previously-elected claim.

Finally, SIPCO's argument ignores the benefit of IPR estoppel, which prevents Emerson from asserting any claim subject to a final written decision "is invalid on any ground that [Emerson] raised or reasonably could have raised during that [IPR]." 35 U.S.C. § 315(e)(2). Thus, SIPCO has already received a tremendous

benefit from, and intends to move for summary judgment on, IPR estoppel.  Dkt. 303, 97.[4]  This is precisely the type of simplification the stay intended to achieve.

There is nothing "fundamentally unfair" about holding SIPCO to its elections.

### E.     Emerson Would Be Prejudiced if SIPCO Were Permitted to Undo Its Claim Elections

SIPCO erroneously argues that Emerson would not be prejudiced if SIPCO re-elected claims.  Op. Br. 12.  As an initial matter, "the Rule 16 inquiry does not turn on issues of prejudice."  *E.E.O.C. v. Exel Inc.*, 259 F.R.D. 652, 656 (N.D. Ga. 2008) (quotations omitted).  Nevertheless, Emerson would be unfairly prejudiced.

Emerson "justifiably believed that it could pursue a litigation strategy based on" SIPCO's elected claims.  *CUPP*, 2021 WL 3733014, at *3.  During the last six plus years, SIPCO never mentioned a need to reelect claims; rather it repeatedly recognized that the elections should remain in place.  For example, SIPCO embraced its claim elections in opposing Emerson's motion to stay—arguing that "[10] of the asserted claims that SIPCO elected … would proceed through the remaining phases of this litigation regardless of the outcome of the IPR and CBM proceedings with

---

[4] '692 patent claims 24, 26, and 30, and '492 patent claim 19 were found not invalid during Emerson IPRs.  The burden of showing IPR estoppel rests with SIPCO.  *See Ironburg Inventions Ltd. v. Valve Corp.*, 64 F.4th 1274, 1297-300 (Fed. Cir. 2023). SIPCO has not offered its IPR estoppel position yet, and Emerson reserves all rights to oppose SIPCO's forthcoming motion.

respect to the 20 other asserted claims." Dkt. 212, 2 (citations omitted); *see also* Dkt. 190, 16-17 (similar). As mentioned in § III.C, SIPCO later doubled-down, arguing (albeit inaccurately) that "5 of the 13 asserted patents and 19 of the 30 asserted claims are free and clear" of PTAB and Federal Circuit review.  Dkt. 270, 5.

Moreover, Emerson relied on these elections.  For example, in conducting discovery from July 2016 (when the EDTX elections occurred) to March 20, 2018, Emerson targeted its discovery on the elected claims. After SIPCO's July and December 2016 claim elections, the Parties served, responded to, and supplemented responses to interrogatories and requests for production; supplemented invalidity contentions; produced approximately 1 million pages of documents; and deposed at least six witnesses—some or all of which may need to be redone depending on SIPCO's new elections.  In an IPR challenging the '692 patent, Emerson specifically sought briefing concerning only the elected claims that were instituted after the Supreme Court's decision in *SAS* and did not brief the other claims "because they are not asserted in the related district court litigation." Ex. 4, 1-2.[5] SIPCO never disputed this characterization of the asserted claims.

---

[5] Prior to *SAS*, the PTAB instituted only those claims for which the petition had demonstrated a reasonable likelihood of success.  The same rationale was applied to the '692 IPR, which almost reached final written decision before *SAS* issued and the PTAB instituted as to all challenged claims.  Dkt. 300-5 at 3.

Emerson has "litigated this case for many years through the IPR proceedings and appeals, and [it] reasonably believed that upon prevailing ... this litigation would be near [or at least a lot closer to] completion." *Capella*, 2019 WL 2359096, at *5. Reelecting claims now would also require Emerson to reelect prior art and, depending on the claims (which SIPCO refuses to identify), redoing certain discovery that took place between 2016 and 2018. Moreover, SIPCO seeks not only to re-elect unidentified new claims, but also to make unidentified amendments to its infringement contentions (*see* Dkt. 303, 21-39), which "would effectively start this case anew." *Capella*, 2019 WL 2359096, at *5. Such a restart would prejudice Emerson. SIPCO shows no good cause for this drastic alteration of this case's scope.

## IV.   SIPCO DOES NOT SHOW THE REQUISITE GOOD CAUSE TO AMEND ITS PLEADINGS TO INCLUDE THE '126 PATENT

As explained in § III, SIPCO is bound by its claim elections and should not be permitted to inject additional claims into this case, including from the '126 patent. Even setting claim elections aside, SIPCO's attempt to introduce a new patent into a case where it has already asserted thirteen other patents should be denied.

### A.   SIPCO Delayed Asserting the '126 Patent for Years

On May 20, 2016, SIPCO received a Notice of Allowance for the '126 patent and thus knew the precise metes and bounds of its claims, which issued September 6, 2016. Ex. 5; Dkt. 268-10. SIPCO's preliminary claim elections were not due

until December 9, 2016.  Dkt. 173, Ex. A, 2.  This case remained fully open for six months after issuance, until it was partially stayed on March 6, 2017, and the Parties remained engaged in discovery for another year thereafter—until March 20, 2018. Dkt. 258.  During these 18+ months, SIPCO never notified Emerson or the Court that it sought to inject the '126 patent into this case.

Yet after the case was administratively closed, SIPCO made the strategic decision to assert the '126 patent in *three* different forums on August 3, 2018: the District of Delaware (Ca. No. 1:18-cv-01170-MN (D. Del.)), the Southern District of Texas (Ca. No. 4:18-cv-02689-VDG (S.D. Tex.)), and the U.S. International Trade Commission ("ITC") (*Certain Wireless Mesh Networking Products and Related Components Thereof*, Inv. No. 337-TA-1131).  And in August 2018, SIPCO dismissed the district court cases without prejudice after Emerson filed an emergency motion to reopen this action and lift the stay to consider Emerson's motion to enjoin SIPCO.  *See* Dkt. 268.  Instead of expressing an intent to assert the '126 patent in this action, SIPCO identified only the elected claims of the currently asserted patents (Dkt. 270, 5; *see also* Dkt. 270-1) and stipulated that the '126 patent would need to be brought in a "new lawsuit" (Dkt. 274, ¶ 3).  SIPCO then withdrew its '126 patent infringement allegations at the ITC at the end of expert discovery, apparently recognizing the weaknesses in its allegations.  Ex. 6, 2; Ex. 7, 2.

For the first time on April 26, 2023, six years after the patent issued, SIPCO notified Emerson that it intends to move for leave to amend its complaint to assert the '126 patent in this case.  SIPCO provided no explanation for its delay.

### B.    SIPCO Was Not Diligent and Cannot Show Good Cause

When a patent owner moves to amend its pleadings to add a new patent "after [the] court has issued its scheduling order, the [patent owner] must first demonstrate good cause under Rule 16(b)." *Diversey, Inc. v. Pops Techs., LLC*, No. 1:18-cv-04210-AT, 2019 WL 11003292, at *1-3 (N.D. Ga. Nov. 13, 2019) (citations omitted).  SIPCO incorrectly states that "after a lengthy stay wherein a new schedule must be set, Rule 16 generally will not apply," and that only FRCP 15 should apply to its proposed amended pleadings.  Op. Br. 14 (citing *Neville v. Lanier Parking Sols. IV, LLC*, No. 1:19-cv-2151-TWT-RDC, 2020 U.S. Dist. LEXIS 257706, at *4 (N.D. Ga. Aug. 27, 2020)).  SIPCO fails to acknowledge that the *Neville* decision it relies upon was set aside because "[i]t was clearly erroneous and contrary to law for the Magistrate Judge to grant the motion to amend under Rule 15(a)(2)." *Neville v. Lanier Parking Sols., VI, LLC*, No. 1:19-cv-2151-TWT-RDC, Dkt. 65, at 7 (N.D. Ga. Oct. 28, 2020) (Ex. 8).  Indeed, the court found that "the stay, which was entered after the Plaintiff had already missed the Scheduling Order deadline, didn't change the applicable standard from Rule 16(b) to Rule 15(a)(2)," and FRCP 16's good

cause standard should have been applied. *Id*. at 8.

SIPCO runs from Rule 16 because it cannot show diligence. The deadline to amend pleadings without leave of court expired September 25, 2015.[6] Dkt. 22; Dkt. 25. SIPCO had 18+ months to try to add the '126 patent to this case prior to the stay, but elected not to. SIPCO instead made the strategic decision to assert the '126 patent in other forums in 2018, and when it agreed to dismiss those actions, it never expressed intent to add the '126 patent to this case. Rather, the parties' stipulation contemplates asserting the '126 patent in only a "new lawsuit." Dkt. 274, ¶ 3.

While SIPCO cites this Court's decision in *Diversey* (Op. Br. 19-20), this decision supports Emerson. There, this Court found good cause existed for the patent owner to assert a new patent—that was a continuation of a patent already asserted in that case—because the patent owner "filed its Motion to Amend promptly" *13 days* after the new patent issued. *Diversey*, 2019 WL 11003292, at *3. Further, the patent owner put the accused infringer "on notice from the start of the litigation that it intended to add a claim" for the new patent "when it issued," and even noted in the Joint Preliminary Report its intent "to amend the Complaint with claims relating to a new patent." *Id*. at *4. Here, the facts are the opposite—not

---

[6] Similarly, the deadline to amend pleadings in the Eastern District of Texas expired February 29, 2016, prior to transfer to this Court. *SIPCO, LLC v. Emerson Elec. Co.*, No. 6:15-cv-00907, Dkt. 73 at 7 (E.D. Tex. Apr. 12, 2016).

only did SIPCO wait six years to try to add the patent to this case, but its stipulation recognizes that the patent was to be asserted in a "new lawsuit."  Dkt. 274, ¶ 3. SIPCO's remaining case citations (Op. Br. 19-20) are similarly inapposite—none involves a situation where the patent to be added issued 18+ months before the case was completely stayed, let alone a similar stipulation.

SIPCO alleges that it needed time to teardown certain devices, but the only tear down it cites involved taking the top off a single device to reveal that the device used a DN2510 transceiver—an act that requires only minutes, not two years.  Op. Br. 20 (citing Exs. D-E).  And the fact that Emerson's products include DN2510 transceivers was public knowledge since at least 2009. *See* Ex. 9.

### C.     SIPCO Also Cannot Satisfy FRCP 15

Even if SIPCO had attempted to show good cause under FRCP 16, SIPCO also fails to satisfy FRCP 15.  *See Sosa*, 133 F.3d at 1419.  Under Rule 15(a), the Court may deny leave to amend for reasons "such as undue delay … on the part of the movant" and "undue prejudice to the opposing party by virtue of allowance of the amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Indeed, Emerson would be unduly prejudiced by SIPCO's strategic decision to delay asserting the '126 patent in this case because injecting the '126 patent now would add significant complexity and delay.  The '126 patent is not related to any

-19-

patents asserted at any point in this litigation.  The currently asserted patents all claim priority to 1998 and earlier, and expired by 2020.  By contrast, the '126 patent claims priority to 2006 and does not expire until 2029—and thus would sweep in years of prior art and potentially newly accused products, not to mention necessitating additional party and third-party fact discovery.  Adding the '126 patent would also reset this eight-year old case to its very beginning—requiring new pleadings, infringement and invalidity contentions as well as discovery.  Rather than reset this long-pending case, the '126 patent should be asserted, if at all, in its own separate proceeding before this Court, especially in view of SIPCO's failure to diligently notify the Court or Emerson and the prejudice that would result. Not a single one of the cases SIPCO cites (Op. Br. 15-18) involves a situation like this. SIPCO waited almost two years to assert the '126 patent after issuance (1.5 years were before the case was stayed). When SIPCO asserted the patent, it filed multiple suits in other fora.  And when SIPCO dropped those suits, it entered into a stipulation contemplating asserting the patent only in a "new lawsuit."

## V.    CONCLUSION

The Court should reject SIPCO's attempt to start this case anew and deny its requests to re-elect claims and amend its pleadings to add the '126 patent.

Dated: June 26, 2023                    Respectfully submitted,

                                         /s/ *Damon J. Whitaker*
                                        William V. Custer (Georgia Bar No. 202910)
                                        Damon J. Whitaker (Georgia Bar No. 752722)
                                        **BRYAN CAVE LEIGHTON**
                                        **PAISNER, LLP**
                                        1201 W. Peachtree St. N.W., 14th Floor
                                        Atlanta, Georgia 30309
                                        Tel: (404) 572-6828
                                        Fax: (404) 420-0828
                                        bill.custer@bclplaw.com
                                        damon.whitaker@bclplaw.com

                                        James R. Batchelder (*pro hac vice*)
                                        James L. Davis, Jr. (*pro hac vice*)
                                        Daniel Richards (*pro hac vice forthcoming*)
                                        **ROPES & GRAY LLP**
                                        1900 University Ave. Sixth Floor
                                        East Palo Alto, CA 94303-2284
                                        Tel: (650) 617-4000
                                        Fax: (650) 617-4090
                                        James.Batchelder@ropesgray.com
                                        James.L.Davis@ropesgray.com
                                        Daniel.Richards@ropesgray.com

                                        Jesse J. Jenner (*pro hac vice*)
                                        Steven Pepe (*pro hac vice*)
                                        Matthew R. Shapiro (*pro hac vice*
                                        *forthcoming*)
                                        **ROPES & GRAY LLP**
                                        1211 Avenue of the Americas
                                        New York, New York 10036
                                        Tel:  (212) 596-9000
                                        Fax:  (212) 596-9090
                                        Jesse.Jenner@ropesgray.com
                                        Steven.Pepe@ropesgray.com

Matthew.Shapiro@ropesgray.com

*Attorneys for Emerson Electric Co., Emerson Process Management LLLP, Fisher-Rosemount Systems, Inc. and Rosemount Inc.*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1</u>

The undersigned hereby certifies that this filing was prepared using one of the font and point selections approved by this Court in Local Rule 5.1C. Specifically, Times New Roman font was used in 14 point.

*/s/ Damon J. Whitaker*
Georgia Bar No. 752722

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I filed a copy of the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically notify all counsel of record.

Dated:  June 26, 2023

*/s/ Damon J. Whitaker*
Georgia Bar No. 752722
